**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------------- X

MIKO PELED, *et al.*,

                                Plaintiff,                    Docket No:
                                                             1:17-CV-260 (RBW)
                    -against-

BENJAMIN NETANYAHU, *et al.*,

                                Defendants.

-------------------------------------------------------------------- X

### MOTION OF DEFENDANT BILLET FEIT & PREIS P.C.
### TO DISMISS THE AMENDED COMPLAINT

Defendant Billet Feit & Preis P.C. ("BFP"), by and through its undersigned counsel, respectfully move for dismissal of the Amended Complaint, dated June 16, 2017, pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6). In support of this motion, BFP submits the accompanying Memorandum of Law; the Declaration of Oleg Rivkin, Esq., dated August 15, 2017; and the exhibits thereto.

Dated:  New York, New York
        August 15, 2017

                                Respectfully submitted,

                                RIVKIN LAW GROUP pllc
                                *Attorneys for Defendant Billet Feit & Preis P.C.*


                                By:  _____
                                        Oleg Rivkin

                                800 Third Avenue, Suite 2501
                                New York, New York 10022
                                (212) 231-9776

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Defendant Biller Feit & Preis P.C.*
By: Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

OF COUNSEL:

NITSANA DARSHAN-LEITNER & CO.
*Israeli counsel for the defendant Billet Feit & Preis P.C.*
By: Nitsana Darshan-Leitner, Adv.
10 Hata'as Street
Ramat Gan, 52512
Israel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

------------------------------------------------------------------- X

MIKO PELED, *et al.*,

                              Plaintiff,                   Docket No:

                  -against-                       1:17-CV-260 (RBW)

BENJAMIN NETANYAHU, *et al.*,

                           Defendants.

------------------------------------------------------------------- X

**MEMORANDUM OF LAW OF DEFENDANT BILLET FEIT & PREIS P.C. IN**
**SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

                          RIVKIN LAW GROUP pllc
                          Oleg Rivkin
                          800 Third Avenue, Suite 2501
                          New York, New York 10022
                          (212) 231-9776

                          THE BERKMAN LAW OFFICE, LLC
                          Robert J. Tolchin
                          111 Livingston Street, Suite 1928
                          Brooklyn, New York 11201
                          718-855-3627

                          *Attorneys for Defendant*
                          *Billet Feit & Preis P.C.*

OF COUNSEL:
NITSANA DARSHAN-LEITNER & CO.
*Israeli counsel for the defendant Billet Feit & Preis P.C.*
By: Nitsana Darshan-Leitner, Adv.
10 Hata'as Street
Ramat Gan, 52512 Israel

## **TABLE OF CONTENTS**

Preliminary Statement................................................................................................1

Allegations in the Amended Complaint.......................................................................3

Argument ....................................................................................................................4

    A.    Legal Standard for Motion to Dismiss....................................................4

    B.    There is No Personal Jurisdiction in DC over BFP ................................5

    C.    The Polititical Question Doctrine Bars All of Plainitffs' Claims ..........10

    D.    Plaintiffs Claims Are Not Justiciable Under the Act of State
        Doctrine................................................................................................16

    E.    Claims Under the Alien Tort Statute Must Be Dismissed ....................18

    F.    Plaintiffs' Claims Under the ATA Must Be Dismissed........................21

    G.    Failure by Most Plaintiffs to Allege Concrete and Particularized
        Injuries Mandates Dismissal of Their Claims.......................................25

    H.    Claims of Deceased Plaintiffs Must Be Dismissed for Lack of
        Standing ...............................................................................................26

    I.    Plaintiffs Claim for Aiding-and-Abetting Tax Fraud Must Be
        Dismissed.............................................................................................29

    J.    Plaintiffs' Negligence Claim Must Be Dismissed ................................32

Conclusion .................................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Akins v. Fed. Election Comm'n*, 101 F.3d 731 (D.C. Cir. 1996)................................25

*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) ...................................4

*Ali v. Mid-Atlantic Settlement Serv., Inc.*, 640 F. Supp. 2d 1 (D.D.C. 2009) ...............30

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ...................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................4

*Atlanigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003) .........................6

*Baker v. Carr*, 369 U.S. 186 (1962)........................ 11, 13-16

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ...................................19

*Balintulo v. Ford Motor Co.,* 796 F.3d 160 (2d Cir. 2013) ...................................19

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ...................... 16-17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ...................................24

*Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149 (D.D.C. 2014) .........................4

*BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017)...................................10

*Boston v. Davis,* 2011 WL 6935710 (W.D.N.C., Dec.29, 2011)...................................28

*Cardona v. Chiquita Brands Intern., Inc.*, 760 F.3d 1185 (11th Cir. 2014)...............19

*Carmichael v. United Techs. Corp.*, 835 F.2d 109 (5th Cir. 1988) .........................21

*Cheeks v. Fort Meyer Const. Corp.*, 216 F. Supp. 3d 146 (D.D.C. 2016)....................31

*Corrie v. Caterpillar Inc.*, 503 F.3d 974 (9th Cir. 2007)........................13, 14, 25

*Daimler v. Bauman*, 134 S. Ct. 746 (2014) ...................................9

*Decker v. Massey-Ferguson, Ltd.* 681 F.2d 111 (2d Cir. 1982) .........................31

*Dist. of Columbia v. White*, 442 A.2d 159 (D.C. 1982)...................................33

*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005)....................2-3, 12-13, 17

*Doe v. Exxon Mobil Corp.*, 654 F.3d 11 (D.C. Cir. 2011)...................................20

*Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115 (D.D.C. 2003)......................................20-21

*Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992) .........................................6

*EEOC v. Arabian American Oil, Co.* 499 U.S. 244 (1991) ...........................................................18

*El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 839 (D.C. Cir. 2010) ............................11

*FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30 (D.D.C.2007)..................................7

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988).  ...........................5-6, 8

*Folz v. U.S. New & World Report, Inc.*, 627 F. Supp. 1143 (D.D.C. 1986)................................33

*Giraldo v. Drummond Co.*, 2013 WL 3873960 (N.D. Ala July 25, 2013) ...................................19

*Haig v. Agee*, 453 U.S. 280, 292 (1981) .....................................................................................14

*Halberstram v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)................................................................23

*Hemi Grp. v. City of New York*, 559 U.S. 1 (2010) ......................................................................22

*Hogland v. Athens Regional Health Services, Inc.*, 2995 WL 4145738 (M.D. Ga.
    Jan. 21, 2005).......................................................................................................................30

*In re McMullen*, 386 F.3d 320 (1st Cir. 2004) ............................................................................30

*In re S. African Apartheid Litig.*, 56 F. Supp. 3d 331 (S.D.N.Y. 2014) ......................................19

*Jalevare v. Alpha Kappa Alpha Sorority, Inc.* 521 F. Supp. 2d 1 (D.D.C. 2007) .......................33

*Jungquist v. Sheil Sultin Bin Khalifa Al Nahayan*, 115 F.3d 1020 (D.C. Cir. 1997)....................8

*Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659 (2013).................................................3, 18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)..........................................................................25

*Mahoner v. Bush*, 224 F. Supp. 2d 48 (D.D.C. 2002), *aff'd*, 2003 WL 349713
    (D.C. Cir. Feb. 12, 2003) .....................................................................................................13

*Moore v. Motz*, 437 F. Supp. 2d 88 (D.D.C 2006)........................................................................6

*National Resident Matching Program v. Electronic Residency LLC*, 720 F. Supp.
    2d 92 (D.D.C. 2010) ..........................................................................................................6, 7

*Noble v. AAA Corp.*, 2013 WL 1324915 (N. D. Ill. 2013) .....................................................30, 31

*Novak-Canzeri v. Al Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) .................................................7

*Perrin v. Vuliai*, 2016 WL 795900 (E.D. Mich. Feb. 29, 2016).................................................30

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279 (D.C. Cir. 2007) ...................................................................................................26

*Qetjen v. Central Leather Co.*, 246 U.S. 297 (1918) ....................................................18

*Reingold v. Deloitte Haskins & Sells*, 599 F. Supp. 1241 (S.D.N.Y. 1984)................31

*Schneider v. Kissinger*, 310 F. Supp. 2d 251 262 (D.D.C. 2004)..................................14

*Seabury v. City of New York,* 2006 WL 1367396, at * 5 (E.D.N.Y. May 18, 2006)...................29

*Sievarding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93 (D.D.C. 2010) .........................4

*Silverman v. Weil*, 662 F. Supp. 1195 (D.D.C. 1987)....................................................31

*Spilky v. Helphand*, 1993 WL 159944 (S.D.N.Y. May 11, 1993) ................................29

*Stutts v. De Deitrich Group*, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) ..............24

*U.S. v. Loe*, 248 F.3d 449 (5th Cir. 2001) ...................................................................30

*Ultramares Corp. v. Touche*, 255 N.Y. 170 (1931) .....................................................33

