**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                             )
MIKO PELED, et al.,            )
                             )
          Plaintiffs,     )
    v.                    )     Case No. 1:17-cv-260 (RBW)
                             )
BENJAMIN NETANYAHU, et al.,   )     **[Oral Argument Requested]**
                             )
         Defendants.    )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AMERICAN FRIENDS OF BET EL INSTITUTIONS' MOTION TO
DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE 12(b)(1), (b)(2) and (b)(6)**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT..................................................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT...................................................2

LEGAL STANDARDS...........................................................................................4

STATUTORY BACKGROUND ...............................................................................5

ARGUMENT......................................................................................................7

I.     THE POLITICAL QUESTION AND THE ACT OF STATE DOCTRINES BAR PLAINTIFFS' CLAIMS.............................................................................7

    A. *Baker* **Has Already Decided That the Issues In Plaintiffs Complaint Are Political Questions..................................................................................8**

    B. **The** *Baker* **Factors Confirm That Plaintiffs' Complaint Raises Non-Justiciable Political Questions..................................................................10**

    C. **The Act of State Doctrine Is Applicable To The Case At Bar................................17**

II.    THE COURT LACKS PERSONAL JURISDICTION OVER AMERICAN FRIENDS.........................................................................................18

    A. The District of Columbia's Long-Arm Statute Does Not Extend Personal Jurisdiction Over American Friends.....................................................19

    B. Asserting Jurisdiction Over American Friends Would Offend Traditional Notions of Fair Play and Substantial Justice.....................................................22

III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED................................................................23

    A. Plaintiffs Fail to Establish The Requisite Elements of Civil Conspiracy to Arm and Train Foreign Militia.....................................................23

    B. Plaintiffs Fail to Allege Any Facts or Identify Any Evidence of Aiding and Abetting The Commission of War Crimes .................................................28

CONCLUSION.....................................................................................................................30

## TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Acosta Orellana v. CropLife Int'l,*
    711 F. Supp. 2d 81 (2010)..........................................................................................29

*Al-Aulaqi v. Obama,*
    727 F. Supp. 2d 1(D.D.C. 2010).................................................................................4

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006)....................................................................................................6

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.,*
    480 U.S. 102 (1987)..................................................................................................22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................4, 23

*Baker v. Carr,*
    369 U.S. 186 (1962).........................................................................................*passim*

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398 (1964)............................................................................................8, 18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................4, 23

*Biton v. The Palestinian Interim Self-Government Authority,*
    310 F. Supp. 2d 172 (D.D.C. 2004)..........................................................................15

*Corrie v. Caterpillar,* Inc.,
    503 F.3d 974 (9th Cir. 2007)....................................................................................12

*Davidson v. Simmons,*
    280 N.W.2d 645 (1979).............................................................................................25

*Doe v. Exxon Mobil Corp.,*

654 F.3d 11 (D.C. Cir. 2011) ..................................................................................6, 17

*Doe v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005)...........................................................................*passim*

*Edmond v. United States Postal Serv. Gen. Counsel*,
949 F.2d 415 (D.C. Cir. 1991)........................................................................................21

*El-Shifa Pharm. Indus. Co. v. United States*,
607 F.3d 839 (D.C. Cir. 2010)..........................................................................................7

*Farouki v. Petra Int'l Banking Corp.*,
811 F. Supp. 2d 388 (D.D.C. 2011).................................................................................20

*First Chi. Int'l v. United Exch. Co.*,
836 F.2d 1375 (D.C. Cir. 1988)..................................................................................18, 21

*GTE New Media Servs. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000)........................................................................................19

*Haig v. Agee*,
453 U.S. 280 (1981)..................................................................................................10, 11

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983).................................................................22, 24, 25, 29

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952)........................................................................................................10

*Hemi Grp. v. City of New York*,
559 U.S. 1 (2010)...............................................................................................................5

*Holmes v. Secs. Inv'r Prot. Corp.*,
503 U.S. 258 (1992)...........................................................................................................6

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)........................................................................................................22

*In re Interbank Funding Corp. Sec. Litig.*,
629 F.3d 213 (D.C. Cir. 2010)...........................................................................................4

*Jung v. Ass'n of Am. Med. Colls.*,
300 F. Supp. 2d 119 (D.D.C. 2004)................................................................................18

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
115 F.3d 1020 (D.C. Cir. 1997)......................................................................................20

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)..................................................................................................7

*Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp.*,
    493 U.S. 400 (1990)..................................................................................................8

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994)...........................................................................23, 28

*Kurtz v. United States*,
    779 F. Supp. 2d 50 (D.D.C. 2011)..........................................................................22

*Malewicz v. City of Amsterdam*,
    517 F. Supp. 2d 322 (D.D.C. 2007)..............................................................8, 17, 18

*Matar v. Dichter*,
    500 F. Supp. 2d 284 (S.D.N.Y. 2007).....................................................................14

*Moore v. Motz*,
    437 F. Supp. 2d 88 (D.D.C. 2006)...........................................................................18

*Republic of Aus. v. Altmann*,
    541 U.S. 677 (2004)...............................................................................................8, 18

*Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS*,
    163 F.3d 1363 (D.C. Cir. 1999) ...............................................................................17

*Rush v. Savchuk*,
    444 U.S. 320 (1980)..................................................................................................20

*Schneider v. Kissinger*,
    310 F. Supp. 2d 251 (D.D.C. 2004)........................................................................11

*Second Amendment Found. v. U.S. Conference of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001)...........................................................................20, 21

*Sievarding v. U.S. Dep't of Justice*,
    693 F. Supp. 2d 93 (D.D.C. 2010)…………........................................................5

*United States v. Philip Morris, Inc.*,
    116 F. Supp. 2d 116 (D.D.C. 2000)........................................................................19

*Virtual Defs. & Dev. Int'l, Inc. v. Republic of Moldova*,
    133 F. Supp. 2d 1 (D.D.C. 1999)............................................................................17

*Whiteman v. Dorotheum GmbH & Co. KG,*
    431 F.3d 57 (2d Cir. 2005).........................................................................16

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)................................................................................22

*World Wide Minerals v. Republic of Kazakhstan,*
    296 F.3d 1154 (D.C. Cir. 2002)...............................................................17

*Wultz v. Islamic Republic of Iran,*
    755 F. Supp. 2d 1 (D.D.C. 2010).........................................................5, 28

*Zivotofsky v. Kerry,*
    576 U.S. ___, 135 (2015)........................................................................11

**RULES**

Federal Rules of Civil Procedure
    12(b)(1)...............................................................................................1, 31

Federal Rules of Civil Procedure
    12(b)(2)...........................................................................................1, 18, 31

Federal Rules of Civil Procedure
    12(b)(6)........................................................................................1, 23, 31

**STATUTES**

Unlawful Acts,
    18 U.S.C. § 922......................................................................................27

Alien Tort Statute
    28 U.S.C. § 1350.................................................................................*passim*

Laundering of Monetary Instruments,
    18 U.S.C. § 1956................................................................................2, 27

Anti-Terrorism Act,
    18 U.S.C. § 2331 *et seq.*....................................................................*passim*

