# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MIKO PELED, *et al.*,

               Plaintiffs,

-against-

BENJAMIN NETANYAHU, *et al.*,

               Defendants.

Docket No: 1:17-cv-00260 (RBW)

Hon. Reggie B. Walton

**[Oral Argument Requested]**

**MEMORANDUM OF LAW OF DEFENDANT KUSHNER FAMILY FOUNDATION IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT KUSHNER FAMILY FOUNDATION'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**AKERMAN LLP**
Donald David
Joshua Bernstein
Phillip Spinella
*Attorneys for Defendant*
*Kushner Family Foundation*

666 Fifth Avenue, 20th Floor
New York, New York 10103
(212) 880-3800

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION
        BECAUSE PLAINTIFFS' CLAIMS ARE NON-JUSTICIABLE
        PURSUANT TO THE POLITICAL QUESTION DOCTRINE AND THE
        ACT OF STATE DOCTRINE ................................................................................ 3

        A.   The Political Question Doctrine Bars This Action ........................................ 3

             1.   Doe I Is Controlling Precedent ................................................... 3

             2.   The United States Government Has Taken the Position that
                  Allegations Similar To Those Made in this Case Implicate Political
                  Questions ....................................................................................... 7

        B.   The Act Of State Doctrine Also Bars This Action ....................................... 10

II.     THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS
        DO NOT HAVE STANDING UNDER JASTA .................................................. 12

III.    THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS
        CANNOT SATISFY THE ATA'S PROXIMATE CAUSE
        REQUIREMENT ................................................................................................... 13

IV.     PLAINTIFFS' ALIEN TORT STATUTE CLAIM MUST BE
        DISMISSED AS LACKING SUFFICIENT CONTACT WITH THE
        UNITED STATES UNDER *KIOBEL* ................................................................ 15

V.      THE ATA CLAIM MUST BE DISMISSED BECAUSE AN ATA
        CLAIM  PREDICATED UPON "ACTS OF WAR" IS BARRED BY
        SECTION 2336(a) ................................................................................................ 18

VI.     THIS CASE MUST BE DISMISSED AS AGAINST KFF BECAUSE
        THIS COURT LACKS PERSONAL JURISDICTION OVER KFF .................... 19

VII.    MULTIPLE PLAINTIFFS MUST BE DISMISSED FROM THE CASE
        BECAUSE THEY LACK ARTICLE III STANDING ......................................... 21

CONCLUSION .............................................................................................................. 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akins v. Fed. Election Comm'n*,
   101 F.3d 731 (D.C. Cir. 1996), *vacated on other grounds*, *Fed.
   Election Comm'n v. Akins*, 524 U.S. 11 (1998) ........................................................21

*\*Al-Tamimi et al., v. Adelson et al.*,
   Docket No. 16-cv-00445-TSC ........................................................................7, 8, 17

*Almog v. Arab Bank, PLC*,
   471 F. Supp. 2d 257, 295 n.45 (E.D.N.Y. 2007) ...........................................................8

*Atlantigas Corp. v. Nisource, Inc.*,
   290 F. Supp. 2d 34, 42 (D.D.C. 2003) ........................................................................19

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013) .......................................................................................15

*\*Balintulo v. Ford Motor Co.*,
   796 F.3d 160 .............................................................................................................17

*BCCI Holdings (Luxembourg), S.A. v. Khalil*,
   214 F.3d 168 (D.C. Cir. 2000) (1992) .......................................................................13

*Bechtel & Cole v. Graceland Broadcasting*,
   1994 U.S.App. LEXIS 4468 (D.C.Cir. Mar. 9, 1994) ................................................20

*Biton v. Palestinian Interim Self-Government Authority*,
   310 F. Supp. 2d 172 (D.D.C. 2004) .................................................................. *passim*

*Biton v. Palestinian Interim Self-Government Authority*,
   412 F. Supp. 2d 1 (D.D.C. 2005) ............................................................................4, 6

*Corrie v. Caterpillar, Inc.*,
   503 F.3d 974 (9th Cir. 2007) ...................................................................................8, 9

*\*Doe I v. State of Israel*,
   400 F. Supp. 2d 86 (D.D.C. 2005) .................................................................... *passim*

*\*Doe v. Drummond Co.*,
   782 F.3d 576 (11th Cir. 2015) ............................................................................16, 17

*Doe v. Exxon Mobil Corp.*,
    69 F. Supp. 3d 75 (D.D.C. 2014) ............................................................10, 11, 16, 17

*El-Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 836 (D.C. Cir. 2010) ...................................................................................1

*Hayhurst v. Calabrese*,
    988 F.2d 1280 (D.C. Cir. 1993) ...............................................................................20

*Hemi Grp. v. City of New York*,
    559 U.S. 1 (2010) .........................................................................................13, 14, 15

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992) ..................................................................................................14

*In re S. African Apartheid Litig.*,
    56 F. Supp. ...............................................................................................................17

*In re S. African Apartheid Litig.*,
    56 F. Supp. 3d 331 (S.D.N.Y. 2014*), aff'd sub nom. Balintulo v. Ford
    Motor Co.*, 796 F.3d 160 (2d Cir. 2015) ...........................................................15, 17

*Inv. Co. Inst. v. United States*,
    550 F. Supp. 1213 (D.D.C. 1982) .............................................................................21

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille
    Lauro in Amministrazione Straordinaria*,
    937 F.2d 44 (2d Cir. 1991) .......................................................................................21

