# Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM AL-TAMIMI, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>SHELDON ADELSON, et al.,<br><br>  and<br><br>UNITED STATES OF AMERICA,<br><br>   Defendants. | No. 1:16-cv-00445-TSC |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS I THROUGH III OF PLAINTIFFS' AMENDED COMPLAINT**

In its motion to dismiss, the United States demonstrated that sovereign immunity bars Plaintiffs' Federal Tort Claims Act (FTCA) counts against it under three explicit provisions of the FTCA. The United States also showed that Plaintiffs' amended complaint urges this Court to weigh in on issues that implicate all six *Baker* factors, and that therefore the political question doctrine precludes those claims. Lastly, the United States explained that the statutes Plaintiffs invoke do not provide jurisdiction for their claims against the United States. In their opposition, Plaintiffs fail sufficiently to address any of this. Instead, they make conclusory, unsupported assertions and cite to inapposite, readily distinguishable, and outdated case law. This Court should grant the United States' motion.

**I.     Explicit Provisions of the FTCA Bar Plaintiffs' Claims Against the United States.**

The United States substituted itself under the Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified as amended in relevant part at 28 U.S.C. § 2679), as the defendant for Mr. Elliott Abrams because the operative allegations of Plaintiffs' complaint related to

actions he allegedly undertook while working at the White House for eight years, between 2001 and 2009, as a member of the National Security Council—first as Senior Director for Near East and North African Affairs, and then as Deputy National Security Advisory handling Middle East affairs. *See* Doc. 104, United States' Mot. to Dismiss, at 2; Doc. 103, United States' Notice of Sub., at 1-2. Plaintiffs' repeated assertion that Mr. Abrams worked at the White House for only four years, *see* Doc. 112, Pls.' Opp'n, at 5; Doc. 64, Pls.' Mot. to Disqualify Counsel, at 19, is simply mistaken, as has already been noted in this litigation. *See* Doc. 72, Def. Abrams's Opp'n to Pls.' Mot. to Disqualify Counsel, at 4.

Regardless, Plaintiffs appear to concede that the Westfall Act covers Mr. Abrams's alleged actions during those eight years: "It is undisputed that Defendant Abrams worked in the White House under President Bush, and because he was a Federal employee at the time, the Westfall Act would have applicability to the activity he engaged in during those four [*sic*] years." Doc. 112, Pls.' Opp'n, at 6. They cannot credibly argue otherwise.

Under the Westfall Act, substitution of the United States as defendant is appropriate for claims based on alleged acts or omissions taken within the scope of a federal employee's employment. *See* 28 U.S.C. § 2679(b)(1). For events occurring abroad that involve a White House official, the District of Columbia provides the law for determining whether the official was acting within the scope of his or her employment. *Cf. Kashin v. Kent*, 457 F.3d 1033, 1037-38 (9th Cir. 2006) (applying District of Columbia law to determine whether State Department employee acted within scope of employment while driving in Russia). Given that jurisdiction's expansive view of the scope of employment, there is no question that Mr. Abrams was acting within scope when he allegedly met with senior officials of the Israeli government to discuss United States policy in the Middle East and allegedly took other actions regarding that policy.

2

*See, e.g.*, *Harbury v. Hayden*, 522 F.3d 413, 422 (D.C. Cir. 2008); *Lyon v. Carey*, 533 F.2d 649, 655 (D.C. Cir. 1976); *Bancoult v. McNamara*, 370 F. Supp. 2d 1, 8-9 (D.D.C. 2004); *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 265 (D.D.C. 2004); *Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. 1986); *Howard Univ. v. Best*, 484 A.2d 958, 987 (D.C. 1984). Thus, to the extent Plaintiffs attempt to argue that Mr. Abrams acted outside the scope of his employment while at the White House, *see* Doc. 112, Pls.' Opp'n, at 7, their argument, which is based on nothing more than a blanket, conclusory assertion, must fail. Accordingly, the United States is the proper defendant for the operative allegations against Mr. Abrams.

