## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKO PELED, *et al.*,<br><br>        Plaintiffs,<br><br>-against-<br><br>BENJAMIN NETANYAHU, *et al.*,<br><br>        Defendants. | Docket No: 1:17-cv-00260 (RBW)<br><br>Hon. Reggie B. Walton<br><br>**[Oral Argument Requested]** |

## REPLY MEMORANDUM OF LAW OF DEFENDANT KUSHNER FAMILY FOUNDATION IN FURTHER SUPPORT OF DEFENDANT KUSHNER FAMILY FOUNDATION'S AMENDED MOTION TO DISMISS THE AMENDED COMPLAINT

**AKERMAN LLP**
Donald David
Joshua Bernstein
*Attorneys for Defendant*
*Kushner Family Foundation*

666 Fifth Avenue, 20th Floor
New York, New York 10103
(212) 880-3800

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ...................................................................................................... 3

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION
        BECAUSE PLAINTIFFS' CLAIMS ARE NON-JUSTICIABLE
        PURSUANT TO THE  ACT OF STATE DOCTRINE......................................... 3

        A.  The Act Of State Doctrine Bars This Action .................................... 3

        B.       The Political Question Doctrine Also Bars This Action…………………..5

II.     THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS
        DO NOT HAVE STANDING UNDER JASTA ..................................... 7

III.    THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS
        CANNOT SATISFY THE ATA'S PROXIMATE CAUSE
        REQUIREMENT .................................................................................... 8

IV.     PLAINTIFFS' ALIEN TORT STATUTE CLAIM MUST BE
        DISMISSED ......................................................................................... 10

        A.  Plaintiffs' ATS Claims Lack Sufficient  Contact With The United
            States Under *Kiobel* ....................................................................... 10

        B.  The United States Supreme Court's Decision In *Jesner* Forecloses
            Plaintiffs' Attempt To Impose  Corporate Liability On KFF Under The
            ATS ................................................................................................. 13

V.      THE ATA CLAIM MUST BE DISMISSED BECAUSE AN ATA
        CLAIM  PREDICATED UPON "ACTS OF WAR" IS BARRED BY
        SECTION 2336(a) ................................................................................ 14

VI.     THIS CASE MUST BE DISMISSED AS AGAINST KFF BECAUSE
        THIS COURT LACKS PERSONAL JURISDICTION OVER KFF .................. 16

VII.    MULTIPLE PLAINTIFFS MUST BE DISMISSED FROM THE CASE
        BECAUSE THEY LACK ARTICLE III STANDING ....................................... 18

CONCLUSION .................................................................................................. 19

CERTIFICATE OF SERVICE ........................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akins v. Fed. Election Comm'n,*
   101 F.3d 731 (D.C. Cir. 1996), *vacated on other grounds*, *Fed.
   Election Comm'n v. Akins*, 524 U.S. 11 (1998) ............................................................18

*Al-Tamimi v. Adelson,*
   9 F.3d 1 (D.C. Cir. 2019) ...............................................................................5, 6, 7, 13

*Atlantigas Corp. v. Nisource, Inc.,*
   290 F. Supp. 2d 34 (D.D.C. 2003) ..............................................................................16

*Balintulo v. Daimler AG,*
   727 F.3d 174 (2d Cir. 2013)........................................................................................10

*Balintulo v. Ford Motor Co.,*
   796 F.3d at 169 ...........................................................................................................12

*BCCI Holdings (Luxembourg), S.A. v. Khalil,*
   214 F.3d 168 (D.C. Cir. 2000) (1992) ..........................................................................8

*Bechtel & Cole v. Graceland Broadcasting,*
   1994 U.S.App. LEXIS 4468 (D.C. Cir. Mar. 9, 1994) ...............................................17

*Doe v. Drummond Co..*
   782 F.3d 576 (11th Cir. 2015) ....................................................................................12

*Doe v. Exxon Mobil Corp.,*
   69 F. Supp. 3d 75 (D.D.C. 2014)...................................................................3, 4, 11, 12

*Hayhurst v. Calabrese,*
   988 F.2d 1280 (D.C. Cir. 1993)...................................................................................17

*Hemi Grp. v. City of New York,*
   559 U.S. 1 (2010).....................................................................................................9, 10

*Holmes v. Sec. Inv'r Prot. Corp.,*
   503 U.S. 258 (1992)......................................................................................................9

*In re S. African Apartheid Litig.,*
   56 F. Supp. ..................................................................................................................12

*In re S. African Apartheid Litig.*,
  56 F. Supp. 3d 331 (S.D.N.Y. 2014*), aff'd sub nom. Balintulo v. Ford Motor Co.,* 796 F.3d 160 (2d Cir. 2015)....................................................................10