*Underhill v. Hernandez*, 1168 U.S. 250 (1897)............................................................18

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002)........................31

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982)....................................................................................25

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 494 U.S. 400 (1990)............17

*Wallace v. District of Columbia*, 685 F. Supp. 2d 104 (D.D.C. 2010) ........................28

*World Wide Minerals Ltd. v. Rep. of Kazakhstan*, 116 F. Supp. 2d 98 (D.D.C. 2000) ...............................................................................................................8, 17

*World Wide Minerals Ltd. v. Rep. of Kazakhstan*, 298 F.3d 1154 (D.C. Cir. 2002) ...................16

*Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72 (D.D.C. 2004) ............9

*Zivotovsky v. Kerry*, 576 U.S. ___, 135 S.Ct. 2076 (2015)..........................................14

## **Statutes**

18 U.S.C. § 2333................................................................................................21

18 U.S.C. § 2339A.............................................................................................21

18 U.S.C. § 2339C ...........................................................................................................................21

D.C. Code § 13-334 ............................................................................................................................6

D.C. Code § 13-423 ............................................................................................................................6

Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 25, 1995) .........................................................16

Fed. R. Civ. P. 9(b) .........................................................................................................................31

Fed. R. Civ. P. 12(b)(2)....................................................................................................................10

Trade Facilitation and Trade Enhancement Act of 2015, Pub. L. No. 114-125, 130
    Stat. 122 (Feb. 24 2016)..........................................................................................................15

## PRELIMINARY STATEMENT

Plaintiffs' complaint is a strident political manifesto masquerading as a legal pleading.[1] Its purported subject is the Israeli-Palestinian conflict, one of the world's longest running, most tragic and, to date, more intractable political controversies. It was plainly contrived by someone with a political agenda. But the question before the Court is whether it states a cause of action.

Plaintiffs include several U.S. citizens who reside in the United States, and a number of individuals with unspecified citizenship who reside in the Gaza Strip and the West Bank, areas that to various extents have been under Israeli control since the Six Day War of 1967.[2] Thirteen of the plaintiffs appear to be deceased. Plaintiffs allege a wide-ranging and decades-long conspiracy whose purpose, according to Plaintiffs, is to fund the expansion of settlements in the West Bank.

Defendant Billet Feit & Preis, P.C. ("BFP") is a New York-based accounting (Rivkin firm (Rivkin Dec. Ex. D) which is being accused by Plaintiffs of participating in this conspiracy, which includes "arm[ing] and train[ing] foreign militia," "ethnic cleansing," and "genocide," (First Cause of Action); "aiding and abetting the commission of war crimes, crimes against humanity, and genocide in violation of the law of nations," (Second Cause of Action); and other misdeeds. According to Plaintiffs, all these misdeeds are alleged to have been carried out via the filing of tax documents prepared by BFP with the Internal Revenue Service.

---

[1] On August 12, 2017, the Qatari news website *Al Jazeera*, which is no friend of Israel, ran a news article about this case, describing this lawsuit as a propaganda effort intended to help Saudi Arabia lobby against the enactment of the Justice Against Sponsors of Terrorism Act ("JASTA"), and asserting that plaintiffs' counsel, Martin McMahon, Esq., has a long history of representing Saudi interests. http://www.aljazeera.com/news/2017/08/case-israel-officials-helped-saudi-arabia-170811091713476.html. (Rivkin Decl. Ex. A). Moving Defendant Billet Feit & Preis P.C. takes no position as to the accuracy of *Al Jazeera's* surmise.

[2] Israel withdrew or "disengaged" from the Gaza Strip in 2005, and under the 1993 Oslo Accords Israel ceded municipal control of large portions of the West Bank to the Palestinian Authority.

The sum-total of the wrongdoing of which BFP is accused is assisting defendants Kushner Family Foundation ("KFF") and American Friends of Bet El Institutions ("Bet El") in obtaining their 501(c)(3) tax-exempt status and filing their U.S. income tax returns. Plaintiffs' argument goes something like this: BFP prepares KFF's and Bet El's tax returns; KFF and Bet El fundraise in the U.S. and donate money to certain Israeli NGOs; these Israeli NGOs provide money, directly or indirectly, to the Israeli Defense Forces ("IDF"); IDF then allegedly uses that money to buy weapons and train militias; the militias then allegedly promote the expansion of settlements of the West Bank.[3] This, according, to plaintiffs, renders BFP complicit in war crimes, ethnic cleansing, and genocide, and liable for violations of, among others, the Alien Tort Statute ("ATS") and the Antiterrorism Act ("ATA").

Defendant BFP belives that most of these allegations are nothing but hysterical conspiracy theories for which no evidence will ever be presented by the Plaintiffs and grotesquely contorted exaggerations. However, at the moment this is a motion to dismiss, and movant hopes to never have to get into the discovery weeds to determine what money is paid by the Israeli Army for alleged "militias" and "settlements."

The grounds for dismissal of plaintiffs' claims are several.

*First*, the claims against BFP should be dismissed for lack of personal jurisdiction, as BFP does not have the requisite contacts with the District to be subject to jurisdiction under DC's long-arm statute.

*Second*, the claims must be dismissed as non-justiciable under the political question and the act of state doctrines. "It is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-Palestinian conflict," this Court stated in *Doe I v. State of Israel*,

---

[3] In a surprising omission, Plaintiffs have failed to name the letter carrier who delivers the tax returns as a defendant.

400 F. Supp.2d 86, 111-12 (D.D.C. 2005), a case that, except for the identity of the defendants, is factually nearly identical to this case. As in *Doe I*, the claims here are "peculiarly volatile, undeniably political, and ultimately nonjusticiable." *Id*.

*Third*, the claims must be dismissed on the merits. The massive complaint, while heavy on rhetoric, completely fails to state a claim under any of the statutory provisions of the ATA and the ATS. The damages that are alleged are economic losses attributable to alleged misappropriation of land in the West Bank, and personal injuries stemming from the conflict between Israelis and Palestinians. The Amended Complaint contains a parade of horribles attributed to the IDF and the Israeli government. But, as to BFP, the only substantive allegations are obtaining tax-exempt status and preparing tax returns for United States NGOs. The causal connection between BFP's conduct and the alleged war crimes is beyond attenuated and cannot be sustained under either the ATA or the ATS, or any of the other causes of action.

Also, the claims of conspiracy and aiding and abetting are not cognizable under the ATA, and the ATS claims must be dismissed because the causes of action do not sufficiently "touch and concern" the United States. This Court does not have jurisdiction over these claims under *Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659 (2013).

Finally, the claims of aiding and abetting income tax fraud (Fourth Cause of Action) and negligence (Fifth Cause of Action), should be dismissed as neither one is remotely cognizable under the applicable law.

## ALLEGATIONS IN THE AMENDED COMPLAINT

The allegations against BFP in the Amended Complaint are long on generalities but short on specifics. The only substantive allegations are that BFP assisted KFF and Bet El in obtaining their 501(c)(3) tax exempt status and prepared their tax returns. The claims against BFP are thus

even one further step removed from KFF and Bet El in the long chain of purportedly causal links alleged by Plaintiffs—a chain that begins with the filing of a tax form and ends with violence and terrorism in the West Bank supposedly committed by the army of a sovereign friendly nation.

For all the hyperbole, the Amended Complaint contains essentially zero factually supported specific allegations to support the claims against BFP. There are simply no well-pled facts that would support the conclusion that BFP's routine accounting work for United States NGOs proximately caused injury to any of the plaintiffs. No facts alleged in the Amended Complaint give rise to a legally cognizable claim under any of the theories alleged by Plaintiffs.

## ARGUMENT

### A.      Legal Standard for Motion to Dismiss

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The plausibility standard requires more than "sheer possibility" that a defendant is liable. *Id*. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The test is two-pronged: First, the court "identifies factual allegations that are entitled to an assumption of truth"; and, second, "determines whether they plausibly give rise to an entitlement to relief." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 14 (D.D.C. 2010) (quotations omitted). Conclusions, including legal conclusion couched as factual allegations, are to be disregarded. *Sievarding v. U.S. Dep't of Justice*, 693 F. Supp.2d 93, 99-100 (D.D.C. 2010) (quotations omitted). Assessing the plausibility of a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Blackwell v. SecTek,*

*Inc.*, 61 F. Supp.3d 149, 155 (D.D.C. 2014) (quotations omitted). Courts "need not accept inferences drawn by plaintiffs" if they are unsupported by the facts in the complaint. *Seivarding, supra.*

## B.      There is No Personal Jurisdiction in DC Over BFP

The Amended Complaint provides little illumination as to the basis for asserting personal jurisdiction over BFP, a New York accounting firm. In the "Jurisdiction" section of the Amended Complaint, Plaintiffs allege, in ¶ 4, that:

> BFP principals have … conspired on U.S. soil to defraud the IRS by encouraging their donors to take illegal tax deductions for expenses incurred in numerous criminal activities, e.g., setting up militia units, firing ranges, and sniper schools, buying M16 Kalashnikovs, sniper scopes, body armor, and percussion grenades.