Civil Remedies
    18 U.S.C. § 2333......................................................................................5

Providing Material Support to Terrorists,
    18 U.S.C. § 2339A............................................................................5, 21

Prohibitions Against the Financing of Terrorism,
18 U.S.C. § 2339C ........................................................................................................5, 22

Torture Victim Protection Act of 1991
106 Stat. 73 ..................................................................................................................8, 14

The Racketeer Influenced and Corrupt Organizations Act
84 Stat. 941 ....................................................................................................................8, 9

D.C. Code § 13-422 ............................................................................................................15

D.C. Code § 13-423(a) ........................................................................................................16

D.C. Code § 13-423(b) ........................................................................................................16

## OTHER AUTHORITIES

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (1990)

16 Am. Jur. 2d *Conspiracy* § 68 (1979) ....................................................................19, 21

G.A. Res. 66/225, U.N. Doc. A/RES/66/225 (Mar. 29, 2012),
http://www.un.org/en/ga/search/view_doc.asp?symbol=%20A/RES/66/225 ..............13

*Trade Facilitation and Trade Enhancement Act of 2015,* H.R. 644-115 ......................14

Defendant American Friends of Bet El Institutions (hereinafter, "American Friends"), respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' Amended Complaint (Dkt. 18, the "Complaint" or "AC") pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and in the alternative to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

## PRELIMINARY STATEMENT

The Amended Complaint in this action is nothing more than a barrage of speculative legal conclusions and unsupported assertions against all Defendants, stemming from an alleged diversion of government funds through a billion-dollar laundering scheme to benefit the sponsoring of war and expansion of Israel by the allegedly unlawful seizure of purported Palestinian property. Its subject, the Israeli-Palestinian conflict (and, in particular, the settlements established by Israel after the 1967 War in Judea and Samaria), is one of the world's longest-running, most tragic, and, so far, regrettably intractable political controversies. The rights and wrongs of the parties to that conflict, including with respect to Israel's settlements, have been, and will continue to be, fiercely debated in the political arena.

The case at hand is analogous to other cases brought in the U.S. courts by Palestinian nationals alleging a settlement dispute. As courts in this district have held, settlement dispute is not a proper subject for adjudication by a United States court.  This Court recognized the non-justiciability of this conflict over a decade ago in *Doe v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) (Bates, J.) ("*Doe I*"), when it dismissed a complaint by anonymous Palestinians that, except for the identity of the defendants, was nearly identical to this one.  It held, *inter alia*,

that claims similar to those asserted here regarding settlement activities in Judea and Samaria are non-justiciable under the political question and act of state doctrines.

The present Amended Complaint alleges in wholly conclusory fashion the financing and support of Israeli "occupation" and violence in the "Occupied Palestinian Territories" (or "OPT"), and it suffers from similar defects. Plaintiffs have not only spent a great deal of time presenting a *generalized* account of alleged mistreatment of Palestinians by U.S. Defendants, but they have also failed to properly plead and satisfy claims justiciable in this, or any, United States court.

## ALLEGATIONS OF THE AMENDED COMPLAINT

The Amended Complaint ("AC") is premised on an alleged conspiracy among all named Defendants, including Israeli based defendants, settlements, the Israeli army, and Israel-based NGOs, and religious seminaries, whose intent is, purportedly, the violent expulsion of all non-Jews from the OPT, and others. (AC at 8). Plaintiffs allege that all Defendants knew Israel's occupying army engaged in war crimes. (*Id.* at 7). American Friends, along with Defendants Friends of the Israeli Army and the Kushner Family Foundation (herein collectively as "American Tax-Exempt Entities") allegedly engaged in a laundering scheme aimed at encouraging or financing war crimes in the OPT. (*Id*. at 7-9). Plaintiffs further allege that all Defendants, including American Friends, have been violating U.S. and Israeli criminal statutes for at least twenty years by engaging in money laundering 18 U.S.C. § 1956 and funding settlement expansion, arms trafficking, ethnic cleansing and genocide. (*Id.* at 9-10).  Plaintiffs assert that the U.S. Defendants, including American Friends, have been participating in an annual $2 billion money laundering scheme by sending clean funds overseas to finance

wholesale violence designed to intimidate a civilian population and convince them to abandon their "200 year old" homes. (*Id.* at 14).

Plaintiffs argue that through this financial assistance by American Tax-Exempt Entities, Israeli Defendants pursued their personal agenda, including committing or financing war crimes and illegally confiscating private property owned by Palestinian Plaintiffs named in the Amended Complaint. (*Id.* at 9). Plaintiffs further allege that American Tax-Exempt Entities along with 50 other "pro-occupation" tax-exempt entities have been sending $2 billion every year in illegal charitable donations to finance violence in the OPT. (*Id.* at 8). Plaintiffs claim that these donations totaled $1.7 billion in 2007 and now total $2 billion+ per year, whereby the "Israeli army [had been] receiving $100 million a year . . . [and] settlement militia units being armed with 20,000 M16's or Kalashnikovs." (*Id.* at 10). Plaintiffs allege that when American Friends filed for tax-exempt status with Treasury, it never disclosed that it would function as a pass-through charitable entity, where all of the funds raised would be immediately transferred to the Bet El "settlement" and Israel-based NGOs intent on the permanent colonization of the West Bank.  (*Id.* at 40). Plaintiffs further allege that American Friends "never disclosed that it would be sending money overseas to: a) finance war crimes by arming Bet El settlers with M16 or Kalashnikovs, night vision goggles, percussion grenades, and sniper scopes; b) construct and operate a Jewish-only military academy, firing ranges and sniper schools; c) promote settlement expansion by encroaching on private Palestinian property in the area and; d) maiming and murdering Palestinian landowners who refused to abandon their homes after being threatened by belligerent settlers." (*Id.*).

Plaintiffs attempt to bring four claims under the Anti Terrorism Act, 18 U.S.C. § 2333, and the Alien Tort Statute, 28 U.S.C. §1350. (*Id.* at 7). The Amended Complaint alleges five counts, but only Counts I and II apply to American Friends.

> **Count I:**   Civil Conspiracy Against All Defendants: Civil Conspiracy to Arm and Train Foreign Militia Units Whose Members Engage in Arms Trafficking, Ethnic Cleansing, and Genocide so That Settlers Can Permanently Colonize the West Bank. (*Id* at 59).

> **Count II:**   Aiding and Abetting the Commission of War Crimes, Crimes Against Humanity, and Genocide in Violation of the Law of Nations By All Defendants. (*Id* at 70).

The Plaintiffs claim they have suffered direct injuries as a result of the Defendants' alleged $2 billion money laundering scheme, and by the war crimes engaged in, encouraged, or financed by the Defendants. (*Id.*).