*Lelchook v. Islamic Republic of Iran*,
    224 F. Supp. 3d 108 (D. Mass. 2016) ......................................................................12

*Lev v. Arab Bank, PLC*,
    No. 08–cv–3251, 2010 WL 623636 (E.D.N.Y. Jan. 29, 2010)...................................9

*Linde v. Arab Bank, PLC*,
    97 F. Supp. 3d 287 (E.D.N.Y. 2015) ........................................................................9

*Malewicz v. City of Amsterdam*,
    517 F. Supp. 2d 322 (D.D.C. 2007) .........................................................................10

*Naartex Consulting Corp. v. Watt*,
    722 F.2d 779 (D.C.Cir.1983) *cert. denied*, 467 U.S. 1210 (1984) ...........................20

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
    489 F.3d 1279 (D.C. Cir. 2007) ...............................................................................22

iii

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)..................................................................................14

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974)...........................................................................................1

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
    493 U.S. 400 (1990)..........................................................................................12

*Walden v. Fiore*,
    134 S.Ct. 1115 (2014)......................................................................................19

*Whiteman v. Dorotheum GmbH & Co. KG*,
    431 F.3d 57 (2d Cir. 2005)................................................................................9

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010) ....................................................................14

**Statutes**

19 U.S.C.A. § 4452...............................................................................................8

18 U.S.C. § 2333...................................................................................................13

JASTA...............................................................................................................12, 13

**Rules**

Federal Rule of Civil Procedure 12 ....................................................................22

## PRELIMINARY STATEMENT

Plaintiffs base their opposition to the instant motion upon a request that this Court make judicial findings that:

(1) Israel has no sovereign rights affecting the disputed land where settlements are located;

(2) funding of settlement activity and Israeli military activity in the West Bank and Gaza are unlawful; and

(3) Israel's actions in the West Bank and Gaza constitute tortious activity – no less than genocide and war crimes – under U.S. law.

Thus, at bottom, Plaintiffs ask this Court to 'choose sides' in a long-running conflict affecting one of the volatile regions of the world.

As this Court has held, in other cases, the issues raised by Plaintiffs' Amended Complaint fall squarely within the sphere of the political question doctrine. This Court should reject Plaintiffs' invitation to meddle in foreign affairs and cross boundaries that Article III places on the federal courts. *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) ("The political question doctrine . . . prevents federal courts from resolving controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch.") (internal citations omitted); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 215 (1974) ("[T]he concept of justiciability, which

expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement of Art. III, embodies ... the political question doctrine[.]").

The claims in the Amended Complaint should also be dismissed on other grounds.

First, Plaintiffs' theory is that the Israeli government is in league with Israeli charities and the IDF in a conspiracy to promote settlement expansion. That theory attacks state-sanctioned and government-directed conduct and, as such, Plaintiffs' claims are barred by the Act of State Doctrine, which precludes United States courts from judging the validity of a foreign sovereign's acts.

Second, Plaintiffs' claim under the Anti-Terrorism Act ("ATA") must be dismissed because Plaintiffs cannot state a claim for aiding and abetting or conspiracy liability under the ATA. Congress, with its recent passage of the Justice Against Sponsors of Terrorism Act ("JASTA"), has limited secondary liability under the ATA to situations where a defendant has assisted an organization that has been designated as a foreign terrorist organization. Israel and the IDF have never been designated as such. The ATA claim must also be dismissed because Plaintiffs cannot satisfy the statutory proximate cause requirement that demands a direct connection between the underlying predicate act and the alleged harm, where any intervening steps breaking the chain of proximate causation. Here, there are myriad intervening steps between the allegedly laundered donations to KFF, and the provision of aid to settlers and promotion of settlement expansion generally.

Third, Plaintiffs' claim under the Alien Tort Statute ("ATS") must be dismissed because the claim lacks sufficient contact with the United States under recent Supreme Court precedent. The Supreme Court has expressly held that claims under the ATS cannot

be brought for alleged violations of international law that occur within the territory of a sovereign other than the United States.  Here, the primary, allegedly tortious conduct occurred abroad, and thus Plaintiffs' ATS claim must be rejected.

Finally, the Amended Complaint must be dismissed, as against KFF, in its entirety, because this Court lacks personal jurisdiction over KFF.  All of the allegations regarding KFF's contacts with this forum fall within the 'government contacts' exception to personal jurisdiction in the District of Columbia.  As such, there is no basis for jurisdiction over KFF in this District, where it is not incorporated, maintains no offices, and does not do business so "continuous and systematic" that it could reasonably have expected to be subjected to suit in this District.

For the forgoing reasons, we respectfully request that this Court dismiss all claims against KFF with prejudice.

## ARGUMENT

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' CLAIMS ARE NON-JUSTICIABLE PURSUANT TO THE POLITICAL QUESTION DOCTRINE AND THE ACT OF STATE DOCTRINE

### A.    The Political Question Doctrine Bars This Action

#### 1.    *Doe I Is Controlling Precedent*

This Court's precedents on the precise issues raised in this case demand dismissal, with prejudice, of the Amended Complaint.  As discussed in KFF's Opening Brief, *Doe I v. State of Israel* is controlling precedent in this District.  400 F. Supp. 2d 86 (D.D.C. 2005).  Attempting to overcome that fact, Plaintiffs rely on two related cases while arguing that this Court should reject all other precedents and proceed to adjudicate Plaintiffs' ATS and

ATA claims: *Biton v. Palestinian Interim Self-Government Authority*, 310 F. Supp. 2d 172 (D.D.C. 2004) ("*Biton I*") and *Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1 (D.D.C. 2005) ("*Biton II*").  However, Plaintiffs' reliance on these two cases is misplaced, and the *Biton* cases do not negate the *Doe I* holding.