The United States also demonstrated that three explicit provisions of the FTCA bar Plaintiffs' claims: (1) the requirement to exhaust administrative remedies, 28 U.S.C. § 2675(a); (2) the foreign-country exception, 28 U.S.C. § 2680(k); and (3) the discretionary-function exception, 28 U.S.C. § 2680(a). *See* Doc. 104, United States' Mot. to Dismiss, at 4-11. Plaintiffs offer no response to the United States' showing regarding the first two provisions. *See generally* Doc. 112, Pls.' Opp'n. They therefore effectively concede that those provisions apply. *See Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011) ("An argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded." (quoting *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) (internal alterations omitted))).[1]

And Plaintiffs' one-line statement opposing the United States' showing that the discretionary-function exception applies, *see* Doc. 112, Pls.' Opp'n, at 7, is wholly inadequate to rebut that showing. First, Plaintiffs did not accuse Mr. Abrams of "classic money laundering," *id.*, in their amended complaint. They alleged he was a "Settlement and IDF Advocate/

---

[1] Nor do Plaintiffs offer a response to the United States' showing that it has not waived sovereign immunity for claims based on alleged violations of customary international law, *see* Doc. 104, United States' Mot. to Dismiss, at 5-8, another point Plaintiffs effectively concede.

3

Promoter," and even separated him from other defendants who were alleged to have donated to certain causes related to purported events occurring abroad. *Compare* Am. Compl. ¶ 41 *with id.* ¶¶ 31-40, 42-54. Second, unsupported, conclusory allegations of criminal activity or the encouragement of such activity on the part of a federal employee cannot, under basic pleading standards, rebut a showing that the actual factual allegations fall within the discretionary-function exception. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Third, and most notably, Plaintiffs make no effort whatsoever to address—let alone grapple with—the substantial and relevant case law the United States cited in its motion to dismiss that demonstrates that Mr. Abrams's alleged actions regarding United States policy in the Middle East are precisely the sort of activity that the discretionary-function exception covers. *See* Doc. 104, United States' Mot. to Dismiss, at 11 (citing cases from the First, Ninth, and D.C. Circuits). Accordingly, Plaintiffs' FTCA claims against the United States must be dismissed.

      Plaintiffs' references to other allegations in their amended complaint regarding Mr. Abrams's alleged actions before and after his eight years at the White House are of no moment. As the United States explained in its motion to dismiss, (and as any reasonable construction of the amended complaint supports), it views those allegations as offering context to Mr. Abrams's alleged motivations while acting as Deputy National Security Advisor, not as the operative allegations of customary international law violations with respect to Mr. Abrams's conduct. *See* Doc. 104, United States' Mot. to Dismiss, at 22 n.8. The Attorney General's designee's certification "is conclusive unless challenged." *Gutierrez de Martinez v. Drug Enf't Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997). Plaintiffs' recitation of conclusory allegations that, in any event, do not state a plausible claim of Mr. Abrams's purported involvement in some ill-defined financial conspiracy, fails to rebut that conclusion. Moreover, Plaintiffs offer no response to the

4

United States' showing that much of Mr. Abrams's alleged actions are core First Amendment-protected activities because they involve debate on public issues. *See* Doc. 104, United States' Mot. to Dismiss, at 22-23. Indeed, one of the cases Plaintiffs cite in their opposition relating to another issue indicates that where First Amendment protections apply, they would apply to limit claims for alleged violations of customary international law. *See Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 328 (D. Mass. 2013) (noting in case involving ATS claims that "Defendant is correct that the First Amendment places limits on the imposition of tort liability linked to offensive speech, and that the protection of free expression, including the protection of 'thought we hate,' is a centerpiece of our democracy." (citing and quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011))).