*Inv. Co. Inst. v. United States*,
  550 F. Supp. 1213 (D.D.C. 1982) ...............................................................17

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986).......................................................................................5

*Jesner v. Arab Bank*,
  138 S.Ct. 1386 (2018) ...............................................................1, 2, 13, 14

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010)................................................................. passim

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
  937 F.2d 44 (2d Cir. 1991)..........................................................................17

*Lelchook v. Islamic Republic of Iran*,
  224 F. Supp. 3d 108 (D. Mass. 2016) ...........................................................8

*Malewicz v. City of Amsterdam*,
  517 F. Supp. 2d 322 (D.D.C. 2007) ..............................................................3

*Naartex Consulting Corp. v. Watt*,
  722 F.2d 779 (D.C. Cir. 1983) *cert. denied,* 467 U.S. 1210 (1984) ............17

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007).............................................................18, 19

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)......................................................................9, 10

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ......................................................................5

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
  493 U.S. 400 (1990)......................................................................................4

*Walden v. Fiore*,
  134 S.Ct. 1115 (2014)..................................................................................16

*Wultz v. Islamic Republic of Iran* ......................................................................9

**Statutes**

18 U.S.C. § 2333(d)(2) ........................................................................................8

Anti-Terrorism Act ...................................................................................... passim

Foreign Sovereign Immunities Act ......................................................................8

JASTA.............................................................................................................7, 8

JASTA § 4(a) .......................................................................................................8

Terrorism Act.......................................................................................................2

**Rules**

Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) ....................................19

## PRELIMINARY STATEMENT

Plaintiffs' opposition to Defendant Kushner Family Foundation's ("KFF") amended motion to dismiss the Amended Complaint demonstrates that dismissal is appropriate. Indeed, Plaintiffs' opposition demonstrates that, among other things, (i) their claims are barred by the Act of State doctrine as well as the political question doctrine; (ii) Plaintiffs utterly failed to plead the required causation to sustain either its Alien Tort Statute ("ATS") or Anti-Terrorism Act ("ATA") causes of action; (iii) their ATS claims are otherwise barred based upon the United States Supreme Court's holding in *Jesner v. Arab Bank*, 138 S.Ct. 1386 (2018) – an issue Plaintiffs concede by their silence in opposition to KFF's motion; and (iv) their ATA claims are barred because Congress, in its amendment to the ATS, specifically limited the availability of secondary liability under the ATS to only those who aid and abet nations that are on the United States State Department's list of state sponsors of terrorism, a list that does not include Israel, the purported terrorist in Plaintiffs' Amended Complaint.

First, Plaintiffs' theory is that the Israeli government, in league with Israeli charities and the IDF, acted in a conspiracy to promote settlement expansion.  That theory attacks state-sanctioned and government-directed conduct and, as such, the Act of State Doctrine, which precludes United States courts from judging the validity of a foreign sovereign's acts, bars Plaintiffs' claims.

Second, Plaintiffs' claim under the ATA must be dismissed because Plaintiffs cannot state a claim for aiding and abetting or conspiracy liability under the ATA. Congress, with its passage of the Justice Against Sponsors of Terrorism Act ("JASTA"),

amended the ATA to limit secondary liability under the ATA to situations where a defendant has assisted an organization that has been designated as a foreign terrorist organization.  Israel and the IDF have never been designated.  The ATA claim must also be dismissed because Plaintiffs cannot satisfy the statutory proximate cause requirement that requires a direct connection between the underlying predicate act and the alleged harm, where any intervening steps break the chain of proximate causation.  Here, there are myriad intervening steps between the allegedly laundered donations to KFF, and the provision of aid to settlers and promotion of settlement expansion generally.

Third, Plaintiffs' claim under the ATS must be dismissed because the claim lacks sufficient contact with the United States pursuant to Supreme Court precedent.  The Supreme Court has expressly held that claims under the ATS cannot be brought for alleged violations of international law that occur within the territory of a sovereign other than the United States.  Here, the primary, allegedly tortious conduct occurred abroad, and thus Plaintiffs' ATS claim must be rejected.

Fourth, Plaintiffs' ATS claim against KFF must be dismissed because, as detailed in KFF's moving brief, the Supreme Court's recent decision in *Jesner* demonstrates that there is no corporate liability against entities such as KFF under the ATS because there is no "specific, universal and obligatory" norm under international law that imposes liability upon a corporate actor for violations of international law.  138 S.Ct. at 1400.  Inherently conceding this point, Plaintiffs utterly fail to address it at all in opposition to KFF's amended motion.