*Id.* In the "Venue" section of the Amended Complaint, Plaintiffs allege, in ¶ 22(v), that:

> Defendant accounting firm BFP principals, on behalf of their clients, have applied for 501(c)(3) tax-exempt status here in Washington D.C., and have also filed fraudulent annual charity tax returns here—Form 990's. The reason these returns can be deemed to be fraudulent is that they are intentionally incomplete and do not disclose the true nature of the charitable activities engaged in overseas—arms trafficking, genocide, and theft of private property.

*Id.*

The above allegations appear to be the sum total of the claimed bases for personal jurisdiction over BFP in this District. It thus appears that personal jurisdiction is predicated on allegations of (a) conspiring to defraud the IRS "on U.S. soil;" (b) assisting clients to obtain 501(c)(3) status; and (c) filing charity tax returns (Form 990's).

It is the plaintiff's burden to make a *prima facie* showing that the Court has personal jurisdiction over a defendant. *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C.Cir. 1988). "Plaintiff must allege specific facts on which personal jurisdiction can be

based; [i]t cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C 2006).

Although the Plaintiffs do not cite the specific provision of the DC long-arm statute on which personal jurisdiction is alleged to be predicated, it would appear that the Plaintiffs are relying either on D.C. Code § 13-423(a)(1) (specific jurisdiction over defendants who transact business in the District), or D.C. Code § 13-334(a) (general jurisdiction over defendant "doing business" in the District).[4]

To establish personal jurisdiction under § 13-423(a)(1) a plaintiff must establish that: (1) defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Atlanigas Corp. v. Nisource, Inc*., 290 F. Supp. 2d 34, 43 (D.D.C. 2003) (quoting *Dooley v. United Technologies Corp*., 786 F. Supp. 65, 71 (D.D.C. 1992)). "The constitutional touchstone of the due process determination is whether the defendant purposefully established minimum contacts in the forum state…or purposefully availed itself of the privilege of conducting business in the forum state, and whether the defendant's conduct in connection with that forum is such that it should reasonably anticipate being hailed into court there." *National Resident Matching Program v. Electronic Residency LLC*, 720 F. Supp. 2d 92, 98 (D.D.C. 2010) (citations and quotations omitted). Plaintiff must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it invoked the benefits and protection of the District's laws. *Atlanigas, supra* at 44. In addition, "the plaintiff's jurisdictional allegations must arise from the same conduct of which it complains."

---

[4] As Plaintiffs do not allege any tortious injury in the District, D.C. Code § 13-423(a)(4) does not apply on its face.

*National Resident Matching Program,* 720 F. Supp. 2d at 98. "The claim itself must have arisen from the business transacted in the District of Columbia or there is no jurisdiction." *Novak-Canzeri v. Al Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994).

"Send[ing] communications to a plaintiff who happens to be located in a particular forum does not, by itself, establish personal jurisdiction there." *National Resident Matching Program,* 720 F. Supp. 2d at 99. *See also FC Inv. Group LC v. IFX Markets, Ltd*., 479 F. Supp. 2d 30, 39 (D.D.C.2007) (regular phone calls into the District from elsewhere for not constitute 'transacting business' in the District of Columbia), *aff'd* 529 F.3d 1087 (D.C. Cir. 2008).

In this case, the jurisdictional allegations are scantier than even a few phone calls—or, for that matter, even one phone call. Even granting the widest possible plausibility to the Plaintiffs' wild allegations of international conspiracies and war crimes, under any objective standard the jurisdictional basis asserted with respect to BFP cannot be deemed as anything other than baseless.

The alleged conspiracy to defraud the IRS "on U.S. soil," even if it could properly serve as a predicate for a private cause of action (which it quite obviously cannot), does not by any stretch of reasoning translate into a "transaction of business" in the District of Columbia. Nor does it satisfy the constitutional minimum contacts requirement.

Assisting clients to obtain 501(c)(3) tax exempt status has only the most attenuated and tangential connection to the District of Columbia—only insofar as the Internal Revenue Service has an office in Washington D.C. According to the IRS Publication 4220, made available on the IRS website, entitled "Applying for 501(c)(3) Tax-Exempt Status," (Rivkin Dec. Ex. B), the "EO Determinations Office Mailing Address" is located in Cincinnati, Ohio. Thus, to the extent any mailings are involved in connection with BFP's obtaining 501(c)(3) status for its clients, these

would be between New York (where BFP is located) and the IRS Office in Ohio. There is no connection at all with Washington, D.C.

Neither can the filing of Form 990's serve as jurisdictional basis in the District of Columbia. Form 990, in the section entitled "When, Where and How to File," clearly states that the form is to be filed with the IRS Service Center located in Ogden, Utah. (Rivkin Dec. Ex. C).

When Plaintiffs amended their original complaint, they added what they claim be a "conspiracy theory" basis for personal jurisdiction over BFP. In support of this "conspiracy theory" basis for jurisdiction, Plaintiffs cited, in their motion for leave to amend, *Jungquist v. Sheil Sultin Bin Khalifa Al Nahayan*, 115 F.3d 1020 (D.C. Cir. 1997) and *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988). Yet in both these cases, the Court rejected the conspiracy theory of personal jurisdiction.

The *Jungquist* court stated:

> [B]ald speculation or conclusory statement that individual are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory…. Instead, the plaintiff must plead with particularity the conspiracy <u>as well as the overt acts within the forum taken in furtherance of the conspiracy</u>…. [Because] the Jundquists failed to plead with sufficient particularity any overt acts within the District of Columbia in furtherance of the conspiracy,… personal jurisdiction over Sheikh Sultan and Samea is unavailable under a conspiracy theory.

115 F.3d at 1031 (internal citations and internal quotations omitted; emphasis added). The *First Chicago* court likewise stated:

> It is settled that a plaintiff musts allege specific acts connecting the defendant with the forum,… and that the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction.

836 F.2d at 1378-79 (internal citations and quotations omitted). *See also World Wide Minerals Ltd. v. Rep. of Kazakhstan*, 116 F. Supp. 2d 98, 108 (D.D.C. 2000) *quoting Jungquist, supra,* 115 F3d at 1031 ("Most courts utilize conspiracy jurisdiction warily and require that a plaintiff

"plead with particularity the conspiracy as well as the overt acts within the forum." For conspiracy jurisdiction to function there must be a substantial act within the forum."); *Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 79-80 (D.D.C. 2004) ("Personal jurisdiction, even if based on conspiracy, requires purposeful availment," *i.e.,* the defendant's awareness of knowledge of the co-conspirator's acts in the forum).

Of the four causes of action alleged against BFP, only one purports to state a claim of conspiracy. The First Cause of Action alleges a conspiracy to "arm and train foreign militia," "ethnic cleansing," and "genocide." The Complaint alleges no "overt acts," and certainly no "substantial acts" within the District of Columbia "in furtherance" of this alleged "conspiracy," much less alleges them with the requisite degree of particularity. Moreover, it must be emphasized that the only actions which BFP is alleged to have done consist of giving tax advice and preparing tax returns. All of the grandiose allegations involving foreign militias, ethnic cleansing, and genocide are claimed to have been done by others, who it is alleged, were funded by organizations for whom BFP merely prepared tax filings.

The remaining causes of action in which BFP is included do not allege any conspiracy at all. The Second Cause of Action is for "aiding and abetting the commission of war crimes, crimes against humanity and genocide in violation of the law of nations;" The Fourth Cause of Action is for "aiding and abetting income tax fraud;" and the Fifth Cause of Action is for negligence. Thus, the conspiracy theory of jurisdiction, even if it were remotely viable here would certainly not apply to these non-conspiracy causes of action.

Neither could Plaintiffs satisfy the "essentially at home" test of *Daimler v. Bauman*, 134 S. Ct. 746 (2014). That standard allows courts to assert general jurisdiction over foreign corporations when their affiliations with the state are so "continuous and systematic" as to render them essentially at home in the forum state. *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558

(2017). BNF has no presence in the District, much less one that is continuous or systematic. (Rivkin Dec. Ex. D).

For these reasons, the Amended Complaint should be dismissed as against BFP pursuant to Fed. R. Civ. P. 12(b)(2).