## LEGAL STANDARDS

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). *Iqbal*'s plausibility standard requires more than a "sheer possibility" that a defendant is liable. *Iqbal*, 556 U.S. at 678. Instead, to survive a motion to dismiss, the Amended Complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In applying *Iqbal*, this Court employs a "'two-pronged approach,' under which [it] first identifies the factual allegations that are entitled to an assumption of truth and then determines 'whether they plausibly give rise to an entitlement to relief.'" *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 14 (D.D.C. 2010) (quoting *Iqbal*, 556 U.S. at 679). Under the first prong, "labels and

conclusions," and "legal conclusion[s] couched as . . . factual allegation[s]," and "naked assertions devoid of further factual enhancement," all must be disregarded. *Sievarding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 99-100 (D.D.C. 2010) (internal quotations omitted). Under the second prong, assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

## STATUTORY BACKGROUND

### A.     THE ANTI-TERRORISM ACT ("ATA")

The ATA is largely comprised of criminal prohibitions relating to terrorism, but Section 2333(a), which the Amended Complaint invokes, creates a civil cause of action for U.S. nationals "injured . . . by reason of an act of international terrorism." As relevant here, Section 2333(a) requires that the Amended Complaint properly plead several indispensable elements.

First, each Plaintiff must be a U.S. citizen. 18 U.S.C. § 2333(a).

Second, Plaintiffs must plausibly allege that American Friends provided material support and resources knowing that such support and resources would be used in preparation for, or to carry out, terrorist acts in violation of U.S. criminal law, 18 U.S.C. § 2339A, or that American Friends provided or collected funds with the intention or knowledge that such funds would be used for such terrorist acts, 18 U.S.C. § 2339C; *see also* 18 U.S.C. § 2333(a).

Third, the Amended Complaint must plausibly allege that Plaintiffs were injured "by reason of" American Friends' actions. This element requires plausible, non-conclusory allegations that American Friends' actions proximately caused Plaintiffs' alleged injuries. *See* 18 U.S.C. § 2333(a); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 22 (D.D.C. 2010). As the Supreme Court has confirmed, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp. v. City of New York*, 559 U.S. 1, 9 (2010)

(quoting *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("[T]he central question [with respect to proximate cause] . . . is whether the alleged violation led directly to the plaintiff's injuries."). As demonstrated, the Amended Complaint's failure to make plausible factual allegations that satisfy the element of proximate causation requires dismissal.

### B.  THE ALIEN TORT STATUTE

To assert a private cause of action under the ATS, a plaintiff must plead that: (1) the plaintiff is an alien; (2) the claimed damages stem from a tort; and (3) a defendant committed the tort in violation of the law of nations or a treaty of the United States. 28 U.S.C. § 1350.

Plaintiffs here claim that American Friends is liable under the ATS for aiding and abetting violations of the law of nations. "[A]iding and abetting liability [ ] under the ATS [ ] involves . . . a 'knowledge' *mens rea* and a showing for *actus reus* of acts that have a substantial effect in bringing about the violation." *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 39 (D.C. Cir. 2011), *vacated on other grounds,* 527 F. App'x 7 (D.C. Cir. 2013). Thus, the claim that American Friends is secondarily liable under the ATS requires: (1) a well-pled allegation of a *primary* violation of the law of nations; and (2) and a well-pled allegation of a *secondary* violation of the law of nations, by pleading the requirements for aiding and abetting liability. The Amended Complaint fails to meet these requirements because it contains no well-pled allegations supporting a plausible inference that American Friends possessed the requisite *scienter* or that any donations by American Friends had a substantial effect in bringing about the alleged violations.

Additionally, the Supreme Court in *Kiobel* held that the presumption against extraterritoriality applies to claims brought under the ATS, and that it is only rebuttable where

"claims touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application" of the ATS. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108; 133 S. Ct. 1659, 1669 (2013).

As described below, the claims here fail this test, and for this independent reason, the claims must be dismissed.

## ARGUMENT

Despite being over 100 pages in length, the Complaint fails to state any cognizable claims against the Defendant, and none of the claims is sufficiently pled. As set forth below, Plaintiffs' Complaint  must be dismissed.

## I.     THE POLITICAL QUESTION AND THE ACT OF STATE DOCTRINES BAR ALL PLAINTIFFS' CLAIMS.

The political question doctrine states that federal courts may not resolve "controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 839, 840 (D.C. Cir. 2010).  The political question doctrine mandates that decisions committed to the political branches of the Government are non-justiciable.

The seminal decision on the political question doctrine is *Baker v. Carr*, 369 U.S. 186 (1962). In *Baker*, the Supreme Court held that a question is political and therefore non-justiciable when *any one* of the following six factors is present:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department, or
>
> [2] a lack of judicially discoverable and manageable standards for resolving it, or
>
> [3] the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion, or

[4] the impossibility of a court's undertaking independent resolution without expressing a lack of the respect due coordinate branches of government, or

[5] an unusual need for unquestioning adherence to a political decision already made, or

[6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217.  Plaintiffs' Amended Complaint contains many of these factors.

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 336 (D.D.C. 2007) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)). "Under that doctrine, the courts of one state will not question the validity of public acts (acts *jure imperii* performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts." *Republic of Aus. v. Altmann*, 541 U.S. 677, 700 (2004). As a result, the doctrine applies whenever "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign." *Malewicz*, 517 F. Supp. at 337. (quoting *Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp.*, 493 U.S. 400, 405 (1990)).

## A.   *Baker* Has Already Decided That the Issues In Plaintiffs Complaint Are Political Questions.

This district has already confirmed that the conflict between Israel and Palestine is a political question. In *Doe I*, Palestinian plaintiffs filed a complaint similar to this one, asserting claims under the ATS, the Torture Victims Protection Act ("TVPA"), assorted international conventions and agreements, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and other laws, against the President and Secretary of State, the State of Israel, and a number of its officials, including generals of the army, American defense contractors and manufacturers,

and "settler defendants," who allegedly raised funds for Israeli settlers in the West Bank.  The

court dismissed the complaint as to all defendants based, *inter alia,* on the political question and

act of state doctrines.  *Doe v. State of Israel*, 400 F. Supp. 2d 86, 96 (D.D.C. 2005).

   The court observed: "It is hard to conceive of an issue more quintessentially political in

nature than the ongoing Israeli-Palestinian conflict, which has raged on the world stage with

devastation for both sides for decades."  *Id.* at 111-12.  The court reasoned that the plaintiffs'

claims "would have this Court adjudicate the rights and liabilities of the Palestinian and Israeli

people," requiring determinations (i) regarding "to whom the land in the West Bank actually

belongs"; (ii) "that Israel's self-defense policies are tantamount to terrorism"; (iii) "that the

Israeli settlement activities are illegal or tortious"; and, (iv) "characteriz[ing] the ongoing armed

conflict in the West Bank as either 'genocide' . . . or self-defense."  *Id.* at 112.  The court

concluded it had no authority to decide these issues:

> The Court can do none of this.  Whether plaintiffs dress their claims in the garb of
> RICO or other federal statutes, or the tort laws of various states, the character of
> those claims is, at its core, the same: peculiarly volatile, undeniably political, and
> ultimately nonjusticiable.  A ruling on any of these issues would draw the Court
> into the foreign affairs of the United States, thereby interfering with the sole
> province of the Executive Branch.