Both the reasoning of *Doe I* and the facts of this case, as alleged in the Amended Complaint, distinguish the instant case from *Biton I* and *II*.  In *Doe I,* Judge Bates succinctly framed the issues now before *this* Court, stating that plaintiffs' complaint

> [W]ould have this Court adjudicate the rights and liabilities of the Palestinian and Israeli people, making determinations on such issues as to [1] whom the land in the West Bank actually belongs [2] [whether] Israel's self-defense policies are tantamount to terrorism [3] [whether] Israeli settlement activities are illegal or tortious [and [4] whether] . . the ongoing armed conflict in the West Bank [is] either "genocide" . . . or self-defense.

400 F. Supp. 2d at 112; *compare with* Plaintiffs' Opposition Brief ("Opp. Br."), at 2, 5, 17, 18, 23, 26, 29, 30, 35, 39, 40, 44 (alleging that Israeli activities resulted in "ethnic cleansing" and "genocide" of Palestinian nationals, as well as theft and destruction of property belonging to Palestinians).  Based upon the issues as framed in *Doe I* – the same issues presented by the Amended Complaint in this case – the *Doe I* court rejected the plaintiffs' request to adjudicate these underlying political questions.

Plaintiffs' argument – a generous term for what Plaintiffs have offered this Court – seeking to circumvent and distinguish the holding in *Doe I* does not withstand scrutiny.  As set forth by Plaintiffs' themselves, their argument can be reduced to the following:

> The bottom line is that it would be judicial error for this Court to grant the motion to dismiss based on Judge Bates' holding in *Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005). They are two entirely different cases— first, the *Doe* Plaintiffs actually sued the state of Israel itself, and they ***never alleged that Defendant tortfeasors like KFF were engaging in a money***

> ***laundering scheme on U.S. soil*** designed to rid the West Bank of all non-Jews.

Opp. Br., at 17 (emphasis added).  First, this is demonstrably false.  Contrary to Plaintiffs' assertion that *Doe I* is an "entirely different case," the complaint in *Doe I*, like the Amended Complaint here, "broadly alleg[es] that Plaintiffs, or their loved ones, have been personally and financially injured by the actions of the Israeli defendants—and those acting under their command or policies—regarding settlement activities in the West Bank." *Doe I,* 400 F. Supp. 2d at 97.  Furthermore, *Doe I* involved a defendant non-profit religious corporation, which is analytically identical to KFF.  With regard to that defendant, the *Doe I* Court noted that the plaintiffs'

> [C]laims rest on Plaintiffs' assertion that the [corporate defendant] actively solicited financial contributions that were applied to purchase various types of protective gear that was, in turn, used in the West Bank by Israeli settlers.

*Doe I,* 400 F. Supp. 2d at 98–99.[1]

Thus, Plaintiffs' claim that the *Doe I* plaintiffs "never alleged that Defendant tortfeasors like KFF were engaging in a money laundering scheme on U.S. soil" is clearly inaccurate[2] and certainly is not a predicate to distinguish *Doe I*.

Moreover, there are broader reasons that distinguish the *Biton* cases from the instant matter. The *Biton* courts dealt with an ATA claim against the Palestinian Authority based on a bus bombing that killed the plaintiff's husband and injured another plaintiff who was

---

[1] This allegation is similar in substance and form to the allegation in the Amended Complaint claiming that KFF and others are involved in providing settlers with "body armor, stun guns, sniper scopes, bullet proof vests" and other similar equipment.  Amended Complaint, pg. 13.

[2] The religious corporation in *Doe I* was a non-profit "organized under the laws of New Jersey."  *Doe I,* 400 F. Supp. 2d at 98.  KFF is also a non-profit corporation organized under the laws of New Jersey.

on the bus.  Because the ATA claims in the *Biton* cases dealt with a discrete, terrorist act that had caused specific and particular harm to the plaintiffs, the *Biton c*ourts essentially held that the *Biton* actions were each an "ordinary tort suit." *Id.* at 184.[3]  The *Biton* courts thus found that these claims were justiciable. *See, e.g., Biton I,* 310 F. Supp. 2d at 175.

Thus, in the *Biton* cases, the Israeli-Palestinian conflict was, at most, a contextual backdrop and, perhaps, the motivation for the defendants' alleged unlawful acts, but was not the central issue for resolution. *Biton II,* 412 F. Supp. 2d at 5 (adjudicating liability for the attack did not require the court to "assess the Israeli-Palestinian conflict" or the legality of the settlement activity in the West Bank and Gaza).

That is far different from this case, which would require adjudication of broader political questions and implicate sensitive foreign policy issues.  The policies of the Israeli government, the actions of the Israeli military, and the legality of settlement activity – those issues are at the heart of Plaintiffs' allegations in this case.  Resolution of those issues would require the Court to decide the legitimacy of Israel's self-defense and settlement policies and whether or not actions of the IDF constitute terrorism.

In sum, the fact that a school bus bombing by a designated foreign terrorist organization was held to be a justiciable tort under the Anti-Terrorism Act in no way vitiates KFF's argument that failing to dismiss Plaintiffs' claims *here* would require adjudication of political questions. The *Biton* cases in no way supersede the clear and unequivocal statement in *Doe I* that claims akin to those raised here are non-justiciable.