Furthermore, Plaintiffs' conclusory assertion in their opposition that Mr. Abrams is a "donor" who financed money laundering, Doc. 112, Pls.' Opp'n, at 7-8, is contrary to the allegations in their amended complaint, which, as explained above, paint Mr. Abrams as a "Settlement and IDF Advocate/Promoter," not as a donor to Israeli settlement causes. In any event, given that this Court has ordered briefing on subject-matter jurisdiction only, *see* Doc. 97, Dec. 15, 2016 Order, at 1, and given the United States' other dispositive jurisdictional arguments explained below, there is no need at this juncture to determine whether Plaintiffs' allegations regarding Mr. Abrams's supposed involvement in a conspiracy to finance Israeli settlements are operative and, even if so, whether they are sufficient to state a claim.[2]

---

[2] In this vein, Plaintiffs' assertion that the United States effectively concedes that the ATS "has application to the claims detailed in this complaint" is incorrect. Doc. 112, Pls.' Opp'n, at 8. Because the Court has ordered briefing on subject matter jurisdiction only, *see* Doc. 97, Dec. 15, 2016 Order, at 1, the United States has not briefed whether the allegations against Mr. Abrams in the complaint state a cause of action under the ATS, which the United States views as an argument to make under Federal Rule of Civil Procedure 12(b)(6).

5

## II. Plaintiffs' Claims Raise Political Questions.

As the United States demonstrated in its motion to dismiss, Plaintiffs' amended complaint raises issues that implicate all six of the factors the Supreme Court enumerated in *Baker v. Carr*, 369 U.S. 186 (1962). *See* Doc. 104, United States' Mot. to Dismiss, at 12-19. The United States also noted that Plaintiffs' claims were similar to those in *Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005), in which another judge of this Court held that the claims raised political questions. *See id.* at 111-12; Doc, 104, United States' Mot. to Dismiss, at 13-14.

Plaintiffs' response cites inapposite and distinguishable case law. Namely, Plaintiffs rely on cases either that were brought under a federal statute specifically enacted to provide a remedy for acts of international terrorism, that did not challenge the alleged actions of the United States government with respect to foreign nations, or that did not involve a statement by the United States regarding whether the case raises non-justiciable political questions. Plaintiffs primarily rely on a string of cases in which district courts found to be justiciable claims brought under the Antiterrorism Act of 1991, 18 U.S.C. § 2333 (ATA), a federal statute enacted specifically to provide civil remedies for acts of international terrorism against United States citizens. *See Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451, 456 (S.D.N.Y. 2008) (finding justiciable claims brought under the ATA); *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 161-62 (D.D.C. 2006) (same); *Gilmore v. The Palestinian Interim Self-Gov't Auth.*, 422 F. Supp. 2d 96, 99-100 (D.D.C. 2006) (same); *Biton v. The Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1, 6 (D.D.C. 2005) (same); *Estates of Ungar v. Palestinian Auth.*, 315 F. Supp. 2d 165, 174 (D.R.I. 2004) (same). *Cf. Klingoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2d Cir. 1991) (finding justiciable claims brought under the Antiterrorism Act of 1987, 22 U.S.C. §§ 5201-03).

The courts in those cases stated clearly that the jurisdiction Congress provided and that the Executive endorsed through the ATA was a critical factor in finding the plaintiffs' claims justiciable. *See, e.g.*, *Gilmore*, 422 F. Supp. 2d at 99 ("Enactment of the ATA makes it clear that both Congress and the Executive have 'expressly endorsed the concept of suing terrorist organizations in federal court,' and therefore this Court need not delve into an in-depth political question analysis here." (quoting *Klingoffer*, 937 F.2d at 49)); *Biton*, 412 F. Supp. 2d at 6 ("This is a tort suit brought under a legislative scheme that Congress enacted for the express purpose of providing a legal remedy of injuries or death occasioned by acts of international terrorism." (quoting *Ungar v. Palestine Liberation Org.*, 402 F.3d 274, 280 (1st Cir. 2005))). Indeed, the ATA, passed in 1991, specifically provides jurisdiction for civil claims by United States citizens "injured . . . by reason of an act of international terrorism." 18 U.S.C. § 2333; *see also id.* § 2331 (defining "international terrorism").