Finally, the Amended Complaint must be dismissed in its entirety, as against KFF, because this Court lacks personal jurisdiction over KFF.  All of the allegations regarding KFF's contacts with this forum fall within the 'government contacts' exception to personal jurisdiction in the District of Columbia.  As such, there is no basis for jurisdiction over KFF in this District, where it is not incorporated, maintains no offices, and does not do business so "continuous and systematic" that it could reasonably have expected to be subjected to suit in this District.

For the forgoing reasons, we respectfully request that this Court dismiss all claims against KFF with prejudice.

## **ARGUMENT**

### I.  **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' CLAIMS ARE NON-JUSTICIABLE PURSUANT TO THE ACT OF STATE DOCTRINE**

#### A.  **The Act Of State Doctrine Bars This Action**

The Act of State doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory."  *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 336 (D.D.C. 2007). The Amended Complaint asks this Court to do just that – judge the activities of the IDF, which is directed by the Israeli government.  Plaintiffs' argument that the Act of State doctrine does not apply rests entirely, essentially, on *Doe v. Exxon Mobil Corp.,* 69 F. Supp. 3d 75, 95 (D.D.C. 2014) ("*Exxon*").

In *Exxon* the court held that the Act of State doctrine did not apply because "[n]o [ ] sovereign public act" was at issue and because plaintiffs had not alleged "that Exxon's

security forces, while admittedly soldiers in the Indonesian military, injured them pursuant to *official policies* of the GOI or orders from military commanders." *Exxon*, 69 F. Supp. 3d at 88 (emphasis supplied). Thus, the *Exxon* court found that the actions complained of were not demonstrably actions taken by the sovereign in furtherance of its internal policies. The *Exxon* decision acknowledged that acts of state are "by nature distinctly sovereign, i.e., conduct that cannot be undertaken by a private individual or entity." *Exxon,* 69 F. Supp. 3d at 88 (internal citations omitted).

Contrast that with Plaintiffs' theory of the instant case:  that the Israeli government and its employees and representatives are in league with various organizations (including KFF) to provide support to the IDF and promote settlement expansion. *See, e.g.,* Am. Compl. at 8 ("Defendant Netanyahu and senior IMD [Israeli Ministry of Defense] officials have been violating Israel's criminal statutes by purposefully diverting government funds to illegal settlements."). This very argument distinguishes the instant case from *Exxon.*

The orchestration of such a scheme and the control of the IDF, as alleged, is *not* the product of a private individual or private entity, like Exxon.[1] Rather, Plaintiffs' theory of the case is that the acts they complain of are state-sanctioned, government-directed conduct by the Israeli military, governmental officials and government ministries. That very theory implicates the Act of State doctrine and demonstrates this action must be dismissed.[2] *See, e.g., W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,* 493 U.S. 400, 403-404 (1990).

---

[1] That this case falls squarely within the ambit of the Act of State doctrine is made clear by the list of Israeli Defendants in this case: Prime Minister Benjamin Nethanyu; officials from the Israeli Ministry of Defense; and the former Israeli Minister of Foreign Affairs.

[2] Again, *Doe I* is instructive.  Noting that "the core of the [Act of State] analysis [is] the potential for interference with the foreign relations of the United States," the court held, on allegations strikingly similar

### B.      The Political Question Doctrine Also Bars This Action

This action is also barred by the political question doctrine.  The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution" by the executive and legislative branches.  *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 (1986).  Thus, the doctrine makes nonjusticiable those "political decisions that are by their nature committed to the political branches to the exclusion of the judiciary." *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) (quoting *Antolok v. United States*, 873 F.2d 369, 379 (D.C. Cir. 1989)).

Plaintiffs' opposition to this branch of KFF's motion is premised largely on the D.C. Circuit's recent decision in *Al-Tamimi v. Adelson*, 9 F.3d 1 (D.C. Cir. 2019).  In *Al-Tamimi*, the plaintiffs alleged that the defendants funneled millions of dollars through tax-exempt entities and banks directly "to Israeli villages called 'settlements.'" *Id.* at 4.  And, the plaintiffs alleged that the settlement leaders, armed with that financial assistance, hired their own private security forces that trained settlement militias.  *Id.*  In the face of those allegations, the *Al-Tamimi* Court found that the complaint posed a classic political question: "*who has sovereignty over the disputed [West Bank and Gaza] territory*." *Id.* at 10 (emphasis in original).  However, the Court denied dismissal because it found that the issue over sovereignty could be separated from other bases of liability and "the

---

to those here, that "[t]he actions challenged by Plaintiffs are classic acts of state. " *Doe I,* 400 F. Supp. at 113 (D.D.C. 2005).

plaintiffs…waived any theory of liability based on the conduct of the Israeli military." *Id.* at 13.