## C.      The Political Question Doctrine Bars All of Plaintiffs' Claims

The Amended Complaint asks the Court to substitute its judgment for the delicate and intricate policy decisions and choices made by the governments of Israel and the U.S. during the course of the Israeli-Palestinian conflict in the fifty years since the Six Day War. For the Plaintiffs to obtain relief, the Court necessarily would have to make an adjudicative determination that Israel does not have sovereign rights over the West Bank and Gaza, where the settlements are located. The Court would also have to make an adjudicative determination that the funding of settlement activity and related Israeli military activity, as well as the performance of construction and other services in the West Bank and Gaza, are unlawful. In order to obtain relief on their ATS claims, the Plaintiffs would need to have the Court rule as a matter of fact and law whether the Israeli activities in the West Bank and Gaza constitute international crimes, including "war crimes," "genocide," and "ethnic cleansing." For Plaintiffs to obtain relief on the Fifth Cause of Action (negligence), the Court, again, would have to adjudicate whether the building of settlements in the West Bank is tortious under U.S. law.

Plaintiffs are thus inviting the Court to wade into what is both an internal Israeli political issue and a major international political dispute, and, moreover, to add its own policy views to those of the U.S. Executive Branch and Congress, which have been wrestling with how to resolve the Israeli-Palestinian conflict for decades.

These are all inherently political questions, intertwined, as they are, with sensitive issues of foreign policy. The Court cannot resolve the questions above without making pronouncements on, and thereby injecting itself into, sensitive and complex foreign policy issues that are the province of the Executive and Legislative Branches. Also, the Court cannot resolve these issues without judging the sovereign actions of the Israeli government taken within its own territory or within armed conflicts.

The very purpose of the political question doctrine, rooted in the separation of powers mandated by the Constitution, is to render claims such as these nonjusticiable. Under the doctrine, federal courts may not resolve "controversies which resolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 839, 840 (D.C. Cir. 2010).

*Baker v. Carr*, 369 U.S. 186 (1962), is the seminal decision on the political question doctrine. In that case, the Supreme Court held that a question is political, and therefore nonjusticiable, when any one of the following six factors is present:

[1]     a textually demonstrable constitutional commitment of the issue to a coordinate political department; or

[2]     a lack of judicially discoverable and manageable standards for resolving it; or

[3]     the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion; or

[4]     the impossibility of a court's undertaking independent resolution without expressing a lack of the respect due coordinate branches of government; or

[5]     an unusual need for unquestioning adherence to a political decision already made; or

[6]     the potentiality of embarrassment from multifarious pronouncements by various departments to one question.

369 U.S. at 217. Virtually all these factors squarely apply to Plaintiffs' claims.

A remarkably similar set of allegations to those asserted here was presented to this Court in *Doe I v. State of Israel*. In that case, plaintiffs asserted claims against the United States, Israeli officials and the IDF, and also against a religious corporation located in the U.S., organized under New Jersey law. *Id.,* 400 F. Supp. 2d at 112. The thrust of the allegations, as here, was that the defendants raised funds for Israeli settlers in the West Bank. The Court dismissed the complaint as to all defendants based, *inter alia*, on the political question and act of state doctrines. *Doe I*, 400 F. Supp. 2d at 96. The Court wrote: "It is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-Palestinian conflict, which has raged on the world stage with devastation for both sides for decades." *Id*. at 111-12. The Court further stated that the plaintiffs' claims "would have this Court adjudicate the rights and liabilities of the Palestinian and Israeli people, requiring determinations (a) regarding "to whom the land in the West Bank actually belongs," (b) "that Israeli's self-defense policies are tantamount to terrorism," (c) "that the Israeli settlement activities are illegal and tortious," and (d) "characterize[ing] the ongoing armed conflict in the West Bank as either 'genocide' . . . or self-defense." *Id*. at 112. The Court concluded:

> The Court can do none of this. Whether plaintiffs dress their claims in the garb of RICO or other federal statutes, or the tort laws of various states, the character or those claims is, at its core, the same: peculiarly volatile, undeniably political, and ultimately nonjusticiable. A ruling on any of these issues would draw the Court into the foreign affairs of the United States, thereby interfering with the sole province of the Executive Branch.

*Id*. The *Doe I* court further ruled that a determination that Israeli settlement activities are illegal or tortious "would also implicitly condemn American foreign policy by suggesting that support of Israel is wrongful. Conclusions like these present a potential for discord between the branches

that further demonstrate the impropriety or a judicial decision on these quintessentially political issues." *Id*.

The *Doe I* decision is perfectly in line with other courts' decisions purporting to arise out of the Israeli-Palestinian conflict. The plaintiff in *Mahoner v. Bush*, 224 F. Supp.2d 48 (D.D.C. 2002), *aff'd* No. 02-5335, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003), sought a declaration that the appropriation of funds to Israel by the President violated the Establishment Clause. The court dismissed the claim, holding that "a determination of whether foreign aid to Israel is necessary . . . is a question uniquely demanding of a single-voiced statement of the Government's views, and a decision of a kind for which the Judiciary has neither aptitude, facilities nor responsibility." 224 F. Supp.2d at 53 (quotations omitted).

In *Corrie v. Caterpillar Inc.*, 503 F.3d 974 (9th Cir. 2007), plaintiff sued U.S. manufactures of bulldozers, alleging that the manufacturer provided IDF with equipment it allegedly knew would be used in violation of international law, which led to the death of a protestor who knowingly entered a closed military zone, deliberately stood in front of an armored bulldozer, and was fatally run over as the driver could not see her. The Ninth Circuit affirmed the dismissal of the claims, stating that "[a]llowing this action to proceed would necessarily require the judicial branch of our government to question the political branches' decision to grant extensive military aid to Israel. It is difficult to see how we could impose liability on Caterpillar without at least implicitly deciding the propriety of the United States' decision to pay for the bulldozers which allegedly killed the plaintiff's family member." *Id.*, 503 F.3d at 982.

Since the *Doe I* decision nothing has changed to make an adjudication of Plaintiffs' claims any less of a political question. If anything, the Israeli-Palestinian conflict has become more politicized, volatile and complicated. The *Baker v. Carr* factors mandate a dismissal.

First *Baker* Factor. The conduct of foreign policy, which is at the heart of this case, is committed to the political branches of the Federal government. *Haig v. Agee*, 453 U.S. 280, 292 (1981). America's policy toward the State of Israel and the Israeli-Palestinian conflict is among the thorniest and complicated policy issues of the past fifty years. The U.S. government has provided many billions of dollars in aid to Israel during the past decades and continues to provide funds annually. Every President and Secretary of State since the 1970s has sought to find a path to peace between Israel and its neighbors and to protect U.S. interests. What the Supreme Court said about Jerusalem in *Zivotovsky v. Kerry*, 576 U.S. ___, 135 S.Ct. 2076 (2015) applies with equal force to the West Bank and Gaza: "Questions touching upon the history of the ancient city and its present legal and international status are among the most difficult and complex in international affairs. In our constitutional system those matters are committed to the legislature and the executive, not the judiciary."

Second *Baker* Factor. Plaintiffs claim that the IDF and the Israeli settlers commit war crimes, crimes against humanity, and genocide. The Israeli view is obviously quite different. Israel maintains that settlers' activities constitute lawful economic development and IDF's activities are lawful acts of self-defense against terrorism and against those who publicly advocate for Israel's destruction. Whatever the views of the Plaintiffs and Defendants here, the Court is in no position to find "judicially discoverable and manageable standards for resolving" these fiercely contested questions. *Baker*, 369 U.S. at 217. The Court would be required to "measure and balance a myriad of thorny foreign and domestic political considerations" which are "inherently political." *Schneider v. Kissinger*, 310 F. Supp. 2d 251 262 (D.D.C. 2004); *accord, Doe I*, 400 F. Supp.2d at 112-13.

Third *Baker* Factor. The Court cannot decide the issues raised in the Amended Complaint without making "initial policy determination[s] of a kind clearly for nonjudicial discretion."

*Baker*, 369 U.S. at 217. The Amended Complaint is predicated on the notion that each of the alleged activities underlying Plaintiffs' claims—donations, fundraising for lawful entities, *etc.*—becomes unlawful because Plaintiffs claim that all dealings with Israeli settlements, settlers or armed forces are *ipso facto* in violation of international law or otherwise inherently unlawful. To find for the Plaintiffs the Court would necessarily need to characterize the actions of Israelis, their government and military, as "genocide" and "ethnic cleansing." A more blatant case of a court being asked to make a political judgment can hardly be conceived. *See Corrie, supra.*

Fourth and Sixth *Baker* Factors. Plaintiff seek a judgment which, if granted, would express "a lack of the respect due coordinate branches of government" and raise "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217. Congress's and the Executive Branch's support for the Israeli government has been one of the hallmarks of U.S. foreign policy since the founding of the State of Israel in 1948. The Executive Branch has not only <u>not</u> prohibited sales of arms to Israel, but has approved of billions of dollars of appropriations for Israeli arms purchases and other military aid. Plaintiffs are asking this Court to determine that alleged general financial support to those same military forces constitutes participation in war crimes, crimes against humanity, and genocide. Such a decision would implicitly condemn the consistent policy decisions of the Executive and Legislative Branches over the past several decades.