*Id.*  The court further held that a conclusion that Israeli settlement activities are illegal or tortious

"would also implicitly condemn American foreign policy by suggesting that support of Israel is

wrongful.  Conclusions like these present a potential for discord between the branches that

further demonstrates the impropriety of a judicial decision on these quintessential political

issues."  *Id.*

   These findings in *Doe I* are directly applicable  to this case.  Plaintiffs seek a U.S. judicial

determination that activities of Israeli officials in Israel constitute civil conspiracy (Count I),

aiding and abetting the commission of war crimes (Counts II), war crimes (Count III), aiding and

abetting income tax fraud (Count IV), negligence (Count V), and conversion (Count VI).  No matter how carefully Plaintiffs seek to disguise their foreign affairs arguments as actionable tort claims, the fact remains that the premise of this complaint rests on the ongoing debate about Israel's settlement activities in the West Bank. As the complaint states, "[defendants'] knew that their clients were financing belligerent settlors' criminal activity in order to permanently colonize the West Bank . . . [defendants] are . . . knowingly trespassing on private property and converting that property to their own private use." (AC at 16). The complaint essentially admits the ongoing debate surrounding the conflict by claiming that the "conversion has been going on for approximately thirty[-]five year[s]." *Id*.

Just like the claims found non-justiciable in *Doe I*, Plaintiffs' claims improperly would require this Court to decide "to whom the land in the West Bank actually belongs" and to declare "that the Israeli settlement activities are illegal or tortious." 400 F. Supp. 2d at 112.  As the court decided in *Doe I*, this Court should decide that the claims set forth in the Amended Complaint are non-justiciable as to all Defendants.

**B.     The *Baker* Factors Confirm That Plaintiffs' Complaint Raises Non-Justiciable Political Questions.**

The political climate surrounding Israel and Palestine has not changed since the *Doe I* decision, other than to have become more complicated.  Therefore, the *Baker v. Carr* factors require that the Complaint be dismissed.

*First*, the conduct of foreign policy, which is at the heart of this case, unquestionably is committed to the political branches of the Federal Government.  *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952) (observing that matters relating "to the conduct of foreign relations . . . are so exclusively

entrusted to the political branches of government as to be largely immune from judicial inquiry or interference").   America's foreign policy toward the State of Israel and the Palestinians epitomizes the definition of a political question of the most vexing nature.  Every President and Secretary of State over the last 40 years has attempted to pave a path to peace between Israel and its neighbors and protect U.S. national interests.  Recent debates concerning the United Nations' resolution concerning Israeli settlements further reinforce the political nature of the issues.  What the Supreme Court recently said concerning Jerusalem in *Zivotofsky v. Kerry* is equally applicable to the West Bank and Gaza:

> Questions touching upon the history of the ancient city and its present legal and international status are among the most difficult and complex in international affairs.  In our constitutional system those matters are committed to the Legislature and the Executive, not the judiciary.

576 U.S. ___, 135 S. Ct. 2076, 2081 (2015).

*Second*, as noted above, Plaintiffs contend that the activities of Israeli settlers and the Israeli armed forces constitute war crimes.  The government of Israel and many others advocate that the settlers' activities constitute lawful economic development, and its military's activities constitute lawful self-defense against persons and organizations who have publicly advocated for the destruction of Israel and who have carried out acts designed to further that agenda. Regardless of how any litigant or this Court might view this dispute, the fact remains that this dispute is a political question that this forum cannot resolve. A U.S. court is in no position to find "judicially discoverable and manageable standards for resolving" these disputed issues.  *Baker*, 369 U.S. at 217.  These issues would require the Court "to measure and balance a myriad of thorny foreign and domestic political considerations," rendering them "inherently political" questions that cannot be resolved by the law of torts or other statutory law.  *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 262 (D.D.C. 2004); *accord Doe I,* 400 F. Supp. 2d at 112-13.

Third, the Court cannot decide the issues raised in the Amended Complaint without rendering "initial policy determination[s] of a kind clearly for nonjudicial discretion." *Baker*, 369 U.S. at 217. (*Baker* factor 3).  To grant Plaintiffs relief, the Court would have to characterize the conflict in the West Bank and Gaza and the actions of the Israeli government as "war crimes," and declare that Israeli officials and activities performed by certain Defendants and actions related to foreign policy can be reduced to "civil conspiracy," "negligence," and "conversion."  The entire Amended Complaint rests upon the notion that the alleged activities not sanctioned by the U.S. Government are unlawful because, Plaintiffs allege, that any dealings with Israeli settlements, settlers or armed forces are ipso facto violations of international law or otherwise inherently unlawful.  There exists no more blatant case of a court being asked to make a political judgment on a matter that fits squarely in the authority of the political branches.  *See Corrie v. Caterpillar*, Inc., 503 F.3d 974, 984 (9th Cir. 2007) (dismissing ATS case against Caterpillar for selling to the Israeli army bulldozers used to demolish Palestinian homes in the West Bank because "[a]llowing this action to proceed would necessarily require the judicial branch of our government to question the political branches' decision to grant extensive military aid to Israel").

*Fourth* and *fifth*, Plaintiffs call for a judgment by this Court that, if granted, would express "a lack of the respect due coordinate branches of government" and raise "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217 (*Baker* factors 4 & 6).  Executive Branch officials and members of Congress consistently express support for the Israeli government[1] and have tried to walk a fine

---

[1]      *See, e.g.*, U.S. State Department Press Releases on Israel, http://www.state.gov/p/nea/ci/is/c5218.htm; *Trade Facilitation and Trade Enhancement Act of 2015*, H.R. 644-115, *United States-Israel Trade and Commercial Enhancement Act* § 909(a)-(b)

line on activities in the West Bank and Gaza. It is the political branches responsibility to make judgments concerning the Israeli settlements, not that of the judicial branch.

Further, the U.S. voted against U.N. General Assembly Resolution 66/225 (Mar. 29, 2012), which stated that Israeli settlements are contrary to international law and Israel's legal obligations,[2] and it abstained on the recent U.N. Security Council Resolution 2334 (Dec. 23, 2016), because it could not "in good conscience stand in the way of a resolution at the United Nations that makes clear that both sides must act now to preserve the possibility of peace."[3]  A judgment from a U.S. court suggesting that settlement activity is unlawful, criminal, or tortious

---

(Feb. 24, 2016) ("TFTEA") (stating that "Israel is America's dependable, democratic ally in the Middle East – an area of paramount strategic importance to the United States" and opposing as a matter of policy "politically motivated actions that penalize or otherwise limit commercial relations specifically with Israel, such as boycotts of, divestment from, or sanctions against Israel").