---

[3] Furthermore, the *Biton* cases involved a designated terrorist organization – a critical distinguishing fact from the instant case.

2. *The United States Government Has Taken the Position that Allegations Similar To Those Made in this Case Implicate Political Questions*

Unsurprisingly, the United States Government (the "Government") confirms this analysis – and Plaintiffs' counsel is well-aware of such.  While Plaintiffs claim in their opposition that the Government been silent on this issue,[4] the Government intervened in an analogous case filed last year in this District *by the same counsel as represent Plaintiffs in this case and involving some of the same plaintiffs as here*: Al-Tamimi et al., v. Adelson et al., Docket No. 16-cv-00445-TSC ("*Adelson*").

The *Adelson* Complaint alleges essentially the same facts,[5] and seeks adjudication of the same underlying issues.[6]  It also made claims against an official of the U.S. government.  In *Adelson* the Government intervened and moved for dismissal on the ground of the political question doctrine.  *See* United States' Motion to Dismiss (the "Gov. Br."), at 12-18[7].  The Government argued that "Plaintiffs' claims are strikingly similar to those in Doe I, where the court held the political question doctrine barred the claims." United States' Reply In Support of its Motion to Dismiss (the "Gov. Reply")[8], at 10

---

[4] *See* Opp. Br. at 11 (arguing that KFF's motion should fail because there is "is an insufficiently recent and definite statement from the Executive that this case interferes with the foreign policy of the United States"). As described above, this is untrue, as Plaintiffs' counsel knows.

[5] The Complaints are strikingly similar.  The gravamen of the plaintiffs' claims in each case is the same. *See, e.g., Adelson* Complaint, at 4-8.  The *Adelson* Complaint is attached to the Declaration of Donald David (the "David Decl.") submitted in support of this Reply as Exhibit 1.

[6] Though required to by the District of Columbia Local Rules, Plaintiffs' counsel did not list *Adelson* as a related case.  *See* LCvR 40.5(a)  (civil cases involving common issues of fact are related); 40.5(b) ("the plaintiff or his attorney shall indicate . . . the name, docket number and relationship of any related case pending in this Court or in any other United States Court").

[7] Attached to the David Decl. submitted in support of this Reply as Exhibit 2.

[8] Attached to the David Decl. submitted in support of this Reply as Exhibit 3.

("Contrary to Plaintiffs' assertion that *Doe I* is an 'entirely different case[],' . . . Those claims [in *Doe I*] are clearly more similar to Plaintiffs' claims here than to the claims in any of the cases that Plaintiffs cite, and the United States' actions before the court in *Doe I* are similar to those here—it moved to dismiss the claims against its officials because they raised political questions.").[9]

Aside from its clear statement in the related *Adelson* litigation, Executive Branch officials and members of Congress consistently express support for the Israeli government.[10] Simply put, the Government is in agreement with this Court's prior decisions: "[i]t is not the role of the courts to indirectly indict Israel for violating international law [and] resolving [this] suit [would] necessarily require us to look beyond the [defendants] in this case and toward the foreign policy interests and judgments of the United States government itself."  *Corrie v. Caterpillar, Inc.,* 503 F.3d 974, 984 (9th Cir. 2007).

Plaintiffs' other cases add nothing to their argument.  Regarding *Almog v. Arab Bank, PLC*, in that case the allegations focused on specific suicide bombings by a foreign designated terrorist organization, and, importantly, the defendants therein did not raise the political question doctrine until oral argument, which the court found to be untimely.  471

---

[9] On June 9, 2017, the Hon. Judge Tanya S. Chutkan issued an order in *Adelson* that vacated the oral argument scheduled for June 14, 2017, and stated that the "court's decision on [  ] Defendants' Motions to Dismiss will be forthcoming."

[10] *See, e.g.*, 19 U.S.C.A. § 4452 (West) ("United States-Israel trade and commercial enhancement") (Feb. 24, 2016) (stating that "Israel is America's dependable, democratic ally in the Middle East – an area of paramount strategic importance to the United States" and opposing as a matter of policy "politically motivated actions that penalize or otherwise limit commercial relations specifically with Israel, such as boycotts of, divestment from, or sanctions against Israel").

F. Supp. 2d 257, 295 n.45 (E.D.N.Y. 2007).  The court thus dismissed the argument with minimal analysis.  *Id.*

Regarding *Linde v. Arab Bank, PLC*, the *Linde* opinion to which Plaintiffs cite does not even refer to the political question doctrine.  384 F. Supp. 2d 571 (E.D.N.Y. 2005).  It would appear that Plaintiffs' counsel intended to cite to a related *Linde* opinion,[11] which itself cites to a different Judge Gershon case: *Lev v. Arab Bank, PLC,* No. 08–cv–3251, 2010 WL 623636 (E.D.N.Y. Jan. 29, 2010).  To the extent that Plaintiffs' counsel intended to cite to *Lev v. Arab Bank*, counsel has misquoted that decision in material fashion by substituting the generic "terrorist entities" for the court's phrasing - "Specially Designated Global Terrorist Entities like Hamas." *See* Opp. at 22; *Lev v. Arab Bank*, 2010 WL 623636, at *4.  Furthermore, and fundamentally, *Lev v. Arab Bank* is inapposite for the same reasons discussed above with reference to *Almog*, as both are based on the same underlying facts. *See Lev v. Arab Bank, PLC,* No. 08CV3251 (NG) (VVP), 2010 WL 623636, at *1 (E.D.N.Y. Jan. 29, 2010) ("This opinion assumes prior knowledge of related cases brought against Arab Bank in this court, the facts of which are essentially the same as those in the present case.").