But here, Plaintiffs are bringing their claims under the Alien Tort Statute (ATS)—not the ATA. That statute was passed by Congress in 1789, largely lay dormant until the late-20th century, and provides jurisdiction for only clearly defined, universally accepted violations of customary international law. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 712, 732 (2004). It is by no means imbued with the specificity of purpose and scope, as announced by Congress and endorsed by the Executive, through which courts exercised jurisdiction in the ATA cases discussed above. *See id.* at 712 ("Judge Friendly called the ATS a 'legal Lohengrin . . . no one seems to know whence it came.'" (internal citation omitted)). Accordingly, the ATA line of cases mentioned above is inapposite.[3]

---

[3] Although Plaintiffs refer in their amended complaint to the portion of the ATA regarding criminal liability, *see* Am. Compl. ¶¶ 198, 200, they make clear that their civil claims against the United States are under the ATS, not the ATA. *See, e.g.*, Doc. 112, Pls.' Opp'n, at 16 ("Plaintiffs

7

Moreover, the cases cited above simply did not involve challenges to the alleged foreign policy of the United States government. *See, e.g.*, *Biton*, 412 F. Supp. 2d at 2 (ATA claims against the Palestinian Authority). In contrast, here, with respect to Plaintiffs' claims against Mr. Abrams, they directly challenge the alleged actions of a former Deputy National Security Advisor and his interactions with high-level Israeli officials regarding United States policy in the Middle East in the course of his role as a White House official. *See* Am. Compl. ¶¶ 41, 221, 223.

Lastly, in none of the cases on which Plaintiffs rely did the United States submit a statement urging the respective court to dismiss the claims on political question grounds. Not so here. The United States has moved this Court to dismiss Plaintiffs' claims on those very grounds. Although such a statement by the Executive Branch is not dispositive *per se*—the Judiciary determines its own jurisdiction—such a statement is a relevant factor in the Judiciary's analysis. *See Sosa*, 542 U.S. at 733 n.21 (noting that in cases where the Government has expressed foreign policy concerns regarding the litigation, "there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy" (citation omitted)); *see also Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 72 n.17 (2d Cir. 2005) ("In applying this fourth *Baker* test, courts have been particularly attentive to the views of the United States Government about the consequences of proceeding with litigation." (citing *Kadic v. Karadzic*, 70 F.3d 232, 250 (2d Cir. 1995))). Although other United States officials have made general statements about Israeli settlements, *see* Doc. 111, Pls.' Opp'n, at 8,

---

claim jurisdiction here under the Alien Tort Claims Act, 28 U.S.C. § 1350."). Additionally, the Torture Victim Protection Act, which Plaintiffs also cite in their complaint as a basis for jurisdiction, *see* Am. Compl. ¶¶ 1-3, provides jurisdiction only for claims against individuals acting under the authority or color of law of a foreign nation. *See Saleh v. Titan Corp.*, 580 F.3d 1, 13 n.9 (D.C. Cir. 2009). Thus, that statute does not affect the United States' showing here.

the United States' statement in *this litigation* is what is relevant to the jurisdictional inquiry here. In sum, the *Biton* line of cases is inapposite.