Here, by contrast, Plaintiffs have not waived any theory of liability based on the conduct of the Israeli military or its government.  Nor could they.  As is evident from both the caption and the claims in the Amended Complaint, Plaintiffs' claims are inextricably intertwined with all of the theories of liability in this case.  Plaintiffs allege that KFF aided and abetted acts of the Israeli government and the IDF against Palestinian settlers in the disputed territories.  They allege that KFF did so by directly funding the IDF as well as Israeli NGOs that they knew would fund the IDF's activities in the disputed territories. Indeed, Plaintiffs assert direct causes of action against Prime Minister Netanyahu, Israeli Ministry of Defense Officials Ehud Barak and Avigdor Lieberman, Knesset Member Tzipi Livni, as well as David Friedman, the United States Ambassador to Israel.  And, while in their opposition Plaintiffs contend that they will discontinue their claims against those individuals because they have had difficulty serving them with process (which Plaintiffs have yet to do), merely discontinuing those claims does nothing to address the fact that their claims in this case are directly premised on KFF's alleged donations of money to the IDF (an Israeli governmental entity) and to NGOs that in turn donated funds to the IDF. Plaintiffs' final argument to avoid dismissal under *Al-Tamimi* is that *Al-Tamimi* stands for the broad holding that claims by Palestinians against United States actors for funding operations in the disputed territories are *never* barred by the political question doctrine. But that is not what *Al-Tamimi* stands for.  Rather, *Al-Tamimi* merely stands for the unremarkable proposition that where the sovereignty of the disputed territories is extricable

from the claims asserted, the extricable claims are not barred by the political question doctrine. But where, as here, the claims allege that the *direct* funding of the Israeli government by United States actors, such as the allegations against KFF here, resulted in the Israeli government taking actions that are alleged to have violated the ATA and ATS and such allegations are the only ones at issue in the case, those claims are barred by the political question doctrine precisely because the legality of Israeli government's actions are inextricably intertwined with the issue of the sovereignty of the disputed territories and the political decisions made by the United States and Israeli governments. As such, unlike *Al-Tamimi*, here the political questions raised by the Amended Complaint are inextricably intertwined with the political questions of, among others, sovereignty of the West Bank and Gaza Strip. As such, dismissal is appropriate under both the act of state and political question doctrines.

## II.     THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT HAVE STANDING UNDER JASTA

Plaintiffs have not addressed KFF's argument that, on the undisputed facts of this case, JASTA precludes secondary liability under the civil liability provision of § 2333 of the ATA. *See* KFF's Opening Brief, at 16-22. Instead, Plaintiffs refer, *ad nauseum*, to a litany of *criminal* statutes that they assert, *ipse dixit*, KFF has either violated, or conspired to violate (e.g., § 2339A and § 2339C). *See* Opp. Br., at 12-15. Plaintiffs do not even attempt to explain how their allegations of a conspiracy to commit, or aid and abet, criminal violations supports *civil* liability under the ATA.[3]

---

[3] Plaintiffs brief mentions the ATA's civil liability provision, § 2333, only once – and that in Plaintiffs' unavailing proximate cause argument.

Plaintiffs have not attempted to do because, post-JASTA, there is no secondary liability under the ATA on the facts of this case.  While JASTA amended "the Foreign Sovereign Immunities Act [ ] to . . . to permit ATA liability for aiding and abetting international terrorism," *Lelchook v. Islamic Republic of Iran,* 224 F. Supp. 3d 108, 113 (D. Mass. 2016), that jurisdictional grant is limited to assisting "***an organization that ha[s] been designated as a foreign terrorist organization*** . . . ."  JASTA § 4(a), *codified at* 18 U.S.C. § 2333(d)(2) (emphasis supplied).  Neither Israel nor the IDF is, or has been so designated.  As such, Plaintiffs cannot state a claim under the ATA based on secondary liability.

## III.   THE ATA CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS CANNOT SATISFY THE ATA'S PROXIMATE CAUSE REQUIREMENT

Section 2333(a) requires that the Amended Complaint plausibly allege that Plaintiffs' injuries occurred "***by reason of***" KFF's donations to Israeli NGOs.  This statutory standard requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *BCCI Holdings (Luxembourg), S.A. v. Khalil*, 214 F.3d 168, 173 (D.C. Cir. 2000) (1992) (quoting *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992)).[4]

Plaintiffs' multi-step theory of causation does not meet that standard.  Such an approach has been repeatedly rejected by the Supreme Court as requiring multiple inferences in connection with not only distinct actions (e.g., alleged money laundering in the U.S., on the one hand, and theft and violence in Israeli territories, on the other), but also

---

[4] Plaintiffs fail to even once mention this "by reason of" language in their opposition brief, and make no attempt to discuss its implications in this case.