Also, only last year Congress passed the Trade Facilitation and Trade Enhancement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122 (Feb. 24 2016) ("TFTEA"), reaffirming that "Israel is America's dependable, democratic ally in the Middle East—an area of paramount strategic importance to the United States," and opposing as a matter of policy "politically motivated actions that penalize or otherwise limit commercial relations specifically with Israel, such as boycotts or, divestment from, or sanctions against Israel." TFTEA § 909(a)(b). It is difficult to

see how a judgment of this Court predicated, at it would necessarily need to be, on a finding that Israel is engaged in "genocide" and "war crimes" would not be in direct contravention of *Baker*'s "due respect" and "embarrassment" factors.

Lastly, the President, by executive order, signed under the laws enacted by Congress intended to deal with "grave acts of violence committed by foreign terrorists that disrupt the Middle East peace process," has prohibited donations by U.S. persons to persons or organizations specified in the order. Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 25, 1995). The organizations specified in the executive order are Hamas, Hezbollah and the Popular Front for the Liberation of Palestine. The order expressly does *not* include the IDF, Israeli settlements or anyone claimed in the Amended Complaint to have engaged in terrorism. On the contrary, the order reflects a determination by the President as to what organizations in the Middle East may not receive contributions from Americans because of their acts of terrorism, and the President has not included the organizations alleged to have received donations in this case. Plaintiffs, in effect, seek to have this Court overrule the President's determination—a determination that is exclusively within the President's authority. Such a judicial decision would be an intrusion upon the authority of the political branches to conduct foreign affairs. It would also present "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217.

For the foregoing reasons the Amended Complaint should be dismissed under the political question doctrine.

## D.    Plaintiffs' Claims Are Not Justiciable Under the Act of State Doctrine

The act of state doctrine precludes courts from delving into the validity of public acts committed by a foreign sovereign with its own territory. *Banco Nacional de Cuba v. Sabbatino*,

376 U.S. 398, 401 (1964), *accord World Wide Minerals Ltd. v. Rep. of Kazakhstan*, 298 F.3d 1154, 1164-65 (D.C. Cir. 2002). The doctrine is invoked "when the outcome of the case turns upon…the effect of official actions by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 494 U.S. 400, 407 (1990). It is rooted in the Constitutional separation of powers, "reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." *W.S. Kirkpatrick*, 493 U.S. at 405 (quotations omitted). The political doctrine bars a claim when (a) it involves an official act of a foreign sovereign; (b) it is performed within that sovereign's own territory; and (c) it seeks relief that would require the court to sit in judgment of the sovereign's official acts. *Id*.

The fundamental question—in fact, the only question—raised by the Amended Complaint is the propriety of Israeli activities in the West Bank and Gaza. In *Doe I*, this Court confirmed the applicability of the act of state doctrine to Israeli activities in the West Bank and Gaza. The court stated: "[F]ederal judges have long recognized that the exploitation of natural resources and land within a nation's own borders is, by definition, an act of state." 400 F. Supp. 2d at 114. The plaintiffs in *Doe I* argued, as the Plaintiffs will no doubt here, that the acts they complain of did not occur within Israel's "borders." This Court should reject this argument, as did the *Doe I* court. The latter stated that this argument itself "raises a political question—the court is not competent to adjudicate whether the West Bank, in dispute for decades, belongs to the Israelis or the Palestinians." *Id*. at 114, n.6. The court went on: "Even if, as plaintiffs allege, the Israeli defendants have taken land or possessions for the use of Israel and its people, such actions are only possible by virtue of the fact that the Israeli defendants are vested with the powers and resources of the Israeli government." *Id*.

The claims against BFP are based on their accounting work for United States not for profit entities, who are in turn accused of raising funds that ultimately and indirectly find their way to Israeli defense forces.[5] For the Court to entertain these claims would necessarily require it to adjudicate whether the Israeli armed forces are engaged in war crimes or other tortious conduct on Israeli soil. The Court has no jurisdiction to make such adjudication under the act of state doctrine. The acts of the military of a foreign nation within its own borders have long been regarded as classic acts of state. *See Underhill v. Hernandez*, 1168 U.S. 250 (1897), *Qetjen v. Central Leather Co.*, 246 U.S. 297 (1918). Any determination in favor of Plaintiffs here would be a direct attack on Israel's official policies and their governance of their own territory. For this reason as well the claims must be dismissed.

### E.    Claims Under the Alien Tort Statute Must Be Dismissed

The Supreme Court's decision in *Kiobel v Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1665 (2013) precludes Plaintiffs' claims under the Alien Tort Statute ("ATS"). Although the ATS allows federal courts to recognize private claims for a small number of international law violations, *Kiobel* held that the presumption against extraterritorial application of the statute applies to all claims brought under the ATS. "When a statute gives no clear indication of an extraterritorial application, it has none." *Kiobel*, 133 S. Ct. at 1664. The presumption against extraterritorial application of federal laws "serves to protect against unintended clashes between our laws and those of other nation which could result in international discord." *EEOC v. Arabian American Oil, Co*. 499 U.S. 244, 248 (1991). As noted by one court, "[t]he Supreme Court's

---

[5] Not that it matters for purposes of this motion, but the Plaintiffs have offered no substantiation for their claim that money from the Kushner Family Foundation or American Friends of Bet El goes to the Israeli Army or any nefarious or illegal activity.

decision in *Kiobel II* drastically limits the viability of ATS claims based on conduct occurring abroad." *In re S. African Apartheid Litig.*, 56 F. Supp.3d 331, 336 (S.D.N.Y. 2014).

While the *Kiobel* Court allowed that some "claims [may] touch and concern the territory of the United States…with sufficient force to displace the presumption against territorial application" (133 S. Ct. at 1669), "the Supreme Court expressly held that claims under the ATS cannot be brought for violation of the law of nations occurring within the territory of a sovereign other than the United States." *Balintulo v. Daimler AG*, 727 F.3d 174, 189 (2d Cir. 2013).

The "touch and concern" standard has been deemed inapplicable by courts in a number of post-*Kiobel* cases with similar allegations. For example, in *Balintulo v. Ford Motor Co.,* 796 F.3d 160, 169 (2d Cir. 2013), the court rejected the argument that defendant who supplied the South African government with its products in violation of the sanctions regime engaged in conduct that touched and concerned the United States. Needless to say, BFP's providing tax advice to KFF and Bel El—a business activity *that falls under no sanctions regime*—"touches and concerns" the United States far less. *See also Cardona v. Chiquita Brands Intern., Inc.*, 760 F.3d 1185, 1189-90 (11th Cir. 2014) (rejecting ATS claims for torts that occurred on foreign territory); *Giraldo v. Drummond Co.*, No. 2:09-CV-1041-RDP, 2013 WL 3873960, at *8 (N.D. Ala July 25, 2013) (holding that "[w]here a Complaint alleges activity in both foreign and domestic sphere, an extraterritorial application of a statute arises *only* if the event on which the statute *focuses* did not occur abroad. Of course, the ATS *focuses* on the torts of extrajudicial killings and war crimes (violations of the law of nations), and…the tort at issue occurred abroad, in Columbia, and *not* in the United States.") (Emphasis in original). Notably, in *Drummond*, the defendant was alleged to have specifically directed the predicate torts that were themselves violations of international law.

The violations of the law of nations alleged by the Plaintiffs took place in Israel only. BFP's alleged wrongful conduct is providing tax advice to United States not for profit entities which, consistently with U.S. legal regime and U.S. government policies, raised funds for charity. Under *Kiobel*, BFP's actions come nowhere near satisfying the "touch and concern" standard and Plaintiffs' claims under the ATS must be dismissed.

Furthermore, Plaintiffs come nowhere close to adequately pleading aiding and abetting of terrorist acts under the ATS. Aiding and abetting liability under the ATS involves *mens rea* (knowledge) and *actus reus*. *Doe v. Exxon Mobil Corp*., 654 F.3d 11, 39 (D.C. Cir. 2011). The Amended Complaint fails to plausibly plead either.

As to the "knowledge" requirement, Plaintiffs must plausibly allege that at the time when BFP provided tax-related advice to KFF and Bet El, (1) BFP knew its clients were making or collecting charitable donations for Israeli NGOs; (2) BFP knew that its clients' intent was for these donations to be used for purposes of "war crimes," "genocide," *etc.*; and (3) BFP knew that these particular charitable donations would be used to carry out the specific acts that led to specific injuries alleged in the Amended Complaint. Plaintiffs do not and cannot plead any of this. Saying, as they do, that BFP "had to know" all of this is not pleading knowledge.