[2]      G.A. Res. 66/225, U.N. Doc. A/RES/66/225 (Mar. 29, 2012), http://www.un.org/en/ga/search/view_doc.asp?symbol=%20A/RES/66/225; U.N. GAOR, 66th Sess. 91st plen. mtg. at 17, U.N. Doc. A/66/PV.91 (Dec. 23, 2001), http://www.un.org/en/ga/search/view_doc.asp?symbol=A/66/PV.91 (evidencing U.S. vote against resolution); *see also* Explanation of Vote by Ambassador Susan E. Rice, U.S. Permanent Representative to the United Nations, on the Resolution on the Situation in the Middle East, including the question of Palestine, in the Security Council Chamber, Feb. 18, 2011, http://usun.state.gov/remarks/4978 (explaining veto of Security Council resolution condemning Israeli settlements as illegal, stating in part, "It is the Israelis' and Palestinians' conflict, and even the best-intentioned outsiders cannot resolve it for them.  Therefore, every potential action must be measured against one overriding standard: will it move the parties closer to negotiations and an agreement? Unfortunately, this draft resolution risks hardening the positions of both sides. . . .   While we agree with our fellow Council members – and indeed, with the wider world – about the folly and illegitimacy of continued Israeli settlement activity, we think it unwise for this Council to attempt to resolve the core issues that divide Israelis and Palestinians.").

[3]      John Kerry, "Today's Vote in the UN Security Council," U.S. STATE DEP'T (Dec. 23, 2016), https://www.state.gov/secretary/remarks/2016/12/266070.htm.

would serve opponents of U.S. policy in the U.N. and elsewhere and would undermine coordinate branches of Government.[4]

Specifically, the Court would undermine the Legislative Branch.  In the TFTEA, Congress prohibited domestic courts from recognizing or enforcing foreign civil judgments entered against U.S. persons and entities doing business in Israel (including "any territory controlled by Israel") or with Israeli entities if the judgment is based in whole or part on a determination that such business dealings constitute a violation of law.  *See* TFTEA § 909(e).  It would be entirely incongruous if Plaintiffs could obtain a judgment from a U.S. court based on a determination that doing business with Israel or Israeli settlements was tortious, while the same court would be barred from enforcing such a judgment had Plaintiffs brought their suit overseas.

Further, the decisions every year by the President to request, and Congress to authorize, financial support to the military forces of Israel reflect a judgment that the interests of the U.S. warrant such support and that it is consistent with American values. Plaintiffs are asking this Court to determine that alleged general financial support to those same military forces by Defendants constitutes participation in war crimes and tortious conduct.  Such a decision would implicitly condemn and directly conflict with the consistent policy decisions of the Executive and Legislative Branches over the past several decades.

Finally, the President has exercised his power under laws enacted by Congress to deal with "grave acts of violence committed by foreign terrorists that disrupt the Middle East peace

---

[4]     "It is not the role of the courts to indirectly indict Israel for violating international law… Plaintiffs may purport to look no further than Caterpillar itself, but resolving their suit will necessarily require us to look beyond the lone defendant in this case and toward the foreign policy interests and judgments of the United States government itself."  *Corrie*, 503 F.3d at 984; *see also Matar v. Dichter*, 500 F. Supp. 2d 284, 295 (S.D.N.Y. 2007) (granting defendant's motion for dismissal and stating, in a case alleging war crimes and brought pursuant to the ATS and TVPA, "[t]his Court cannot ignore the potential impact of this litigation on the Middle East's delicate diplomacy.").

process." Proclamation No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995).  That order prohibits

donations by U.S. persons to persons or organizations specified in or pursuant to the order.  The

list includes Hamas, Hezbollah, and the Popular Front for the Liberation of Palestine. It does not

include the Israeli army or Israeli settlements.[5]  In effect, Plaintiffs seek to have a court overrule

the President's determination, which he is exclusively authorized to make.  Such a judicial

decision would not only intrude upon the authority of the political branches to conduct foreign

affairs, but would also present the final description of a political question in *Baker* – one

presenting "the potentiality of embarrassment from multifarious pronouncements by various

departments on one question."  369 U.S. at 217.

The reasoning set forth in *Doe I* and the facts detailed above fundamentally distinguish

the instant case from those relied upon by the Plaintiff such as *Biton v. The Palestinian Interim

Self-Government Authority*, 310 F. Supp. 2d 172 (D.D.C. 2004) and 412 F. Supp. 2d 1 (D.D.C.

2005). The court in *Biton* held justiciable a suit against the Palestinian Authority and others for a

terrorist attack under the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* (the "ATA"), because it

was an "ordinary tort suit" that could be judicially resolved based on the statutory definition of

"international terrorism" and the common law of tort and presented no separation of powers

concerns since the Executive and Legislative Branches had "'expressly endorsed'" suits against

terrorist organizations by enacting the ATA.  310 F. Supp. 2d. at 175, 184.  In that case and

others like it, the Israeli-Palestinian conflict was the contextual backdrop and perhaps the

motivation for the defendants' alleged unlawful acts, but it was not the central issue for

resolution.

---

[5]     The order was amended to include additional terrorists by Executive Order No. 13,099 on
August 20, 1998 (Proclamation No. 13,099, 63 Fed. Reg. 45,167 (Aug. 25, 1998)) and was
continued in effect by President Obama on January 20, 2016 (Proclamation No. 13,099, 81 Fed.
Reg. 3937 (Jan. 22, 2016)).

By contrast, the foundation of Plaintiffs' claims here is the proposition that they own land allegedly unlawfully seized and settled by Israel and that their injuries were allegedly inflicted by the Israeli military and settlers during Israel's purportedly wrongful occupation of the West Bank and Gaza.  Resolution of these issues does not rely merely upon a routinely applied statute or even traditional tort case law as in *Biton*. Instead, they would require the Court to directly decide the core issues that lie at the heart of the political conflict, namely, the proper owners of the disputed land in the West Bank and Gaza and the legitimacy of Israel's self-defense and settlement policies and activities.

The Plaintiff's reliance on *Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57 (2d Cir. 2005), is similarly misplaced.   The court in *Whiteman* observed that the use of traditional adjudicative processes, such as those applied by international law, are "proved judicially manageable standards" as required by *Baker*. *Id.* at 77. However, again, the resolution of this case will not depend on common law tort, statutory provisions, or even international law. It will depend upon this court picking a side on a matter of foreign policy regarding Israel settlement activities. While "tort  claims" and "issues of sovereign immunity" may be "constitutionally committed to none other than our own Judiciary," recognizing a foreign sovereign and its territorial boundaries is not. *Id*. at 76.

Finally, Plaintiffs would have this court take an extraordinary cabined view of the political question doctrine that does not comport with reality. They argue that *Doe v. Exxon Mobile Corp* stands for the proposition that because the State Department has not filed a declaration of interest in this case or otherwise issued a "recent and definite statement" that this case cannot possibly interfere with U.S. foreign policy. 69 F. Supp. 35, 75 (D.D.C. 2014). First, that is a misstatement of the law. *Doe* never limits U.S. foreign policy to the State Department

nor hinges the political question doctrine on a State Department filing. *See id.* If that were the standard, the political question doctrine would be reduced to a piece of paper, effectively mooting *Baker*. Second, the U.S. regularly makes its consistent position on Israel abundantly clear.[6] In neither law nor reality can Plaintiff's distorted reliance on *Doe* be sustained.

The Supreme Court has stated that the existence of *any* one of the six *Baker* factors requires dismissal. 369 U.S. at 217.  Here, where five of the six factors are clearly present, there can be no doubt that this Amended Complaint must be dismissed under the political question doctrine.