Finally, *Whiteman v. Dorotheum GmbH & Co. KG*, involved claims for property expropriation, brought by Jewish descendants of victims of Nazi persecution, against Austria, certain of its instrumentalities, and other Austrian entities.  431 F.3d 57 (2d Cir. 2005).  That case is distinguishable, and in fact supports KFF's position.  Plaintiffs' multiple purported quotations of the "Second Circuit" in reference to that case are actually

---

[11] *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015).

passages from the dissenting opinion. *See Whiteman*, 431 F.3d at 76-77 (J. Straub, dissenting). In fact, the majority held claims against Austria must be dismissed as nonjusticiable under the political question doctrine. *Id.* at 70-73 (concluding that the court could not "undertak[e] independent resolution without expressing lack of the respect due" the Executive Branch, in light of its statement in support of dismissal) (*citing Baker v. Carr,* 369 U.S. 186, 211 (1962)).

Given the forgoing, it is clear that the Amended Complaint involves political questions reserved for the Executive Branch and must be dismissed.

### B.     The Act Of State Doctrine Also Bars This Action

The Act of State doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 336 (D.D.C. 2007). The Amended Complaint asks this Court to do just that – judge the activities of the IDF, which is directed by the Israeli government. Plaintiffs' argument that the Act of State doctrine does not apply rests, essentially, entirely on *Doe v. Exxon Mobil Corp.,* 69 F. Supp. 3d 75, 95 (D.D.C. 2014) ("*Exxon*").

In *Exxon* the court held that the Act of State doctrine did not apply because "[n]o [ ] sovereign public act" was at issue and because plaintiffs had not alleged "that Exxon's security forces, while admittedly soldiers in the Indonesian military, injured them pursuant to *official policies* of the GOI or orders from military commanders." *Exxon*, 69 F. Supp. 3d at 88 (emphasis supplied) Thus, the *Exxon* court found that the actions complained of therein were not demonstrably action taken by the sovereign in furtherance of its internal

policies.  The *Exxon* decision acknowledged that acts of state are "by nature distinctly sovereign, i.e., conduct that cannot be undertaken by a private individual or entity."  *Exxon,* 69 F. Supp. 3d at 88 (internal citations omitted).

Contrast that with Plaintiffs' theory of the instant case, *viz*. that the Israeli government and its employees and representatives are in league with various organizations (including KFF) to provide support to the IDF and promote settlement expansion.  *See, e.g.,* Am. Compl. at 8 ("Defendant Netanyahu and senior IMD [Israeli Ministry of Defense] officials have been violating Israel's criminal statutes by purposefully diverting government funds to illegal settlements.").  Clearly, then, this very argument distinguishes the instant case from *Exxon.*

The orchestration of such a scheme and the control of the IDF, as alleged, is *not* the product of a private individual or private entity, like Exxon.[11]  Rather, Plaintiffs' theory of the case is that the acts they complain of are state-sanctioned, government-directed conduct by the Israeli military, governmental officials and government ministries.  That very theory implicates the Act of State doctrine and provides an additional basis on which this action must be dismissed.[12]  *See, e.g W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,* 493 U.S. 400, 403-404 (1990).

---

[11] That this case falls squarely within the ambit of the Act of State doctrine is made clear by the list of Israeli Defendants in this case: Prime Minister Benjamin Nethanyu; officials from the Israeli Ministry of Defense; and the former Israeli Minister of Foreign Affairs.

[12] Again, *Doe I* is instructive.  Noting that "the core of the [Act of State] analysis [is] the potential for interference with the foreign relations of the United States," the court held, on allegations strikingly similar to those here, that "[t]he actions challenged by Plaintiffs are classic acts of state. "  *Doe I,* 400 F. Supp. at 113 (D.D.C. 2005).

**II.   THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT HAVE STANDING UNDER JASTA**

Plaintiffs have not addressed KFF's argument that JASTA precludes secondary liability under the civil liability provision of § 2333 of the ATA on the facts of this case. *See* KFF's Opening Brief, at 16-22.  Instead, Plaintiffs refer, *ad nauseum*, to a litany of *criminal* statutes that they assert, *ipse dixit*, KFF has either violated, or conspired to violate (e.g., § 2339A and § 2339C).  *See* Opp. Br., at 12-15.  Plaintiffs do not even attempt to explain how their allegations of a conspiracy to commit, or aid and abet, criminal violations supports ***civil*** liability under the ATA.[13]

Plaintiffs likely have not attempted to do because, post-JASTA, there is no secondary liability under the ATA on the facts of this case.  While JASTA amended "the Foreign Sovereign Immunities Act [ ] to . . . to permit ATA liability for aiding and abetting international terrorism," *Lelchook v. Islamic Republic of Iran,* 224 F. Supp. 3d 108, 113 (D. Mass. 2016), that jurisdictional grant is limited to assisting "***an organization that ha[s] been designated as a foreign terrorist organization*** . . . ."  JASTA § 4(a), *codified at* 18 U.S.C. § 2333(d)(2) (emphasis supplied).  Neither Israel nor the IDF is, or has been so designated.  As such, Plaintiffs cannot state a claim under the ATA based on secondary liability.

---

[13] Plaintiffs brief mentions the ATA's civil liability provision, § 2333, only once – and that in Plaintiffs' unavailing proximate cause argument.