Similarly, the *Arab Bank* line of cases on which Plaintiffs rely, *see* Doc. 112, Pls.' Opp'n at 14-15, is readily distinguishable from this case. The plaintiffs in *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005), brought their claims under the ATA and under state common law. *See id.* at 575. Defendants apparently did not raise a political question argument in that case, as the *Linde* opinion makes no reference to the political question doctrine. In *Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007), which involved claims under both the ATA and the ATS, defendants raised the political question doctrine for the first time at oral argument, which the court found to be untimely. *See id.* at 295 n.45. The court dismissed the argument with minimal analysis. *Id.*

And in *Lev v. Arab Bank, PLC*, No. 08-cv-3251, 2010 WL 623636 (E.D.N.Y. Jan. 29, 2010), which involved claims brought under the ATS, the court found the plaintiffs' claims justiciable mainly because those claims did not involve the factors mentioned above. Specifically, the court highlighted that "no action by a coordinate branch of the United States government" was involved—a point that, oddly, Plaintiffs include in their opposition, *see* Doc. 112, Pls.' Opp'n, at 15—and that "the United States government ha[d] chosen not to submit a statement of interest" in the case. *Lev*, 2010 WL 623636 at *4.[4] Here, both of the above factors are clearly present. With respect to the conduct for which the United States has substituted itself, Plaintiffs challenge the action by a coordinate branch of the United States government—the alleged actions of a Deputy National Security Advisor. And the United States has moved this

---

[4] Although Plaintiffs do not cite *Lev v. Arab Bank* in their opposition papers, they quote from that opinion. *See* Doc. 112, Pls.' Opp'n, at 15 (quoting without attribution *Lev*, 2010 WL 623636, at *4).

9

Court to dismiss Plaintiffs' claims against it on political question grounds. Accordingly, the *Arab Bank* cases are of no moment.

Rather, as the United States explained in its opening motion, Plaintiffs' claims are strikingly similar to those in *Doe I*, where the court held the political question doctrine barred the claims. Contrary to Plaintiffs' assertion that *Doe I* is an "entirely different case[]," Doc. 112, Pls.' Opp'n, at 14, in *Doe I*, the plaintiffs sued United States officials under the ATS and other federal statutes for their financial support of the Israeli government. *See Doe I*, No. 1:02-cv-1431, Slip. Op. at 1-3, ECF No. 42 (D.D.C. Oct. 3, 2003). Those claims are clearly more similar to Plaintiffs' claims here than to the claims in any of the cases that Plaintiffs cite, and the United States' actions before the court in *Doe I* are similar to those here—it moved to dismiss the claims against its officials because they raised political questions. *See id.* at 3, 9-14. In sum, the cases Plaintiffs cite were brought under a statute specifically designed for the sorts of claims in those cases, did not challenge United States foreign policy, and did not involve a statement by the United States on the foreign affairs repercussions of adjudicating those cases. Here, Plaintiffs' claims against the United States for the alleged actions of a former Deputy National Security Advisor raise non-justiciable political questions. This Court should dismiss those claims.[5]

### III. The TVPA and the ATS Do Not Provide Jurisdiction for Plaintiffs' Claims Against the United States.

Lastly, Plaintiffs have failed to rebut the United States' showing that neither of the statutes Plaintiffs invoke provides jurisdiction for their claims against the United States. Plaintiffs fail to address at all the United States' showing regarding the Torture Victim

---

[5] Plaintiffs' arguments in their opposition to the United States' motion about the inapplicability of the Act of State doctrine are misplaced. *See* Doc, 112, Pls.' Opp'n, at 17. The United States did not raise an argument under the Act of State doctrine in its motion. *See generally* Doc. 104, United States' Mot. to Dismiss.

10

Protection Act, *see* Doc. 104, United States' Mot. to Dismiss, at 19. They therefore have conceded that point. *See Kone*, 808 F. Supp. 2d at 83.