"separate actions carried out by separate *parties*."  *See Hemi Grp. v. City of New York*, 559 U.S. 1, 11 (2010) (emphasis in original).

Moreover, Plaintiffs' theory must be rejected as it relies on allegations of "foreseeability."  *See, e.g.,* Opp. Br. at 36.  Where, as here, a statute requires *direct* proximate causation, the Supreme Court has rejected a "foreseeability" theory of causation. *See Hemi Grp., LLC,* 559 U.S. at 12 ("Our precedents make clear that [where the statutory "by reason of" language is present] the focus is on the directness of the relationship between the conduct and the harm.  Indeed, *Anza* and *Holmes* never even mentioned the concept of foreseeability.").

Plaintiffs argue that *Wultz v. Islamic Republic of Iran* supports their claim that proximate cause exists on the facts alleged.  *See* Opp. Br., at 30-31, *citing Wultz*, 755 F. Supp. 2d 1 (D.D.C. 2010).  However, *Wultz* is inapposite.  In *Wultz*, the court held that proximate causation was plausibly alleged because the complaint "alleged a flow of money *directly* into the coffers of Palestinian Islamic Jihad (PIJ) – an organization entirely devoted to terrorist activity and, thus, an entity unlikely to use those funds for any other purpose." *Wultz*, 755 F. Supp.2d at 22 (citations omitted) (emphasis in original).  The key, then, is that the link between action and harm was "direct."  No such link exists here.

Similarly, Plaintiffs' attempt to distinguish *Rothstein* fails.  The essential holding of *Rothstein* was that Plaintiffs had not sufficiently pled proximate cause because they did not and could not allege that the defendant bank, which had processed funds transfers to Iran, was a participant in the terrorist attacks that injured the plaintiffs, that the bank had provided money directly to a designated terrorist organization, or even that the bank's

funds transfers were a but-for cause of the attacks.  *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013).  The *Rothstein* Court also refused to credit allegations that the defendant bank "knew full well" that funding to Iran would facilitate terrorist attacks, stating that those were "conclusory allegations that do not meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship[.]"  *Id.*  The Plaintiffs' Amended Complaint fails to adequately plead proximate cause for precisely the same reasons here.[5]

Put simply, the Supreme Court has clearly stated "[a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient" to satisfy the proximate cause requirement that exists in this case.  *Hemi,* at 271, 274.   Because Plaintiffs' theory of the case depends on multiple "remote" and "indirect" links, it must be rejected, as it does not meet the [ATA's] direct relationship requirement. *Hemi Grp,* 559 U.S. at 9-10.

## IV.  PLAINTIFFS' ALIEN TORT STATUTE CLAIM MUST BE DISMISSED

### A.  Plaintiffs' ATS Claims Lack Sufficient Contact With The United States Under *Kiobel*

The "Supreme Court expressly held that claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Balintulo v. Daimler AG*, 727 F.3d 174, 189 (2d Cir. 2013); *In re S. African Apartheid Litig.,* 56 F. Supp. 3d 331, 336 (S.D.N.Y. 2014*), aff'd sub nom. Balintulo*

---

[5] Plaintiffs' brief states, without citation to its Amended Complaint, that "Defendant KFF, as clearly alleged in the Amended Complaint, directly provide[s] funding to belligerent settler and the Israeli Army[.]"  *See* Opp. Br., at 36.  But in the very next sentence Plaintiffs acknowledge that what Plaintiffs actually allege is that "KFF has provided funds to FIDF," which funds, the theory goes, are funneled through intermediaries to the IDF and then used by the IDF to promote the settlement expansion Plaintiffs claim has caused their harm.  *Id.,* at 4, 30, 36 (alleging donations to the FIDF).  But, as discussed above, that is *not* the "direct" provision of funds that is required under *Rothstein* or Supreme Court precedent to avoid dismissal on proximate cause grounds.

*v. Ford Motor Co.,* 796 F.3d 160 (2d Cir. 2015) ("The Supreme Court's decision in *Kiobel II* drastically limits the viability of ATS claims based on conduct occurring abroad."). Plaintiffs largely ignore this history.

In fact, the only post-*Kiobel* cases that Plaintiffs cite in support of their argument that the allegations against KFF are sufficient to satisfy the *Kiobel* standard are *Doe v. Exxon Mobil Corp.*  69 F. Supp. 3d 75, 96 (D.D.C. 2014), and *In re South African Apartheid*.  However, when analyzed, these cases do not support allowing the ATS claim to proceed in this case.