As to the *actus reus*, Plaintiffs must plausibly plead "practical assistance, encouragement, or moral support which has a substantial effect on the perpetuation of the crime." *Doe v. Exxon*, 654 F.3d 11, 34 (D.C. Cir. 2011). The notion that BFP's tax advice to KFF and Bet El in helping them obtain tax-exempt status had a "substantial effect" on the alleged "war crimes" and "genocide" in the West Bank and Gaza is as preposterous as it sounds.[6] *See, Doe v. Islamic*

---

[6] In fact, there is no "genocide," and there are no rampant "war crimes." This is all unsubstantiated manifesto ranting. The reality is quite different and much more nuanced. For example, Saeb Erekat, long the chief Palestinian negotiator with Israel, is presently awaiting a lung transplant in Israel—event though he has called for a

*Salvation Front,* 257 F. Supp.2d 115, 121 (D.D.C. 2003) (the alleged links between defendant's conduct and the acts committed by armed Islamic grounds were "much too tenuous" to support finding of aiding and abetting); *Carmichael v. United Techs. Corp.*, 835 F.2d 109, 115 (5th Cir. 1988) (aiding and abetting claim under the ATS cannot be stated absent a causal connection between defendant's conduct and the putative law of nations violation). For these reasons as well, the ATS claim must be dismissed.

## F.      Plaintiffs' Claims Under the ATA Must Be Dismissed

The following three elements must be pleaded to state a claim under the ATA: (1) injury to a United States national; (2) an act of international terrorism; and (3) causation. 18 U.S.C. § 2333(a) (providing that "[a]ny national of the United States injured in his or her person…by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sure therefor in any appropriate district court in the United States.").

Plaintiffs appear to allege, although it is not entirely clear from the rambling Amended Complaint, that BFP violated the "material support" sections of the ATA: §§ 2339A and 2339C. These sections impose liability for providing "material support" to terrorists (§ 2339A(a)), and for providing or collecting funds for terrorists (§ 2339A(a)(1)). Plaintiffs' theory, it seems, is that by providing tax advice BFP engaged in a conspiracy to provide material support to the actions of Israelis which Plaintiffs characterize as terrorism, and also aided and abetted such "terrorism."

To avoid dismissal the Amended Complaint must plead the following:

---

boycott of Israel! *See* http://www.timesofisrael.com/top-pa-official-saeb-erekat-treated-in-israel-as-he-awaits-lung-transplant/. (Rivkin Decl. Ex. E). Some "genocide."

First, each Plaintiff must be a U.S. citizen. 18 U.S.C. § 2333(a).[7] Second, Plaintiffs must plausibly allege that BFP provided material support and resources knowing that such support and resources would be used in preparation for, or to carry out, terrorist acts in violation of U.S. criminal law; or that BFP provided or collected funds with the intention or knowledge that such funds would be used for terrorist acts. § 2339A, § 2339C. Third, Plaintiffs must plausibly allege that they were injured "by reason" of BFP's actions. This requires a showing of "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp. v. City of New York*, 559 U.S. 1, 9 (2010). *See also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (the central question as to proximate cause is "whether the alleged violation led directly to the plaintiff's injuries."). Plaintiffs do not satisfy any of these elements.

To begin with, the recently enacted Justice Against Sponsors of Terrorism Act ("JASTA"), which amended the ATA, makes clear that secondary liability—based on conspiracy or aiding and abetting theories—is not available to the Plaintiffs here. JASTA provides that civil "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." JASTA § 4(a), *codified at* 18 U.S.C. §2333(d)(2). However, the injury claimed by the plaintiff must arise "from an act of international terrorism committed, planned, or authorized by an organization that has been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act." *Id*. This statutory limitation on secondary liability disposes of Plaintiffs' ATA claim. Neither Israel nor the IDF nor any of the settlements or settlers have been "designated as a foreign terrorist organization." For this reason alone, the ATA claim must be dismissed.

---

[7] Thus, even if the ATA were applicable here, the non-U.S. Plaintiffs do not have standing to sue under it.

Even if the Plaintiffs were not statutorily barred from proceeding under the ATA, the claims against BFP fail for utter absence of any plausible allegations of a causal chain. To state it more directly: Plaintiffs' must plausibly plead that BFP's tax-related work in the U.S. (obtaining tax-exempt status and filing tax returns for KFF and Bet El) caused the "war crimes," "crimes against humanity," and "genocide," which the Plaintiffs allege were perpetrated by the Israelis. To pose the issue thus is to expose the ludicrousness of the proposition. It is, in fact, the equivalent of saying that the actions of the IDF and the settlement expansion that are alleged in the Amended Complaint, would not have happened "but for" BFP obtaining tax-exempt status for, and preparing the tax returns of, KFF and Bet El in the United States. If, as demonstrated in KFF's motion to dismiss, the Amended Complaint fails by a mile to establish that charitable donations made by KFF "directly" enabled any "terrorist" activity, it fails by ten miles to show that BFP's tax-related work led "directly" to such activities. For these reasons, the ATA claims against BFP must be dismissed.

The ATA claim must also be dismissed for failure to plausibly plead any "agreement." Plaintiffs seek to tie BFP to the actions of the Israeli defendants by claiming that BFP participated in a "conspiracy," with those defendants. To plead a conspiracy, Plaintiffs must plausibly plead (a) an agreement; (b) to participate in an unlawful act; (c) that results in an injury; (d) that is caused by an over unlawful act performed by one of the parties to the agreement; (e) which act was done in the furtherance of the common scheme of the conspiracy. *Halberstram v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Plaintiffs' have not, and cannot, plausibly plead the existence of any agreement between BFP and any of the other defendants to commit any unlawful act.

The sum total of the "conspiracy" allegations as to BFP is that it "routinely [gave] illegal [tax] advice to donors intent on settlement expansion through theft of private property and the

commission of war crimes." (Am. Comp. ¶ 21). Thus, the conspiracy element that Plaintiffs attribute to BFP is the tax advice it provided to its client KFF, who, according to Plaintiffs, was "intent" on "theft of private property" and "war crimes." KFF's motion to dismiss amply demonstrates the absence in the Amended Complaint of any plausible pleading of an "agreement" between KFF and any of the Israeli defendants to perform any illegal act. This alone disposes of the conspiracy claim against BFP, inasmuch as its participation in the alleged "conspiracy" is entirely derivative of its clients' participation in it. But separately, as to the allegations against BFP, there is a total absence of a plausible pleading of any agreement between BFP and KFF (or any of the other defendants) to perform any illegal act. There is only the Plaintiffs' conclusory assertion, in support of which Plaintiffs offer no facts. The Amended Complaint does not state the requisite "specific time[s], place[s], or persons[s]" involved in any act in furtherance of the alleged conspiracy. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 565 (2007) ("the complaint here furnishes no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place"). The absence of any plausibly pled agreement renders the ATA conspiracy claim untenable.

Next, the ATA conspiracy allegations utterly lack any facts that could plausibly support any finding of knowledge or intent on the part of BFP. To demonstrate the requisite knowledge and intent, Plaintiffs would need to show that at the time when BFP provided tax advice to KFF and Bet El regarding their tax-exempt status, it knew that its clients were engaged in a conspiracy to fund war crimes and ethnic cleansing, and, moreover, intended that its tax advice would facilitate these crimes. There is exactly zero by way of non-conclusory allegations to support this. All Plaintiffs offer by way of knowledge and intent is the trope: "they must have known." This is insufficient to plead knowledge and intent. *See Stutts v. De Deitrich Group*, 2006 WL 1867060, at * 1 (E.D.N.Y. June 30, 2006) (rejecting as speculative the argument that

banks should have known they were enabling a chemical weapons program where there was no factual allegations supporting the banks' alleged knowledge). Plaintiffs must provide "more than labels and conclusions" in order to provide the grounds of entitlement to relief. *Twombly*, 550 U.S. at 555-56. As implausible as the Amended Complaint is in pleading that KFF knew and intended that its charitable donations be used to facilitate "war crimes" and "genocide," it is doubly implausible in pleading that BFP's tax advice was given with knowledge and intent that it be used for those same purposes. For these reasons as well the ATA claim must be dismissed.

Lastly, the ATA claims of non-U.S. plaintiffs must be dismissed under 18 U.S.C. § 2333(a), which expressly limits standing for claims of damages to "national[s] of the United States." *Corrie*, 403 F. Supp. 2d at 1026. None of the foreign Plaintiffs who have asserted claims under the ATA have standing to pursue their claims.