**C.     The Act of State Doctrine is Applicable to the Case at Bar.**

The Act of State Doctrine prevents a U.S. court "from deciding a case when the outcome turns upon the legality or illegality (whether as a matter of United States, foreign, or international law) of official action by a foreign sovereign performed within its own territory." *Malewicz*, 517 F. Supp. at 337 (quoting *Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS*, 163 F.3d 1363, 1367 (D.C. Cir. 1999)). Essentially, if a state is acting in the public interest then it is asserting its sovereignty and the act of state doctrine may apply." *Virtual Defs. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 1, 7 (D.D.C. 1999).

In this case, Plaintiffs argue that for at least 20 years, defendants were illegally confiscating private property owned by Palestinian Plaintiffs. Because the property was taken by the Israeli government officials in their capacity, there cannot be a violation of international law and this Court should apply the Act of State Doctrine.  *See Sabbatino*, 376 U.S. at 401; *Altmann*, 541 U.S. at 700; *World Wide Minerals v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002). Plaintiffs agree that the acts committed by the Israeli military involve war crimes.

---

[6] *See supra*, pg. 12; notes 1 and 2.

(AC ¶ 5). The acts performed by Israel, a foreign sovereign, occurred within its own territory. Plaintiffs argue that the remedies available [to the U.S. citizen Plaintiffs] in the OPT are not adequate. *Id.* It seems that Plaintiffs are simply forum shopping.

In brief, the act of state doctrine should preclude the courts of this country from inquiring into the validity of the public acts Israel – as a recognized foreign sovereign power – committed within its own territory. *See Malewics*, 517 F. Supp. 2d 336. The act of state doctrine applies in this case because "the relief sought … would [require] a court in the United States to declare invalid the official act of a foreign sovereign." *Id* at 337.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER AMERICAN FRIENDS.

This Court should dismiss the claims against American Friends for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). It is the Plaintiffs' burden to make a *prima facie* showing that this Court has personal jurisdiction over the Defendant. *See First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). "Plaintiff[s] must allege specific facts on which personal jurisdiction can be based . . . [and] cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (citations omitted); *see also Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (stating that plaintiffs cannot "aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant"). Here, Plaintiffs fail to allege any facts on which personal jurisdiction can be based.

As a preliminary matter, District of Columbia law provides that a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, . . . or maintaining his . . . principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Plaintiffs failed to identify any evidence of American Friends being domiciled or

maintaining its principal place of business in the District of Columbia. American Friends is a

non-resident of the District of Columbia. In fact, American Friends' principal place of business is

in New York.

To determine whether specific personal jurisdiction exists, the D.C. Circuit has set forth a

two-part inquiry. First, a court must "examine whether jurisdiction is applicable under the state's

long-arm statute," and second, "determine whether a finding of jurisdiction satisfies the

constitutional requirements of due process." *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d

1343, 1347 (D.C. Cir. 2000). Additionally, this Court "may receive and weigh affidavits and any

other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip*

*Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (citing 5A Charles A. Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 1351 (1990)).

### A.   The District of Columbia's Long-Arm Statute Does Not Extend Personal Jurisdiction Over American Friends.

The District of Columbia's long-arm statute only allows a court in the District of

Columbia to exercise specific personal jurisdiction over a nonresident defendant arising from the

defendant's conduct in:

1) transacting any business in the District of Columbia;
2) contracting to supply services in the District of Columbia;
3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a).

Section 13-423 makes clear that, where jurisdiction is predicated solely upon the long-

arm statute, "only a claim for relief arising from acts enumerated in this section may be asserted

against [a person]." D.C. Code § 13-423(b). Plaintiffs do not allege any facts in the Amended

Complaint that would provide a basis for asserting personal jurisdiction over American Friends

in the District of Columbia under the D.C. long-arm statute. The Amended Complaint fails to

assert any factual basis that would permit the court to exercise personal jurisdiction over

American Friends. The Amended Complaint simply alleges that the Defendants Netanyahu,

Barak and Lieberman have been coming to the District of Columbia to transact business (AC ¶

9). However, importantly, Plaintiffs cannot "aggregate factual allegations concerning multiple

defendants in order to demonstrate personal jurisdiction over any individual defendant." *Farouki*

*v. Petra Int'l Banking Corp.*, 811 F. Supp. 2d 388, 397 (D.D.C. 2011) (citing *Rush v. Savchuk*,

444 U.S. 320, 331-32 (1980)); *see also Second Amendment Found. v. U.S. Conference of*

*Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (noting that a plaintiff must allege specific acts

connecting a defendant with the forum)).

   When these general, sweeping and nonspecific allegations are removed, no allegations

remain that address personal jurisdiction or even suggest that personal jurisdiction exists *over*

*American Friends* pursuant to the D.C. long-arm statute. Indeed, the Complaint makes clear that

the events in question all occurred outside the District of Columbia. Defendants engaged in

"financing, encouraging, or participating in war crimes" in Israel. (AC at 7). Defendants

Netanyahu, Barak and Lieberman "have been violating Israel's criminal statutes by purposefully

diverting government funds to illegal settlements." (*Id*.). Valuable real estate investments

occurred in Israel. (*Id.* at 8). The Plaintiffs rely on the "conspiracy theory" of personal

jurisdiction, an application of long-arm jurisdiction pursuant to which a defendant's contacts

with the forum consist of the defendant's conspiratorial activities.  *See Jungquist v. Sheikh Sultan*

*Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1030-31 (D.C. Cir. 1997) (applying conspiracy theory of

personal jurisdiction to long-arm statute's "transacting business" provision); *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424-425 (D.C. Cir. 1991) (discussing application of conspiracy theory of personal jurisdiction to long-arm statute's "causing tortious injury in the District" provision).

Plaintiffs cite to *Second Amendment Found v. U.S. Conference of Mayors* and assert that the District of Columbia's long-arm statute provides a basis for jurisdiction under the conspiracy theory of personal jurisdiction against members of a civil conspiracy when the elements of a civil conspiracy have been pled. (AC ¶ 21). The fact that multiple plaintiffs filed suit or that multiple defendants are named does not establish that American Friends entered a conspiratorial agreement with anyone. Since the "bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction," "a plaintiff must allege specific acts connecting [the] defendant with the forum[.]" *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (internal quotation marks and citations omitted). And, "[t]he general rule … that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts[]" applies to conspiracy-based jurisdiction. *Id.* To prevail on its jurisdictional theory, therefore, the Plaintiffs must make a prima facie showing of civil conspiracy and that this defendant was a member of that conspiracy and took some overt act in furtherance of it.

In the District of Columbia, civil conspiracy has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). As further described *supra*, the complaint explicitly lists all other defendants involved in the alleged conspiratorial agreement,

21

but *fails to include American Friends as an actor*. Plaintiffs fails to allege any specific acts connecting American Friends with the forum. Plaintiffs also failed to present any evidence of an illegal agreement between American Friends and other defendants. As a result, Plaintiffs unquestionably fail to make a prima facie showing of civil conspiracy.

### B.     Asserting Jurisdiction Over American Friends Would Offend Traditional Notions of Fair Play and Substantial Justice.