**III.    THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS CANNOT SATISFY THE ATA'S PROXIMATE CAUSE REQUIREMENT**

Section 2333(a) requires that the Amended Complaint plausibly allege that Plaintiffs' injuries occurred "***by reason of***" KFF's donations to Israeli NGOs. This statutory standard requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *BCCI Holdings (Luxembourg), S.A. v. Khalil*, 214 F.3d 168, 173 (D.C. Cir. 2000) (1992) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).[14]

Plaintiffs' multi-step theory of causation does not meet that standard. Such an approach has been repeatedly rejected by the Supreme Court as requiring multiple inferences in connection with not only distinct actions (e.g., alleged money laundering in the U.S., on the one hand, and theft and violence in Israeli territories, on the other), but also "separate actions carried out by separate *parties*." *See Hemi Grp. v. City of New York*, 559 U.S. 1, 11 (2010) (emphasis in original).

Moreover, Plaintiffs' theory must be rejected as it relies on allegations of "foreseeability." *See, e.g.,* Opp. Br. at 36. Where, as here, a statute requires *direct* proximate causation, the Supreme Court has rejected a "foreseeability" theory of causation. *See Hemi Grp., LLC,* 559 U.S. at 12 ("Our precedents make clear that [where the statutory "by reason of" language is present] the focus is on the directness of the relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* never even mentioned the concept of foreseeability.").

---

[14] Plaintiffs fail to even once mention this "by reason of" language in their opposition brief, and make no attempt to discuss its implications in this case.

Plaintiffs argue that *Wultz v. Islamic Republic of Iran* supports their claim that proximate cause exists on the facts alleged. *See* Opp. Br., at 30-31, *citing Wultz*, 755 F. Supp. 2d 1 (D.D.C. 2010). However, *Wultz* is inapposite. In *Wultz*, the court held that proximate causation was plausibly alleged because the complaint "alleged a flow of money *directly* into the coffers of Palestinian Islamic Jihad (PIJ) – an organization entirely devoted to terrorist activity and, thus, an entity unlikely to use those funds for any other purpose." *Wultz*, 755 F. Supp.2d at 22 (citations omitted) (emphasis in original). The key, then, is that the link between action and harm was "direct." No such link exists here.

Similarly, Plaintiffs' attempt to distinguish *Rothstein* fails. The essential holding of Rothstein was that Plaintiffs had not sufficiently pled proximate cause because they did not and could not allege that the defendant bank, which had processed funds transfers to Iran, was a participant in the terrorist attacks that injured the plaintiffs, that the bank had provided money directly to a designated terrorist organization, or even that the bank's funds transfers were a but-for cause of the attacks. *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013). The *Rothstein* Court also refused to credit allegations that the defendant bank "knew full well" that funding to Iran would facilitate terrorist attacks, stating that those were "conclusory allegations that do not meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship[.]" *Id.* The Plaintiffs' Amended Complaint fails to adequately plead proximate cause for precisely the same reasons here.[15]

---

[15] Plaintiffs' brief states, without citation to its Amended Complaint, that "Defendant KFF, as clearly alleged in the Amended Complaint, directly provide[s] funding to belligerent settler and the Israeli Army[.]" *See* Opp. Br., at 36. But in the very next sentence Plaintiffs acknowledge that what Plaintiffs actually allege is that "KFF has provided funds to FIDF," which funds, the theory goes, are funneled through intermediaries to the IDF and then used by the IDF to promote the settlement expansion Plaintiffs claim has caused their harm. *Id.,* at 4, 30, 36 (alleging donations to the FIDF). But, as discussed above, that is *not* the "direct"

Put simply, the Supreme Court has clearly stated "[a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient" to satisfy the proximate cause requirement that exists in this case. *Hemi,* at 271, 274. Because Plaintiffs' theory of the case depends on multiple "remote" and "indirect" links, it must be rejected, as it does not meet the [ATA's] direct relationship requirement. *Hemi Grp,* 559 U.S. at 9-10.

## IV.   PLAINTIFFS' ALIEN TORT STATUTE CLAIM MUST BE DISMISSED AS LACKING SUFFICIENT CONTACT WITH THE UNITED STATES UNDER *KIOBEL*

The "Supreme Court expressly held that claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Balintulo v. Daimler AG*, 727 F.3d 174, 189 (2d Cir. 2013); *In re S. African Apartheid Litig.,* 56 F. Supp. 3d 331, 336 (S.D.N.Y. 2014*), aff'd sub nom. Balintulo v. Ford Motor Co.,* 796 F.3d 160 (2d Cir. 2015) (The Supreme Court's decision in *Kiobel II* drastically limits the viability of ATS claims based on conduct occurring abroad."). Plaintiffs largely ignore this history.

In fact, the only post-*Kiobel* cases that Plaintiffs cite in support of their argument that the allegations against KFF are sufficient to satisfy the *Kiobel* standard are *Doe v. Exxon Mobil Corp.* 69 F. Supp. 3d 75, 96 (D.D.C. 2014), and *In re South African Apartheid*. However, when analyzed, these cases do not support allowing the ATS claim to proceed in this case.

---

provision of funds that is required under *Rothstein* or Supreme Court precedent to avoid dismissal on proximate cause grounds.

First, Plaintiffs' counsel inadequately analyzes *Exxon*, implying that the *Exxon* Court denied the defendant's motion to dismiss the ATS claim on the basis that the allegations in that case were sufficient, post-*Kiobel,* to rebut the presumption against extra-territoriality.  *See* Opp. Br. at 28.  Rather, an accurate reading of the decision shows that the *Exxon* Court decided merely that plaintiffs' motion to amend their complaint so as to replead their ATS allegations, should be granted, in light of the Supreme Court's intervening decision in *Kiobel*.  *Doe v. Exxon Mobil Corp.,* 69 F. Supp. 3d 75, 97 (D.D.C. 2014).