And their efforts to grapple with the United States' showing regarding the ATS and its extraterritorial scope as to the alleged actions of the United States through Mr. Abrams are insufficient. In response to that showing, Plaintiffs cite outdated or irrelevant case law. For example, Plaintiffs' heavy reliance on *In re South African Apartheid Litigation*, 617 F. Supp. 2d 228 (S.D.N.Y. 2009), a case involving ATS claims for events in South Africa, is of no moment. *See* Doc. 112, Pls.' Opp'n, at 16, 18-20. That case preceded *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013). Indeed, *In re South African* rejected the defendants' extraterritoriality argument in large part because of "the inapplicability of the presumption against extraterritorial application of statutes" to the plaintiffs' ATS claims. *In re South African*, 617 F. Supp. 2d at 247. That portion of the opinion is no longer good law. *See Kiobel*, 133 S. Ct. at 1669. And that is the portion that Plaintiffs effectively rely on when they refer to *In re South African*. Similarly, the discussion in *Trajano v. Marcos*, 978 F.2d 493 (9th Cir. 1992), regarding extraterritoriality on which Plaintiffs rely, *see* Doc. 112, Pls.' Opp'n, at 18, preceded *Kiobel*.

Moreover, both *Marcos* and *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980), involved claims against former foreign officials who had committed torture and were enjoying safe haven in the United States. *See Marcos*, 978 F.2d at 496; *Filártiga*, 630 F.2d at 878. Those officials had "become . . . an enemy of all mankind." *Sosa*, 542 U.S. at 732 (quoting *Filártiga*, 630 F.2d at 890). Those cases are readily distinguishable from this one. Plaintiffs make no suggestion, let alone a plausible one, that the United States official whose alleged actions underlie their claims against the United States committed torture.

11

Furthermore, Plaintiffs' reliance on *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016), is misplaced. *See* Doc. 112, Pls.' Opp'n, at 19. That case supports the United States' position—not that of Plaintiffs. In *Simon*, Holocaust survivors from Hungary brought claims under the ATS and under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1604-05 (FSIA), against the Hungarian government and Hungarian companies for events of the Holocaust. *See Simon v. Republic of Hungary*, 37 F. Supp. 3d 381, 386 (D.D.C. 2014), *rev'd in part*, 812 F.3d 127. The district court dismissed plaintiffs' ATS claims under *Kiobel* because they did not "touch and concern" the United States with sufficient force to rebut the presumption against extraterritoriality. *See Simon*, 37 F. Supp. 3d at 442-43. The *Simon* plaintiffs did not appeal that ruling. *See* 812 F.3d 127. Accordingly, *Simon* supports the United States' showing that under *Kiobel*, Plaintiffs' claims against it must be dismissed.

Lastly, and contrary to Plaintiffs' suggestion, *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75 (D.D.C. 2014), did not decide whether the plaintiffs' allegations overcame the presumption against extraterritoriality that applies to claims brought under the ATS. Instead, that court granted plaintiffs leave to amend their complaint in light of *Kiobel*. *See id.* at 97 ("For this reason, the Court is of the view that plaintiffs should have the opportunity to file for leave to amend their complaint in light of the intervening change in the law created by *Kiobel*."). Based on a review of the docket in *Doe*, it appears that the plaintiffs did not file an amended complaint within the time prescribed by the court. *See id.* at 106; *id.*, No. 1:07-cv-1022, ECF Nos. 83-87. Accordingly, that lone district court case does not conclusively address the question of whether the claims there "touched and concerned" the United States with sufficient force to rebut the presumption against extraterritoriality. In sum, none of the cases Plaintiffs cite rebuts the United

12

States' showing that neither the TVPA nor the ATS provides jurisdiction for Plaintiffs' claims against it. This Court should dismiss those claims.

## CONCLUSION

The United States demonstrated in its opening motion that sovereign immunity bars Plaintiffs' claims against it, as does the political question doctrine, and that neither the TVPA nor the ATS provides jurisdiction for their claims against the United States. Plaintiffs have offered either an inadequate and misplaced response, or no response at all. This Court should grant the United States' motion. It should dismiss the Plaintiffs' claims against the United States and, as mentioned in its motion, allow the political branches of government to continue to address the ongoing Israeli-Palestinian conflict.

Dated: March 10, 2017	Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

JOSHUA I. WILKENFELD
Senior Counsel
Office of the Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

　　/s/  *Paul E. Werner*　　
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for the United States