First, Plaintiffs' counsel inadequately analyzes *Exxon*, implying that the *Exxon* Court denied the defendant's motion to dismiss the ATS claim on the basis that the allegations in that case were sufficient, post-*Kiobel,* to rebut the presumption against extra-territoriality.  *See* Opp. Br. at 28.  Rather, an accurate reading of the decision shows that the *Exxon* Court decided merely that plaintiffs' motion to amend their complaint so as to replead their ATS allegations should be granted in light of the Supreme Court's intervening decision in *Kiobel*.  *Doe v. Exxon Mobil Corp.,* 69 F. Supp. 3d 75, 97 (D.D.C. 2014).

In doing so, the court noted that the *Exxon* plaintiffs had alleged that:

> [Exxon] officials based in the United States "made and implemented the decision" to "hire or otherwise retain additional security personnel for [Exxon's] Aceh facilities." *Id.* ¶ 33. Plaintiffs make a number of other allegations regarding the support provided by Exxon to their security personnel. *See id.* ¶ 54 (alleging Exxon provided material support to its security personnel by, for example, constructing facilities, providing funding for weapons, providing supplies and equipment, and paying for the services of consultants in training and equipping the personnel). Plaintiffs do not, however, state *where* this support was planned or authorized or if any of the material or monetary support came from the United States.

*Exxon,* 69 F. Supp. 3d at 96

11

This set of allegations made by the plaintiffs in *Exxon* is nearly identical to those rejected as a sufficient basis for ATS liability by the Eleventh Circuit *Doe v. Drummond Co.*. 782 F.3d 576 (11th Cir. 2015). As described in KFF's Opening Brief, the Eleventh Circuit rejected those allegations, analytically identical to those in *Exxon*, as a basis for ATS liability.  *See* KFF Op. Br. at 30-31.  The *Drummond* Court held that:

> [W]here a Complaint alleges activity in both foreign and domestic spheres, an extraterritorial application of a statute arises *only* if the event on which the statute *focuses* did not occur abroad. Of course, the ATS *focuses* on the torts of extrajudicial killings and war crimes (violations of the law of nations), and in the *Balcero* case, the tort at issue occurred abroad, in Colombia, and *not* in the United States.

*Id*. (emphasis in original).

Here, Plaintiffs do not attempt to refute the *Drummond* reasoning. Indeed, Plaintiffs' brief does not even mention *Drummond,* perhaps because their ATS claim does not meet the requisites of the *Drummond* decision.

Finally, Plaintiffs' reliance on *In re South African Apartheid* is simply inexplicable. *See* Opp. Br. at 26.  If anything, that case support KFF's argument.

In *In re South African Apartheid*, Judge Scheindlin dismissed plaintiffs' ATS claim, holding that even where a parent corporation exercised control over subsidiary corporations in apartheid South Africa, there was no viable ATS claim against either parent or subsidiary under *Kiobel* "because all of the subsidiaries' conduct undisputedly occurred abroad."  *In re S. African Apartheid Litig.,* 56 F. Supp. at 338.  The Second Circuit affirmed Judge Scheindlin's opinion.  *See Balintulo v. Ford Motor Co.,* 796 F.3d at 169 (defendants' affirmative steps in this country are insufficient to "tie[ ] the relevant human rights violations to actions taken within the United States.").

Likewise, all of the primary, allegedly tortious conduct in the instant case occurred abroad, and the same result should follow: Plaintiffs' ATS claim should be dismissed.[6]

### B. The United States Supreme Court's Decision In *Jesner* Forecloses Plaintiffs' Attempt To Impose Corporate Liability On KFF Under The ATS

In KFF's moving papers, KFF demonstrated that the Supreme Court's recent decision in *Jesner*, 138 S.Ct. 1386 (2018), precludes Plaintiffs from seeking to impose corporate liability against KFF under the ATS.  Indeed, KFF demonstrated that *Jesner* holds that corporate liability does not exist under the ATS because there is no "specific, universal and obligatory" norm under international law that imposes liability upon a corporate actor for violations of international law.  *Id.* at 1400.

In opposition to KFF's amended motion, Plaintiffs utterly fail to address this issue. Indeed, by their silence, Plaintiffs' concede that their ATS claims must be dismissed under *Jesner*.  In fact, rather than addressing this argument, Plaintiffs concede that they are seeking to impose corporate liability against KFF, "a private corporate entity."  *See* Plaintiffs' Mem. at 21.  Plaintiffs make this concession because, as demonstrated in KFF's moving papers, jurisdiction under the ATS "is limited to those cases alleging a violation of an international norm that is 'specific, universal, and obligatory."  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 148 (2d Cir. 2010), quoting *Sosa*, 542 U.S. at 732.