## G. Failure by Most Plaintiffs to Allege Concrete and Particularized Injuries Mandates Dismissal of Their Claims

To state a claim, each plaintiff must "assert a distinct, individual injury." *Akins v. Fed. Election Comm'n*, 101 F.3d 731, 737 (D.C. Cir. 1996). Injury must be "concrete and particularized," as well as "actual or imminent, nor conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The Amended Complaint does not allege any particular injury to most of the Plaintiffs, but, rather alleges that Plaintiffs, collectively, "have been injured by the aforementioned $2 billion money laundering scheme and illegal criminal activity which has been committed in the OPT on a daily basis;" (Am. Comp. ¶ 37) and that "[a]s a result of these Defendants participating in this civil conspiracy, the Plaintiffs and their relatives have been injured…." (Am. Comp. ¶ 106). This kind of "collective" damages pleading does not confer standing under Article III of the Constitution. *See, Valley Forge Christian Coll. v. Americans United for*

*Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("Art. III requires the party who invokes the court's authority to show that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."); *Lujan*, 504 U.S. at 581 ("While it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him *in a concrete and personal way*"); *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007) ("the asserted injury must be particularized—which the [Supreme] Court has also described as personal, individual, distinct, and differentiated—not generalized or undifferentiated.").

The Amended Complaint does not allege any concrete, particularized individual injury for any of the following 23 Plaintiffs: Susan Abulhawa, Abdur-Rahim Duhar, Linda Masour, Muhammad Jihad Muhammad Al-Qara, Muhammad Suleiman Mahmoud Baraka, Saad Malley, Sami Shawqi Ahmed Madi, Tagrid Eleyan Mahmoud Abu-Teer, Waddah Khalid Sofan, Wala'a Jihad Muhammad Al-Qara, Zeinab Safwat Abd Abu-Teer, Mahnmoud Ahmed Al-Bur'l, Alhmad Kamal Ibrahim Suleiman Abu-Teer, Ahmad Suleiman Mahmoud Sahmour, Ahmed Abdullah Muhammad Abu-Salah, Ali Abd Suleiman Abu-Teer, Ashraf Abu-Rahma, Basem Ibrahim Ahmed Abu Rahmeh, Hanafi Mahmoud Kamel Abu-Yousef, Ibrahim Khalil Suleiman Qablan, Ibrahim Suleiman Qablan Abu-Qablan, Ismail Mahmoud Muhhamad Abu-Dharifa, Jawad Issa Ibrahim Salamah Al Horoob, Jawaher Ibrahim Abu-Rahmeh.

The claims of all these Plaintiffs must be dismissed for lack of Article III standing.

## H.      Claims of Deceased Plaintiffs Must Be Dismissed for Lack of Standing

BFP counsel's preliminary research reveals that at least 13 of the Plaintiffs named in the Amended Complaint are actually dead:

- **Plaintiff Mahmoud Mohammid Ali Shaalan** appears to have died on February 26, 2016.

https://www.maannews.com/Content.aspx?id=770460 .

- **Plaintiff Muhammad Suleiman Mahmoud Baraka** appears to have died on July 30, 2016.

  http://imemc.org/article/68429/

- **Plaintiff Safwat Abd Abu-Teer** appears to have died on July 23, 2014. http://www.btselem.org/statistics/fatalities/after-cast-lead/by-date-of-event/gaza/palestinians-killed-by-israeli-security-forces

- **Plaintiff Sami Shawqi Ahmed Madi** appears to have died on December 11, 2015. http://pflp.ps/english/2015/12/12/pflp-mourns-the-martyr-comrade-sami-shawki-ahmad-madi-killed-by-occupation-forces/ .

- **Plaintiff Zeinab Safwat Abd Abu-Teer** appears to have died on July 23, 2015. http://www.btselem.org/statistics/fatalities/after-cast-lead/by-date-of-event/gaza/palestinians-killed-by-israeli-security-forces

- **Plaintiff Ahmad Kamal Ibrahim Suleiman Abu-Teer** appears to have died on August 2, 2014. http://www.mezan.org/en/post/19295/As+International+Silence+Continues%2C+Gaza+Casualties+Continue+to+Mount+due+to+IOF+Attacks+on+Homes+and+Shelters%2C+Al+Mezan%3A+Death+Toll+at+1%2C764%3B+82.5%25+Civilians%3B+399+Children+and+226+Women.

- **Plaintiff Suleiman Mahnoud Sahmour** appears to have died on July 20, 2014. https://www.algemeiner.com/2015/07/10/amnesty-international-says-this-house-had-no-terrorists-wrong-again/.

- **Plaintiff Basem Ibrahim Ahmed Abu-Rahmeh** appears to have died on April 17, 2009. https://en.wikipedia.org/wiki/Bil%27in#Bassem_Abu_Rahmeh.

- **Plaintiff Hanafi Mahmoud Kamel Abu-Yousef** appears to have died on July 24, 2014. http://www.btselem.org/statistics/fatalities/after-cast-lead/by-date-of-event/gaza/palestinians-

killed-by-israeli-security-forces .

- **Plaintiff Ibrahim Khalil Suleiman Qablan** appears to have died on July 18, 2014. http://www.btselem.org/statistics/fatalities/after-cast-lead/by-date-of-event/gaza/palestinians-killed-by-israeli-security-forces.

- **Plaintiff Ibrahim Suleiman Qablan Abu-Qablan** appears to have died on July 24, 2014. http://www.btselem.org/statistics/fatalities/after-cast-lead/by-date-of-event/gaza/palestinians-killed-by-israeli-security-forces.

- **Plaintiff Wala'a Jihad Muhammad Al-Qara** appears to have died on July 18, 2014. http://www.btselem.org/statistics/fatalities/after-cast-lead/by-date-of-event/gaza/palestinians-killed-by-israeli-security-forces.

- **Plaintiff Jawaher Ibrahim Abu-Rahmeh** appears to have died on December 31, 2010. https://en.wikipedia.org/wiki/Bil%27in#Jawaher_Abu_Rahma.

Nowhere in the Amended Complaint is there any indication that a representative for any of the deceased Plaintiffs' estates has been appointed by any judicial authority. Deceased persons do not have standing to sue in their own name simply because a lawyer decided to name them as plaintiffs. If there is such a claim, it belongs to their respective estates, as represented by duly authorized administrators or their equivalents.

"Federal law looks to state law to determine who may bring a claim." *Boston v. Davis,* 2011 WL 6935710, *3 (W.D.N.C., Dec.29, 2011). Under District of Columbia law, a deceased person's claim for loss of property (which is what is alleged here) must be brought by the "personal representative of the estate of the deceased…on behalf of the estate." *Wallace v. District of Columbia*, 685 F. Supp. 2d 104, 112 (D.D.C. 2010). As explained by the *Boston* v. *Davis* court, when addressing the claim that a relative could sue on behalf of a deceased:

> [I]f that were the case, any relative of a deceased could bring a lawsuit on behalf of the deceased, putting before the court a claim which plaintiff has no authority to bring, exposing defendants to the risk of redundant litigation, and putting the judicial system in jeopardy through the possibility of inconsistent decisions and waste of resources.

2011 WL 6935710 at *3.

It is evident that the claims are not being asserted on behalf of the estates of any of the deceased Plaintiffs. Indeed, with one possible exception, it is not even apparent from the Amended Complaint that a relative is involved in bringing this lawsuit on behalf of these deceased Plaintiffs (which would in any event be impermissible). There is thus a complete lack of standing as to the claims of the deceased Plaintiffs and these claims should be dismissed.

## I.      Plaintiffs' Claim for Aiding-and-Abetting Tax Fraud Must Be Dismissed

Plaintiffs' Fourth Cause of Action, against BFP only, is for aiding and abetting tax fraud. Plaintiffs claim that the tax returns which BFP filed for its clients, KFF and Bet El, were fraudulent because they failed to disclose that the donations made by these non-profit organizations were no charitable donations, but were in fact designated for "arms trafficking," "theft of private property" and "genocide." In other words, this is more of the same, only this time, the cause of action is couched as fraud on the Internal Revenue Service, or, more precisely, aiding and abetting KFF and Bet El in committing fraud on the Internal Revenue Service.

"Private citizens cannot enforce the provisions of the Tax Code. That is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud…. Federal courts have consistently refused to imply a private cause of action under the tax laws." *Seabury v. City of New York,* No. 06 Civ. 1477 (NGG), 2006 WL 1367396, at * 5 (E.D.N.Y. May 18, 2006). *See also Spilky v. Helphand*, No. 91 Civ. 3045

(PKL), 1993 WL 159944, at * 4 (S.D.N.Y. May 11, 1993) ("there is no evidence that Congress intended to provide a private cause of action under the Internal Revenue Code for an employee who alleges that his employer failed to make the required withholdings and contributions"); *Perrin v. Vuliai*, 2016 WL 795900, at * 2 (E.D. Mich. Feb. 29, 2016) (The IRS, and not private citizens, are in charge of enforcing the tax code). As stated in *Hogland v. Athens Regional Health Services, Inc.*, 2995 WL 4145738, at * 5 (M.D. Ga. Jan. 21, 2005)

> Nowhere among the pages and pages of the Internal Revenue Code is there any indication of an intent to give private parties a right to enforce Section 501(c)(3). Within its comprehensive scheme, the Code generally reserves administration and enforcement of the tax code to the Secretary of the Treasury, "except as otherwise expressly provided by law." *See* 26 U.S.C. § 7801(a). There is no express provision in Section 501(c)(3) that permits a private citizen to sue a tax-exempt entity for failure to meet the requirements of the statute. … A third party has no more right to challenge a tax exemption to another party than he has right to bring a private prosecution for tax evasion.