Determining whether the exercise of personal jurisdiction would comport with the requirements of due process turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kurtz v. United States*, 779 F. Supp. 2d 50, 52 (D.D.C. 2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's "minimum contacts" must arise from "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) (quotations omitted). In essence, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

American Friends does not regularly transact business in the District of Columbia, nor does it have any employees, property, offices or facilities in the District of Columbia. American Friends has not made contacts with the forum, or engaged in an act by which it purposefully availed itself of the privilege of conducting activities within the forum. Accordingly, American Friends would not have anticipated being haled into this Court. Plaintiffs have not alleged to the contrary, or even alleged any such facts at all. As a result, extending personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice."

### III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

This Court should dismiss the claims against all Defendants for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). When examining the sufficiency of a complaint as to a defendant, this Court is empowered to "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (stating that "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint providing only a "formulaic recitation of the elements of a cause of action" will not withstand a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A.    Plaintiffs Fail to Establish The Requisite Elements of Civil Conspiracy to Arm and Train Foreign Militia.

Plaintiffs urge the Court to find all the Defendants liable for civil conspiracy. However, the Amended Complaint does not explain the assumption that Defendant American Friends was part of any agreement to participate in an unlawful act. In fact, the Amended Complaint explicitly lists Defendants involved in the alleged conspiratorial agreement. Conspicuously absent from this list is American Friends. (AC at 59). Not only is there is no evidence of an illegal agreement between American Friends and other Defendants to commit a crime, but the Plaintiffs fail to provide any justification for their assumption of such an agreement. In a civil conspiracy action, it is true that "proof of a tacit, as opposed to explicit, understanding is

sufficient to show agreement." *Halberstam*, 702 F.2d at 477 (quoting 16 Am. Jur. 2d *Conspiracy* § 68 (1979)). Here, the allegations show neither an explicit nor even a tacit agreement to commit crimes of any sort between American Friends and other Defendants. A conspiracy may be shown by circumstantial evidence, which the plaintiffs have attempted to do simply by claiming that an agreement existed. "The circumstances, however, must do more than create a mere suspicion of the existence of a conspiracy. They must be such that ordinary people of sound mind may reasonably deduce therefrom that there was a conspiracy." *Id*.

More important than the agreement to the success of a civil conspiracy charge is that the plaintiff must prove that "an unlawful overt act produced an injury and damages." 16 Am. Jur. 2d *Conspiracy* § 68 (1979). Here, the alleged injuries stem from an alleged agreement built entirely on incomplete inferences. Plaintiffs claim that American Friends should be liable for the alleged actions of Israeli settlers, the Israeli Army, and various Israeli government officials because American Friends made charitable donations to peaceful institutions. "Finding of a conspiracy would be justified if the defendants' acts revealed they had 'pursued the same object, although by different means, one performing one part and another performing another part." *Halberstam*, 702 F.2d at 480 (quoting *Davidson v. Simmons*, 280 N.W.2d 645, 648-49 (1979)). A careful reading of the Amended Complaint does not reveal any factual implication that American Friends has had a common objective with other Defendants to commit any of the various tortious acts alleged by the Plaintiffs.

Plaintiffs rely on several criminal statutes to assess liability to American Friends. They rely on an ATA provision, 18 U.S.C. § 2333, to find civil liability for American Friends' donations, but unfortunately for Plaintiffs, they grossly misapply that law. Much of section 2333 only applies to U.S. citizens providing material support to designated terrorist organizations

according to 8 U.S.C. § 1189. Although the PLO and the PLA have frequently advocated for

Israeli settlers, the IDF, and even the nation of Israel to be official designated as terrorist

organizations, the U.S. Congress has not added any of these bodies to the register of terrorist

organizations. Without this fundamental requirement, most of the ATA is automatically

inapplicable.

The aspects of ATA that survive the requirement that the recipient of support be a

designated terrorist organization are found in 18 U.S.C. § 2339A, which make illegal the support

of terrorist activities while knowing or intending that the support will be used for terrorism, and

18 U.S.C. § 2339C, which makes it illegal to provide funding with the knowledge or intent that

such funds will be used to violate a U.S. treaty or to fund terrorism. Neither of the surviving code

sections is applicable here. First, both sections require that the donor or supporter have

knowledge or intent that the support would be used to violate U.S. law. The Amended Complaint

does not explain any basis for the necessary assumption that **American Friends** had any

knowledge or intent that its support would be used for such measures. Instead, the Amended

Complaint implies a fallacy – that the United States is in a current treaty with the either Israel or

the Palestinian Arabs that no private U.S. entity will sponsor or promote Israeli settlements in

Palestine. In 2011, the United States vetoed a U.N. Security Council resolution that would have

declared the settlements illegal. In 2016, the United States abstained from voting when the same

question was raised.

The Plaintiffs claim that the allegedly illegal activity of sponsoring settlements by

**American Friends** has been continuing for over twenty years and cite President Clinton's

executive order from 1993. However, 18 U.S.C. § 2335(a) places a ten-year statute of limitations

on claims arising under the ATA, meaning that the applicable U.S. policy must be the policy in

effect since 2007. Since 2007, the United States has not been a member of a treaty that makes it illegal to sponsor Israeli settlements. And, even if President Clinton's executive order was followed here, it could not place any liability on **American Friends**. The order prohibits supporting or entering financial transactions with (1) persons or organizations designated by the Secretary of State to be sponsors of terrorism or (2) persons listed in the annex to the order. EO 12497. **American Friends** has not sponsored or entered into transactions with any such parties, and the Amended Complaint has not alleged that they have done so. For lack of an actual treaty, Plaintiffs cite sources such as General Petraeus and Secretary of State Baker (who served as a cabinet member during the First Gulf War), who, though respected in some circles, are by no means spokespersons for current U.S. policy or law.

Plaintiffs also repeatedly claim that Defendants should be liable for a conspiracy to launder money. It is illegal to use to conduct financial transactions using proceeds from unlawful activity to finance another specified unlawful activity if the person conducting the transaction (1) knows the funds are proceeds of an illegal activity (2) intends to promote a specified unlawful activity (3) with knowledge that the transaction is designed to conceal the source of the proceeds or purpose to which the proceeds are intended. 18 U.S.C. § 1956(a). Here, the plaintiffs allege that **American Friends** raised funds to donate to the settlement Bet El. Plaintiffs further allege that funds have been used to promote and further the illegal activity of expanding Israeli settlements, stealing private and real property from Palestinian Arabs, murder, torture, and other crimes.

The Amended Complaint specifically claims that **American Friends** gave funds to the settlement to establish a military academy and arm settlers with military weapons. (AC at 40). The complaint fails to name the military academy (although plaintiffs claim this nameless school

only admits Israelis) or a single settler who has been armed with the alleged 20,000 automatic weapons or the alleged millions of rounds of ammunition. (AC at 10). The Complaint does not give any basis for its claims that financing from American Friends has gone toward any of these activities.  Furthermore, it does not explain why donating to a private school is illegal. Seemingly aware that they are unable to directly tie funding from American Friends to any of the alleged criminal activities, Plaintiffs weakly argue that money is fungible. This is true if money is not earmarked for specific purposes, but the Plaintiffs do not claim that American Friends has been donating money with no intention of its spending. On the contrary, they make unsupported claims that American Friends has deliberately, knowingly, and willingly sent funds to Bet El with the specific intent that said funds be used for criminal activity.