In doing so, the court noted that the *Exxon* plaintiffs had alleged that:

[Exxon] officials based in the United States "made and implemented the decision" to "hire or otherwise retain additional security personnel for [Exxon's] Aceh facilities." *Id.* ¶ 33. Plaintiffs make a number of other allegations regarding the support provided by Exxon to their security personnel. *See id.* ¶ 54 (alleging Exxon provided material support to its security personnel by, for example, constructing facilities, providing funding for weapons, providing supplies and equipment, and paying for the services of consultants in training and equipping the personnel). Plaintiffs do not, however, state *where* this support was planned or authorized or if any of the material or monetary support came from the United States.

*Exxon,* 69 F. Supp. 3d at 96

This set of allegations made by the plaintiffs in *Exxon* is nearly identical to those rejected as a sufficient basis for ATS liability by the Eleventh Circuit *Doe v. Drummond Co.*. 782 F.3d 576 (11th Cir. 2015). As described in KFF's Opening Brief, the Eleventh Circuit rejected those allegations, analytically identical to those in *Exxon*, as a basis for ATS liability.  *See* KFF Op. Br. at 30-31.  The *Drummond* Court held that:

[W]here a Complaint alleges activity in both foreign and domestic spheres, an extraterritorial application of a statute arises *only* if the event on which the statute *focuses* did not occur abroad. Of course, the ATS *focuses* on the

torts of extrajudicial killings and war crimes (violations of the law of nations), and in the *Balcero* case, the tort at issue occurred abroad, in Colombia, and *not* in the United States.

*Id.* (emphasis in original).

Here, Plaintiffs do not attempt to refute the *Drummond* reasoning. Indeed, Plaintiffs' brief does not even mention *Drummond,* perhaps because their ATS claim does not meet the requisites of the *Drummond* decision.

Finally, Plaintiffs' reliance on *In re South African Apartheid* is simply inexplicable. *See* Opp. Br. at 26.  If anything, that case support KFF's argument.

In *In re South African Apartheid*, Judge Scheindlin dismissed plaintiffs' ATS claim, holding that even where a parent corporation exercised control over subsidiary corporations in apartheid South Africa, there was no viable ATS claim against either parent or subsidiary under *Kiobel* "because all of the subsidiaries' conduct undisputedly occurred abroad."  *In re S. African Apartheid Litig.,* 56 F. Supp. at 338.  The Second Circuit affirmed Judge Scheindlin's opinion.  *See Balintulo v. Ford Motor Co.,* 796 F.3d at 169 (defendants' affirmative steps in this country are insufficient to "tie[ ] the relevant human rights violations to actions taken within the United States.").

Likewise, all of the primary, allegedly tortious conduct in the instant case occurred abroad, and the same result should follow: Plaintiffs' ATS claim should be dismissed.[16]

---

[16] The United States Government agrees that federal courts do not have jurisdiction to hear ATS claims on similar allegations.  *See Adelson,* Gov. Br., at 19-24 (David Decl., Ex. 2).

## V.  THE ATA CLAIM MUST BE DISMISSED BECAUSE AN ATA CLAIM PREDICATED UPON "ACTS OF WAR" IS BARRED BY SECTION 2336(a)

Section 2336(a) of the ATA provides that "[n]o action shall be maintained under section 2333 of this title for injury or loss by reason of an act of war."  Section 2331(4), in turn, defines "act of war" as "any act occurring in the course of—(A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin."

Plaintiffs, relying on *Sokolow v. PLO,* argue that the "act of war" exception does not apply here, attempting to analogize their claims to discrete terrorist attacks in Jerusalem committed by the PLO and the Palestinian Authority.  583 F.Supp. 2d 451, 458 (S.D.N.Y. 2008).  *Sokolow* is neither binding on this court nor is it analogous to the instant case.  In *Sokolow,* the court held the Acts of War exception inapplicable because

> Six of the seven subject attacks occurred in Jerusalem.  There has been no showing that the situs of the attacks were in any combat or militarized zone, or were otherwise targeted at military or governmental personnel or interests.

*Sokolow,* 583 F. Supp. 2d at 459 (the attacks were carried out in a cafeteria on a college campus and a passenger bus, and that the use of bombs indicated an intent to harm "the masses").

This is markedly different from the instant case, which at its core involves allegations that Israel essentially created a "militarized zone" with its policy of settlement expansion, rather than involving discrete attacks as was the case in *Sokolow* and *Biton.* While the current conflict over the allegedly "occupied" territories may not be so

temporally limited (at present) as, for example, Israel's war with Lebanon, the conflict still qualifies as a military conflict under the statutory definition. *See* KFF's Op. Br., at 27.