In *Jesner*, the Court, just as the Second Circuit in *Kiobel*, held that "[t]he international community's conscious decision to limit the authority of…international

---

[6] The United States Government agrees that federal courts do not have jurisdiction to hear ATS claims on similar allegations.  *See Adelson,* Gov. Br., at 19-24 (David Decl., Ex. 2).

tribunals to natural persons counsels against a broad holding that there is a specific, universal, and obligatory norm of corporate liability under currently prevailing international law." *Id.* at 1401. Indeed, in *Jesner*, the Supreme Court held that there is no "specific, universal and obligatory" norm under international law that imposes liability upon a corporate actor for violations of international law. *Jesner*, 138 S.Ct. at 1400. Thus, the *Jesner* Court made clear that, notwithstanding that the international community has come to recognize the danger of human rights violations, "[i]t does not follow…that current principles of international law extend liability—civil or criminal—for human-rights violations to corporations or other artificial entities." *Id.* As such, the Supreme Court found that the lack of an international norm imposing liability upon artificial entities such as KFF "is confirmed by the fact that the charters of respective international criminal tribunals often exclude corporations from their jurisdictional reach." *Id.*

Given that ATS liability can only be imposed where a complaint alleges the violation of a specific, universal and obligatory international norm, and given that, as confirmed by both *Kiobel* and *Jesner*, there is no specific, universal or obligatory international norm imposing liability for alleged human rights abuses on corporate entities such as KFF, Plaintiffs cannot maintain a cause of action against KFF under the ATS.

## V.     THE ATA CLAIM MUST BE DISMISSED BECAUSE AN ATA CLAIM PREDICATED UPON "ACTS OF WAR" IS BARRED BY SECTION 2336(a)

Section 2336(a) of the ATA provides that "[n]o action shall be maintained under section 2333 of this title for injury or loss by reason of an act of war." Section 2331(4), in turn, defines "act of war" as "any act occurring in the course of—(A) declared war; (B)

armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin."

Plaintiffs, relying on *Sokolow v. PLO,* argue that the "act of war" exception does not apply here, attempting to analogize their claims to discrete terrorist attacks in Jerusalem committed by the PLO and the Palestinian Authority.  583 F.Supp. 2d 451, 458 (S.D.N.Y. 2008).  *Sokolow* is neither binding on this court nor is it analogous to the instant case.  In *Sokolow,* the court held the Acts of War exception inapplicable because:

> Six of the seven subject attacks occurred in Jerusalem.  There has been no showing that the situs of the attacks were in any combat or militarized zone, or were otherwise targeted at military or governmental personnel or interests.

*Sokolow,* 583 F. Supp. 2d at 459 (the attacks were carried out in a cafeteria on a college campus and a passenger bus, and that the use of bombs indicated an intent to harm "the masses").

This is markedly different from the instant case, which at its core involves allegations that Israel essentially created a "militarized zone" with its policy of settlement expansion, rather than involving discrete attacks as was the case in *Sokolow* and *Biton*. While the current conflict over the allegedly "occupied" territories may not be so temporally limited (at present) as, for example, Israel's war with Lebanon, the conflict still qualifies as a military conflict under the statutory definition.  *See* KFF's Op. Br., at 27.

For that reason, applying the "acts of war" exception to the Anti-Terrorism Act would best comport with nature of the long-standing conflict over the disputed territories.[7]

---

[7] The very fact that Plaintiffs ask this Court to decide whether actions taken in connection with settlement activities would fall within the ambit of a statute directed towards "terrorism" or whether the actions

## VI.     THIS CASE MUST BE DISMISSED AS AGAINST KFF BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER KFF

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.  For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (internal quotation marks and citations omitted).  To meet the applicable standard, Plaintiffs must allege "specific facts" on which personal jurisdiction can be based; they cannot rely on conclusory allegations.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

Plaintiffs have failed to establish that this Court has personal jurisdiction over KFF. In support of their position, Plaintiffs argue that this Court has personal jurisdiction over KFF based on allegations that KFF

1.  "solicit[s] funds in this metropolitan area and all over America" (Am. Compl., ¶ 22(ii));

2.  "sent $315,000 to the Israeli army [via Friends of The Israeli Army] between 2011 and 2013 in order to take illegal tax write-offs on IRS income tax forms (the 1040 and the 990) filed with the IRS based in the District of Columbia"

3.  "file[s] annual 990 forms with the Treasury Department";

4.  "work with AIPAC officials who are located in this jurisdiction to, *inter alia,* preserve the practice of taking illegal tax deductions";

*See* Pl. Opp. Br., at 41 (internal citations and quotations omitted).