*Id.*

The straightforward import of these authorities is that Plaintiffs' claim against BFP for aiding and abetting tax fraud allegedly committed by Bet El and KFF fails for lack of standing. Aiding and abetting is a derivative claim that depends on an underlying actionable tort. *Ali v. Mid-Atlantic Settlement Serv., Inc.*, 640 F. Supp.2d 1, 9 (D.D.C. 2009). *See also U.S. v. Loe*, 248 F.3d 449, 457 (5th Cir. 2001) (aider and abettor is guilty in a derivative sense; his guilt is contingent on acts of another); *In re McMullen*, 386 F.3d 320, 332 (1st Cir. 2004) (an aider and abettor is guilty in a derivative sense; if factfinder finds that the primary actor had committed no violation that is *either cognizable or compensable*, there is no aider and abettor liability) (emphasis added); *Noble v. AAA Corp.*, 2013 WL 1324915, at *6 (N. D. Ill. 2013) (because plaintiff had no standing to assert injury from the alleged primary tort of breach of fiduciary duty, his aiding and abetting claim, being contingent on primary tort liability, must also fail).

Thus, Plaintiffs' attempt to circumvent the proscription against private causes of action for tax fraud by pleading an "aiding and abetting" claim fails as a matter of law. Plaintiffs have no standing to assert a tax fraud claim against KFF or Bet El. Such tax fraud claims, had they asserted them (which they do not) would be neither "cognizable" nor "compensable." *Noble, supra*. Consequently, they have no standing to assert an aiding and abetting claim against BFP.

Moreover, civil liability for aiding and abetting requires "proof of (1) a wrongful act causing an injury by a party aided by the defendant; (2) the defendant's knowledge of his role as part of an overall illegal or tortious activity at the time that he provided assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002).

To withstand a motion to dismiss, fraud allegations must be pled with particularity under Rule 9(b). *Silverman v. Weil*, 662 F. Supp. 1195, 1200 (D.D.C. 1987). Plaintiffs must "state the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud." *Cheeks v. Fort Meyer Const. Corp.*, 216 F. Supp. 3d 146, 157 (D.D.C. 2016). *See also Reingold v. Deloitte Haskins & Sells*, 599 F. Supp. 1241, 1269-70 (S.D.N.Y. 1984) (an aiding and abetting pleading must plead the events giving rise to a strong inference that defendants had knowledge of the primary violation, the factual basis for the allegations that defendants substantially participated in the alleged fraud, the factual basis from which plaintiff infers defendants' independent duty to act, and specific reference to the primary violations allegedly aided or abetted); *Decker v. Massey-Ferguson, Ltd*. 681 F.2d 111, 120 (2d Cir. 1982) (generalized statements concerning accountants' knowledge or reckless disregard of the corporations "untrue" statements of income or "wrongful activities" did not satisfy the requirements of Rule 9(b)).

Even if the Plaintiffs had standing to assert a claim for tax fraud, the Amended Complaint

does not come close to pleading with the requisite particularity either the primary fraud, alleged to have been committed by KFF and Bet El, or BFP's alleged acts in aid of that "fraud."

To begin with, Plaintiffs cannot plausibly allege that they had suffered an injury as a direct and proximate result of KFF's and Bet El's obtaining a tax-exempt status. The nexus between the filing of KFF's and Bet El's tax returns in the U.S. and the "war crimes" and "genocide" alleged by Plaintiffs as their injury is beyond attenuated and implausible. Also, Plaintiffs cannot plausibly allege that the filing of tax returns without disclosing that the donations were to be used for "war crimes," *etc*., is a "wrongful" or fraudulent act, because, as discussed above, and in more detail in KFF's motion to dismiss, there is no plausible allegation that these donations were in fact so used. Next, Plaintiffs do not—and cannot—plausibly allege that BFP had knowledge of any improper use of the charitable donations at the time when it provided its tax advice or filed Form 990s. As discussed above, Plaintiffs' standard refrain, "they had to know," does not meet the "knowledge" standard. Generalized statements of knowledge do not satisfy Rule 9(b)'s particularity requirement. *Decker, supra*.

For these reasons, Plaintiffs' Fourth Cause of Cction for aiding and abetting tax fraud should be dismissed.

## J.    Plaintiffs' Negligence Claim Must Be Dismissed

Plaintiff's Fifth Cause of Action for negligence (Am. Comp. ¶¶ 173-175) asserts that "BFP principals not only owed duty of care to their client to render accurate professional advice, but to any individual who would be impacted by the nature of that advice, including Plaintiffs herein." (Am. Comp. ¶ 173). This is the premise of the negligence claim: that BFP's duty of care ran not only to its clients but to all persons—including all Plaintiffs—who could be "impacted"

by their advice. This is a novel theory of negligence liability, and one that no court anywhere in United States has ever endorsed.

"Under District of Columbia law, a plaintiff asserting a claim of negligence must establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached its duty; and (3) the breach was the proximate cause of (4) damages sustained by plaintiff." *Jalevare v. Alpha Kappa Alpha Sorority, Inc*. 521 F. Supp.2d 1, 14 (D.D.C. 2007). As explained by the *Jalevare* court, "[t]he foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." *Id*., at 15. *See also Dist. of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982) (The existence of a legal duty being an essential element of a negligence claim under District of Columbia law, the plaintiffs must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability.) (Quotations omitted).

The District's law of liability for negligence to third parties was summarized comprehensively by Judge Parker in *Folz v. U.S. New & World Report, Inc*., 627 F. Supp. 1143, 1177-78 (D.D.C. 1986). The Court explained that the "District of Columbia courts have by and large adopted the reasoning in *Ultramares* [*Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931)] and its progeny." In *Ultramares*, Judge Cardozo "held that an accountant could not be held liable to a lender for negligently certifying the balance sheet of a corporate borrower, even when the accountant knew that the balance sheet would be relied upon by lenders and others." *Folz*, at 1177.  Judge Parker summed up the law of third-party liability as follows:

> [T]he law of the District of Columbia is that a supplier of information may be liable to a third party when he provides information directly to a third party or indirectly for the benefit of a *specific* third party… Essentially, the District of Columbia has followed the Restatement of Torts in limiting liability to injury suffered by a person or one of a limited group of persons for whose benefit and

guidance defendant intends to supply the information or knows that the recipient intends to supply it.

627 F. Supp. at 1178. (quotations, citations omitted; emphasis in original).

The Amended Complaint does not plead that whatever tax advice BFP provided to KFF and Bet El, and whatever tax forms it filed with the IRS on their behalf, were intended "for the benefit" or "guidance" of any of the Plaintiffs. Such a pleading, if made, would be not only implausible but highly irrational. Consequently, since no duty can possibly be owed by BFP to any of the Plaintiffs, the claim of negligence cannot be maintained.

Lastly, even if a duty existed, as discussed at length above, BFP's tax advice cannot be plausibly deemed the proximate cause of Plaintiffs' alleged injuries.

For these reasons, Plaintiffs' negligence claim must be dismissed.

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against Defendant BFP should be dismissed.

Dated:   New York, New York
         August 15, 2017

                                    Respectfully submitted,

                                    RIVKIN LAW GROUP pllc
                                    *Attorneys for Defendant Billet Feit & Preis P.C.*

                                    By: _____
                                         Oleg Rivkin

                                    800 Third Avenue, Suite 2501
                                    New York, New York 10022
                                    (212) 231-9776

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Defendant Biller Feit & Preis P.C.*
By: Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

OF COUNSEL:

NITSANA DARSHAN-LEITNER & CO.
*Israeli counsel for the defendant Billet Feit & Preis P.C.*
By: Nitsana Darshan-Leitner, Adv.
10 Hata'as Street
Ramat Gan, 52512 Israel

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served via ECF on all counsel of record herein:

Dated:   New York, New York
           August 15, 2017

_____
Oleg Rivkin

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

------------------------------------------------------------------- X

MIKO PELED, *et al.*,

                     Plaintiff,                Docket No:

              -against-                 1:17-CV-260 (RBW)

BENJAMIN NETANYAHU, *et al.*,

                    Defendants.

------------------------------------------------------------------- X

## [PROPOSED] ORDER

Upon consideration of Defendant Billet Feit & Preis P.C.'s Motion to Dismiss the

Amended Complaint, and all responses and replies thereto, it is

**ORDERED** that Defendant's Motion is **GRANTED** in its entirety with prejudice.


Dated: _____, 2017


                             _____

                             REGGIE B. WALTON
                             United States District Judge