Plaintiffs have also alleged that American Friends is a member of a conspiracy to illegally participate in arms trafficking to Israeli militias. According to the Amended Complaint, "defendants knew that arming belligerent settlers constitutes classic arms trafficking" under 18 U.S.C. § 922. (AC at 14). But 18 U.S.C. § 922 does not suggest this conclusion. Arms trafficking under that statute deals with who is able to purchase, sell, dispose of, and transport firearms. Even if American Friends has provided money to Israeli NGO's (which the Amended Complaint, again, fails to identify), the Plaintiffs here have not alleged that American Friends bought, sold, transported, or gave weapons of any kind to anyone. The Plaintiffs are asking this Court to "accept inferences drawn by plaintiffs [though] such inferences are unsupported by the facts set out in the complaint," which the court has stated it is not required to do. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In essence, Plaintiffs are hoping that this court will do the work of pleading and causation for them. Plaintiffs string together legitimate charitable activities with unsubstantiated assertions

to declare American Friends a "funnel of funds" directed towards terrorist activities. They even cite *Wultz v. Islamic Republic of Iran* in an attempt to legitimate their insufficient pleading. 755 F. Supp. 2d 1, 22 (D.D.C. 2010). They claim that merely alleging "a flow of money directly to the coffers" of a terrorist organization is enough. *Id.* Unfortunately for Plaintiffs, their Amended Complaint cannot even meet their own absurd standard. American Friends only directs funds to charitable organizations for legitimate activities. They do not direct any "flow of money" to a terrorist organization, and Plaintiffs have failed to identify even one.

Again, Plaintiff's entire claim rests upon this court legitimizing their view of the ongoing Israeli-Palestinian conflict, declaring a U.S. ally and its citizens terrorists and legitimate charitable activities conspiracies to perpetuate the worst kind of human atrocities. Because Plaintiffs have failed to establish the requisite elements of any of the crimes they allege, this Court should dismiss Count I of the Amended Complaint for failure to state a claim.

**B.     Plaintiffs Failed to Allege Any Facts or Identify Any Evidence of Aiding and Abetting The Commission of War Crimes.**

Plaintiffs have also failed to state a claim against American Friends for aiding and abetting the commission of war crimes. "The separate tort of aiding and abetting has not yet, to our knowledge, been recognized explicitly in the District." *Halberstam*, 705 F.2d at 479. Assuming, therefore, that aiding and abetting is a an actionable tort in this district, to survive a motion to dismiss the plaintiffs must successfully plead three essential elements: "(1) a wrongful act causing an injury by a party aided by the defendant; (2) the defendant's knowledge of his role as part of an overall illegal or tortious activity at the time that he provided assistance; and (3) the Defendant's knowing and substantial assistance in the principal violation." *Id.* at 477.

The Plaintiffs have failed to show **American Friends** had knowledge of any illegal activity at the time any assistance was provided to another principal defendant. Furthermore, the

Plaintiffs have also failed to show that **American Friends** knowingly and substantially assisted a

principal defendant in the commission of any tortious activity. The Plaintiffs are required to

plead that **American Friends** had "knowledge of [their] role as part of an overall illegal or

tortious activity." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 (2010). Without

adequately pleading this element, their aiding and abetting theory of liability cannot survive. The

Plaintiffs base their aiding and abetting claims on the Justice Against Sponsors of Terrorism Act

(JASTA), 144 P.L. 222. The Plaintiffs quote from the congressional findings in JASTA several

times in the Amended Complaint, but deliberately refrain from referencing Section 4 of that act,

which is entitled "Aiding and abetting liability for civil actions regarding terrorist acts." *Id.* at §

4. The reason for that omission is obvious when one reads the section. It specifically limits the

liability to persons "for an injury arising from an act of international terrorism committed,

planned, or authorized *by an organization that had been designated as a foreign terrorist

organization under section 219 of the Immigration and Nationality Act*." *Id.* (emphasis added).

As explained above, the IDF, the Israeli settlers, and the Israeli government are not designated as

foreign terrorist organizations.

   The Complaint claims that the alleged money (allegedly $2.2 billion dollars last year) of

laundered money sent by 501(c)(3) entities to Israeli settlements has cost the U.S. Government

"billions of dollars every year in tax revenues." (AC at 13). Simple mathematics points out the

preposterous nature of this claim, as even if the entire alleged amount had been illegally donated

in a single year, it could not possibly create billions of dollars in tax revenue even if every penny

was taxed at the highest possible rate. Nevertheless, plaintiffs rely on this reasoning to further

allege that JASTA has been violated by **American Friends**, threatening the American economy.

Once again, the language about threatening the American economy is found only in the

congressional findings section of JASTA, not in the section regarding civil liabilities for aiding and abetting. 144 P.L. 222.

In the Amended Complaint, the Plaintiffs accuse **American Friends** of having "funded, promoted, encouraged, assisted, and facilitated wholesale violence, genocide, arson, ethnic cleansing, arms trafficking, malicious wounding of Palestinian civilians and theft of private property." (AC at 70). But the Amended Complaint fails to mention how much funding at any time was supplied at any time to the alleged criminals. The Amended Complaint fails to explain how **American Friends** "promoted" or "encouraged" or "assisted" the alleged criminals. The Amended Complaint does not give addresses for the allegedly stolen real property, it does not include even one of the allegedly forged deeds that were allegedly used to steal said real property.

## **CONCLUSION**

For all of the foregoing reasons, Defendant American Friends of Bet El Institutions respectfully requests that this Court dismiss the Amended Complaint as against American Friends in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), and grant American Friends such other and further relief as this Court deems just and proper.

Dated:        August 15, 2017                Respectfully submitted,

DAVID I. SCHOEN                              JAY ALAN SEKULOW (D.C. Bar No. 496335)
  (D.C. Bar No. 391408)                      STUART J. ROTH (D.C. Bar No. 475937)
DAVID I. SCHOEN, ATTORNEY AT LAW             ANDREW J. EKONOMOU[*]
2800 Zelda Road, Suite 100-6                 MARK A. GOLDFEDER[*]
Montgomery, Alabama 36106                    JEFFREY H. BALLABON[*]
Email: DSchoen593@aol.com                    CARLY F. GAMMILL (D.C. Bar No. 982663)
Telephone: (334) 395-6611
Facsimile: (917) 591-7586

_____

[*] Not admitted in this jurisdiction; application for admission Pro Hac Vice to be filed.

/s/ Benjamin P. Sisney

*Counsel for Defendant American Friends of Bet El Institutions*

BENJAMIN P. SISNEY (D.C. Bar # 1044721)
THE AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, N.E.
Washington, D.C.  20002
Email: bsisney@aclj.org
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
*Counsel for Defendant American Friends of Bet El Institutions*