For that reason, applying the "acts of war" exception to the Anti-Terrorism Act would best comport with nature of the long-standing conflict over the disputed territories.[17]

## VI.   THIS CASE MUST BE DISMISSED AS AGAINST KFF BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER KFF

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.  For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (internal quotation marks and citations omitted).  To meet the applicable standard, Plaintiffs must allege "specific facts" on which personal jurisdiction can be based; they cannot rely on conclusory allegations. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

Plaintiffs have failed to establish that this Court has personal jurisdiction over KFF. In support of their position, Plaintiffs argue that this Court has personal jurisdiction over KFF based on allegations that KFF

1.  "solicit[s] funds in this metropolitan area and all over America" (Am. Compl., ¶ 22(ii));

2.  "sent $315,000 to the Israeli army [via Friends of The Israeli Army] between 2011 and 2013 in order to take illegal tax write-offs on IRS income tax forms (the 1040 and the 990) filed with the IRS based in the District of Columbia"

---

[17] The very fact that Plaintiffs ask this Court to decide whether actions taken in connection with settlement activities would fall within the ambit of a statute directed towards "terrorism" or whether the actions complained of qualify as "acts of war" is yet another indication that this case should be dismissed pursuant to the political question doctrine.

3. "file[s] annual 990 forms with the Treasury Department";

4. "work with AIPAC officials who are located in this jurisdiction to, *inter alia*, preserve the practice of taking illegal tax deductions";

*See* Pl. Opp. Br., at 41 (internal citations and quotations omitted).

However, taken at face value, these allegations are insufficient to provide personal jurisdiction.

First, personal jurisdiction cannot be predicated on "exercises in petitioning the government" or "attempts to influence government action." *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 786-87 (D.C.Cir.1983) *cert. denied,* 467 U.S. 1210 (1984) (discussing the "government contacts" exception to personal jurisdiction). As such, the Court of Appeals in this District has held that "the type of contacts appellant has alleged (lobbying the federal government) fall within the 'government contacts' exception to the exercise of personal jurisdiction under the District's long-arm statute." *Hayhurst v. Calabrese,* 988 F.2d 1280 (D.C. Cir. 1993); *see also Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C. Cir. 1983) (excluding lobbying efforts pursuant to government contacts exception as sufficient basis for personal jurisdiction); *Bechtel & Cole v. Graceland Broadcasting,* 1994 U.S.App. LEXIS 4468, at *3 (D.C.Cir. Mar. 9, 1994); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 51 (2d Cir. 1991).

Nor can personal jurisdiction be based on filings with a federal agency. *See, e.g., Inv. Co. Inst. v. United States,* 550 F. Supp. 1213, 1217 (D.D.C. 1982) (filings with SEC excluded from consideration as basis for contacts with District of Columbia for purposes

of establishing personal jurisdiction, as "those activities are prerequisites to defendants' engaging in the securities business anywhere in the country").

Because Plaintiffs' jurisdictional allegations fall within the 'government contacts' exception to personal jurisdiction, the Amended Complaint must be dismissed as to KFF for lack of personal jurisdiction.

## VII. MULTIPLE PLAINTIFFS MUST BE DISMISSED FROM THE CASE BECAUSE THEY LACK ARTICLE III STANDING

The Amended Complaint fails to meet the standards for Article III Standing for those Plaintiffs listed in KFF's Opening Brief.  Non-specific collective allegations, like those made in the Amended Complaint, do not suffice to provide Article III standing; rather, "each [Plaintiff must] assert a distinct, individual injury." *Akins v. Fed. Election Comm'n,* 101 F.3d 731, 737 (D.C. Cir. 1996), *vacated on other grounds*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

Plaintiffs' cases do not support a contrary conclusion.  First, Plaintiffs' use of brackets in connection with citation to *Atkins* is of a piece with the rest of their briefing: misleading, and wrong.  The full quote is to an analogy: "a government contractor, allegedly wrongfully deprived of information to be made available at the time bids are due, would suffer a particularized injury even if all other bidders also suffered an injury." *Atkins v. Fed. Election Comm'n,* 101 F.3d 731, 737 (D.C. Cir. 1996), *vacated,* 524 U.S. 11 (1998). Thus, in *Atkins* the court was analogizing to a situation where the same facts suffice to create the same particularized injury for all bidders, a pattern clearly distinguishable from the instant case.

Even more perplexing is Plaintiffs' citation to *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d 1279, 1292 (D.C. Cir. 2007).  That case involved a challenge to a NHTSA regulation that the plaintiffs claimed increased the risk of harm in auto accidents.  The District of Columbia Court of Appeals, before dismissing the case for lack of standing, noted that:

> Injuries from car accidents are particularized—each person who is in an accident is harmed personally and distinctly. The Supreme Court has made clear, moreover, that the fact that a number of people could be similarly injured does not render the claim an impermissible generalized grievance.

*Pub. Citizen, Inc,* 489 F.3d at 1292 (D.C. Cir. 2007).

Thus, *Pub. Citizen* merely supports the proposition that where there is a mass tort based on the same event or cause (e.g., a bus bombing, or a product defect, or a car accident), the same set of allegations *could* support standing for multiple plaintiffs.  That proposition, however, in no way supports Article III standing on the facts of this case.

## CONCLUSION

For all of the foregoing reasons, defendant Kushner Family Foundation respectfully requests that this Court dismiss the Amended Complaint as against KFF in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and grant KFF such other and further relief as this Court deems just and proper.

New York, New York
Dated: August 24, 2017

Respectfully submitted,

*/s/ Donald N. David*
Donald N. David
Joshua D. Bernstein (*pro hac vice*)
Phillip Spinella (*pro hac vice*)
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY, 10103
Tel.: (212) 880-3856
Fax: (212) 905-6410
Email: donald.david@akerman.com
D.C. Bar Number 514870

*Counsel for Defendant Kushner*
*Family Foundation*

## CERTIFICATE OF SERVICE

I HEREBY certify that on August 24, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

*/s/ Donald N. David*
Donald N. David