However, taken at face value, these allegations are insufficient to provide personal jurisdiction.

---

complained of qualify as "acts of war" is yet another indication that this case should be dismissed pursuant to the political question doctrine.

First, personal jurisdiction cannot be predicated on "exercises in petitioning the government" or "attempts to influence government action." *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 786-87 (D.C. Cir. 1983) *cert. denied,* 467 U.S. 1210 (1984) (discussing the "government contacts" exception to personal jurisdiction).  As such, the Court of Appeals in this District has held that "the type of contacts appellant has alleged (lobbying the federal government) fall within the 'government contacts' exception to the exercise of personal jurisdiction under the District's long-arm statute."  *Hayhurst v. Calabrese,* 988 F.2d 1280 (D.C. Cir. 1993); *see also Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C. Cir. 1983) (excluding lobbying efforts pursuant to government contacts exception as sufficient basis for personal jurisdiction); *Bechtel & Cole v. Graceland Broadcasting,* 1994 U.S.App. LEXIS 4468, at \*3 (D.C. Cir. Mar. 9, 1994); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 51 (2d Cir. 1991).

Nor can personal jurisdiction be based on filings with a federal agency.  *See, e.g., Inv. Co. Inst. v. United States,* 550 F. Supp. 1213, 1217 (D.D.C. 1982) (filings with SEC excluded from consideration as basis for contacts with District of Columbia for purposes of establishing personal jurisdiction, as "those activities are prerequisites to defendants' engaging in the securities business anywhere in the country").

Because Plaintiffs' jurisdictional allegations fall within the 'government contacts' exception to personal jurisdiction, the Amended Complaint must be dismissed as to KFF for lack of personal jurisdiction.

VII.    **MULTIPLE PLAINTIFFS MUST BE DISMISSED FROM THE CASE BECAUSE THEY LACK ARTICLE III STANDING**

The Amended Complaint fails to meet the standards for Article III Standing for those Plaintiffs listed in KFF's Opening Brief.  Non-specific collective allegations, like those made in the Amended Complaint, do not suffice to provide Article III standing; rather, "each [Plaintiff must] assert a distinct, individual injury." *Akins v. Fed. Election Comm'n,* 101 F.3d 731, 737 (D.C. Cir. 1996), *vacated on other grounds*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

Plaintiffs' cases do not support a contrary conclusion.  First, Plaintiffs' use of brackets in connection with citation to *Atkins* is of a piece with the rest of their briefing: misleading, and wrong.  The full quote is to an analogy: "a government contractor, allegedly wrongfully deprived of information to be made available at the time bids are due, would suffer a particularized injury even if all other bidders also suffered an injury." *Atkins v. Fed. Election Comm'n,* 101 F.3d 731, 737 (D.C. Cir. 1996), *vacated,* 524 U.S. 11 (1998). Thus*, in Atkins* the court was analogizing to a situation where the same facts suffice to create the same particularized injury for all bidders, a pattern clearly distinguishable from the instant case.

Even more perplexing is Plaintiffs' citation to *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d 1279, 1292 (D.C. Cir. 2007).  That case involved a challenge to a NHTSA regulation that the plaintiffs claimed increased the risk of harm in auto accidents.  The District of Columbia Court of Appeals, before dismissing the case for lack of standing, noted that:

> Injuries from car accidents are particularized—each person who is in an accident is harmed personally and distinctly. The Supreme Court has made clear, moreover, that the fact that a number of people could be similarly injured does not render the claim an impermissible generalized grievance.

*Pub. Citizen, Inc.,* 489 F.3d at 1292 (D.C. Cir. 2007).

Thus, *Pub. Citizen* merely supports the proposition that where there is a mass tort based on the same event or cause (e.g., a bus bombing, or a product defect, or a car accident), the same set of allegations *could* support standing for multiple plaintiffs. That proposition, however, in no way supports Article III standing on the facts of this case.

## CONCLUSION

For all of the foregoing reasons, defendant Kushner Family Foundation respectfully requests that this Court dismiss the Amended Complaint as against KFF in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and grant KFF such other and further relief as this Court deems just and proper.

New York, New York
Dated: June 20, 2019

Respectfully submitted,

*/s/ Donald N. David*
Donald N. David
Joshua D. Bernstein (*pro hac vice*)
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY, 10103
Tel.: (212) 880-3856
Fax: (212) 905-6410
Email: donald.david@akerman.com
D.C. Bar Number 514870

*Counsel for Defendant Kushner
Family Foundation*

19

## CERTIFICATE OF SERVICE

I HEREBY certify that on June 20, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

*/s/ Donald N. David*
Donald N. David