# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------- X

MIKO PELED, *et al.*,

                           Plaintiff,

            -against-

BENJAMIN NETANYAHU, *et al.*,

                       Defendants.

---------------------------------------------------------------- X

Docket No:

1:17-CV-260 (RBW)


**MEMORANDUM OF LAW OF DEFENDANT BILLET FEIT & PREIS P.C. IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT BILLET FEIT & PREIS P.C.'s MOTION TO DISMISS THE AMENDED COMPLAINT**

RIVKIN LAW GROUP pllc
Oleg Rivkin
800 Third Avenue, Suite 2501
New York, New York 10022
(212) 231-9776

THE BERKMAN LAW OFFICE, LLC
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

*Attorneys for Defendant*
*Billet Feit & Preis P.C.*

OF COUNSEL:
NITSANA DARSHAN-LEITNER & CO.
*Israeli counsel for the defendant Billet Feit & Preis P.C.*
By: Nitsana Darshan-Leitner, Adv.
10 Hata'as Street
Ramat Gan, 52512 Israel

## **Table of Contents**

TABLE OF AUTHORITIES ...................................................................................... *ii*

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT

A.  There Is No Personal Jurisdiction in DC Over BFP .......................................3

B.  The Political Question Doctrine Bars All of Plaintiffs' Claims ......................5

C.  The Act of State Doctrine Bars This Action ..................................................7

D.  Plaintiffs' Claims Under the ATA Must Be Dismissed ..................................8

E.  Claims Under the Alien Tort Statute Must Be Dismissed ...........................11

F.  Failure by Most Plaintiffs to Allege Concrete and Particularized Injuries Mandates Dismissal of Their Claims ...........................................................13

G.  Claims of Deceased Plaintiffs Must Be Dismissed for Lack of Standing....15

H.  Plaintiffs' Claim for Aiding-and-Abetting Tax Fraud Must Be Dismissed .................15

I.  Plaintiffs' Negligence Claim Must Be Dismissed........................................17

CONCLUSION........................................................................................................18

CERTIFICATE OF SERVICE

## Table of Authorities

**Cases**

*Akins v. Fed. Election Comm'n,*
101 F.3d 731 (D.C. Cir. 1996) ........................................................................... 13-14

*Al-Tamimi v. Adelson,*
9 F.3d 1 (D.C. Cir. 2019) ....................................................................................... 1, 5-6

*Ali v. Mid-Atlantic Settlement Serv., Inc.,*
640 F. Supp.2d 1 (D.D.C. 2009) ................................................................................16

*Balitundo v. Daimler AG,*
727 F.3d 174 (2d Cir. 2013) ........................................................................................11

*Balintulo v. Ford Motor Co.,*
796 F.3d 160 (2d Cir. 2015) ........................................................................................12

*Banco Nacional de Cuba v. Sabbatino,*
376 U.S. 398 (1964) ......................................................................................................7

*BCCI Holdings (Luxembourg), S.A. v. Khalil,*
214 F.3d 168 (D.C. Cir. 2000) .....................................................................................9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 554 (2007) ....................................................................................................10

*Corrie v. Caterpillar, Inc.,*
403 F. Supp. 2d 1019 (W.D. Wash. 2005) .................................................................11

*Doe v. Drummond Co.,*
782 F.3d 576 (11th Cir. 2015) .....................................................................................12

*Doe v. Exxon Mobil Corp.,*
69 F. Supp.3d 75 (D.D.C. 2014) ...................................................................1, 7-8, 11-12

*First Chicago Int'l v. United Exch. Co.,*
836 F.2d 1375 (D.C. Cir. 1988) ................................................................................3-4

*Folz v. U.S. New & World Report, Inc.,*
627 F. Supp. 1143 (D.D.C. 1986) ...............................................................................17

*Hemi Grp. v. City of New York,*
559 U.S. 1 (2010) ..........................................................................................................9

*Inv. Co. Inst. v. United States,*
   550 F. Supp. 1213 (D.D.C. 1982) ...................................................................4

*Japan Whaling Ass'n v. American Cetacean Society,*
   478 U.S.221 (1986) ..........................................................................................5

*Jesner v. Arab Bank, PLC,*
   138 S. Ct. 1386 (2018) ........................................................................... 2, 12-13

*Jungquist v. Sheil Sultin Bin Khalifa Al Nahayan,*
   115 F.3d 1020 (D.C. Cir. 1997) .................................................................. 3-4

*Kiobel v Royal Dutch Petroleum Co.,*
   133 S. Ct. 1659 (2013) ............................................................................. 11-12

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .......................................................................................13

*Perrin v. Vuliai,*
   2016 WL 795900 (E.D. Mich. Feb. 29, 2016) ..............................................15

*Pub. Citizen, Inc. v. National Highway Traffic Safety Admin.,*
   489 F.3d 1279 (D.C. Cir. 2007) ....................................................................14

*Rothstein v. UBS AG,*
   708 F.3d 82 (2d Cir. 2013) ...................................................................... 9-10

*In re S. African Apartheid Litigation,*
   56 F. Supp.3d 331 (S.D.N.Y. 2014) ......................................................... 11-12

*Schneider v. Kissinger,*
   412 F.3d 190 (D.C. Cir. 2005) ........................................................................5

*Seabury v. City of New York,*
   No. 06 Civ. 1477 (NGG), 2006 WL 1367396 5 (E.D.N.Y. May 18, 2006).......................15

*Spilky v. Helphand,*
   No. 91 Civ. 3045 (PKL), 1993 WL 159944 (S.D.N.Y. May 11, 1993) ............................15

*Stutts v. De Deitrich Group,*
   2006 WL 1867060 (E.D.N.Y. June 30, 2006).................................................11

*Ungar v. Islamic Republic of Iran,*
   211 F. Supp. 2d 91 (D.D.C. 2002) ................................................................16

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,*
   494 U.S. 400 (1990) .........................................................................................7

*World Wide Minerals Ltd. v. Rep. of Kazakhstan*,
  298 F.3d 1154 (D.C. Cir. 2002) ...................................................................................7

*World Wide Minerals Ltd. v. Rep. of Kazakhstan*,
  116 F. Supp. 2d 98 (D.D.C. 2000) ...............................................................................4

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp.2d 1 (D.D.C. 2010) ...................................................................................9

*Youming Jin v. Ministry of State Security*,
  335 F. Supp. 2d 72 (D.D.C. 2004) ...............................................................................4

## **Statutes and Rules**

18 U.S.C. §2333 ......................................................................................... 8-9, 11

Alien Tort Statute ("ATS"),
  28 U.S.C. 1350 ........................................................................................ 2, 6 11-13

Anti-Terrorism Act ("ATA"),
  18 U.S.C. 2331, *et seq.* ........................................................................ 1, 6, 8, 10-11

Justice Against Sponsors of Terrorism Act ("JASTA"),
  Pub. L. 114–222 .........................................................................................1, 8

Fed. R. Civ. P. 12 ...........................................................................................5

## **PRELIMINARY STATEMENT**

Plaintiffs' opposition to Defendant Billet Feit & Preis P.C.'s ("BFP") motion to dismiss the Amended Complaint ignores much of BFP's argument entirely. As to those arguments which Plaintiffs' opposition does address, it reinforces the bases for dismissal, rather than weakens them.

First, Plaintiffs fail to meaningfully address BFP's argument that this Court lacks personal jurisdiction over it. Plaintiffs merely repeat the allegation in the Amended Complaint that jurisdiction is based on the so-called "conspiracy theory" of jurisdiction, ignoring that the sole two cases cited by them actually *rejected* the theory. Plaintiffs proffer nothing to demonstrate that BFP has the requisite contacts with this District on which personal jurisdiction could be based.

Second, Plaintiffs' opposition does nothing to contradict BFP's argument that the political question doctrine bars the claims here. Plaintiffs misplace reliance on the recent decision in *Al-Tamimi v. Adelson*, 9 F.3d 1 (D.C. Cir. 2019). Unlike in that case, the Amended Complaint here raises quintessential political questions inappropriate for judicial consideration.

Third, the Act of State doctrine bars the claims. Plaintiffs' theory is predicated on acts that are, as expressly pleaded, state-sanctioned and government-directed. It is based entirely on the conduct of the Israeli military, government officials and government ministries. Plaintiffs misread *Doe v. Exxon Mobil Corp.*, 69 F. Supp.3d 75, 95 (D.D.C. 2014), the sole case cited by them in opposition to this argument.

Fourth, Plaintiffs' claim under the ATA must be dismissed because Plaintiffs cannot state a claim for aiding and abetting or conspiracy liability under the ATA. The Justice Against Sponsors of Terrorism Act ("JASTA") has limited secondary liability under the ATA to situations where a defendant has assisted an organization that has been designated as a foreign terrorist organization. Israel and IDF have not been so designated. The ATA claim should also be dismissed for failure to satisfy the proximate cause requirement. Plaintiffs do not—and cannot—plausibly plead that

BFP's tax accounting work in the U.S. (obtaining tax-exempt status and filing tax returns for KFF and Bet El) was the proximate cause of the Plaintiffs' alleged injuries. Realizing this, Plaintiffs purport to rely on a "foreseeability" theory, ignoring that this theory has been explicitly rejected by the Supreme Court in cases such as this one.

Fifth, the claim under the ATS must be dismissed because, under direct Supreme Court precedent, the claims lacks sufficient contact with the United States. The Supreme Court has held that claims under the ATS cannot be brought for alleged violations of international law that occur within the territory of a sovereign state other than the United States. Also, the ATS claim must be dismissed under the recent decision in *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), which made clear that an ATS claim cannot be asserted against a corporation. By ignoring this argument, Plaintiffs concede it.

Sixth, the Amended Complaint must be dismissed for failure to allege concrete and particularized injuries for each of the Plaintiffs. The allegations of collective injury are insufficient as a matter of law.

Seventh, Plaintiffs entirely ignore BFP's argument that claims of deceased Plaintiffs must be dismissed. As shown in the moving papers, and reiterated below, such claims are untenable as a matter of law. Moreover, since Plaintiffs ignore this argument they have conceded it.

Eighth, Plaintiffs likewise ignore BFP's argument that Plaintiffs cannot maintain their Fourth Cause of Action, asserted against BFP only, for aiding and abetting tax fraud. The claim cannot be asserted as a matter of law. Plaintiffs do not dispute this, and thereby concede it.

Finally, Plaintiffs' argument in defense of their Fifth Cause of Action for negligence against BFP—to the extent it is an argument at all—does not salvage the negligence claim. The law is clear that a claim against an accountant for negligence cannot be stated by a third party unless the accountant's work was "for the benefit" or "guidance" of the party making the claim.

Not even the Plaintiffs have the chutzpah to claim that BFP's accounting work of which they complain (filing IRS Form 990's for KFF and Bet El) was for Plaintiffs' benefit or guidance.

## ARGUMENT

### A.      There Is No Personal Jurisdiction in DC Over BFP

Plaintiffs address BFP's argument that this Court lacks personal jurisdiction over BFP by (a) re-stating the allegation in the Amended Complaint that they claim jurisdiction under the so-called "conspiracy theory" of jurisdiction; (b) ignoring that in the two cases cited in the Amended Complaint—*Jungquist v. Sheil Sultin Bin Khalifa Al Nahayan*, 115 F.3d 1020 (D.C. Cir. 1997), and *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988)—the courts *rejected* the conspiracy theory of personal jurisdiction; (c) ignoring BFP's comprehensive argument that the conspiracy theory does not provide a basis for personal jurisdiction over BFP; and (d) offering no citation to any case or authority that would support their argument.

To reiterate, the *Jungquist* court, in rejecting the conspiracy theory of jurisdiction, stated:

> [B]ald speculation or conclusory statement that individual are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory…. Instead, the plaintiff must plead with particularity the conspiracy <u>as well as the overt acts within the forum taken in furtherance of the conspiracy</u>…. [Because] the Jundquists failed to plead with sufficient particularity any overt acts within the District of Columbia in furtherance of the conspiracy,… personal jurisdiction over Sheikh Sultan and Samea is unavailable under a conspiracy theory.

115 F.3d at 1031 (internal citations and internal quotations omitted; emphasis added). The *First Chicago* court likewise stated:

> It is settled that a plaintiff must allege specific acts connecting the defendant with the forum,… and that the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction.

836 F.2d at 1378-79 (internal citations and quotations omitted). *See also World Wide Minerals Ltd. v. Rep. of Kazakhstan*, 116 F. Supp. 2d 98, 108 (D.D.C. 2000) *quoting Jungquist, supra,* 115 F.3d at 1031 ("Most courts utilize conspiracy jurisdiction warily and require that a plaintiff 'plead with particularity the conspiracy as well as the overt acts within the forum.' For conspiracy jurisdiction to function there must be a substantial act within the forum."); *Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 79-80 (D.D.C. 2004) ("Personal jurisdiction, even if based on conspiracy, requires purposeful availment," *i.e.,* the defendant's awareness of knowledge of the co-conspirator's acts in the forum).

Of the four causes of action alleged against BFP, only one purports to state a claim of conspiracy. The First Cause of Action alleges a conspiracy to "arm and train foreign militia," "ethnic cleansing," and "genocide." The Amended Complaint alleges no "overt acts," and certainly no "substantial acts" within the District of Columbia "in furtherance" of this alleged "conspiracy," much less alleges them with the requisite degree of particularity.

The remaining causes of action in which BFP is included *do not allege any conspiracy at all*, and thus cannot be used as a basis for jurisdiction based on conspiracy.

Plaintiffs also argue—without citation—that filing tax returns (Form 990's) provides a basis for jurisdiction. Not so. First, personal jurisdiction cannot be based on filings with a federal agency. *See, e.g., Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1217 (D.D.C. 1982) (filings with SEC excluded from consideration as basis for contacts with District of Columbia for purposes of establishing personal jurisdiction, as "those are prerequisites to defendants' engaging in the securities business anywhere in the country"). Second, as shown in BFP's motion papers, Form 990's are filed with the IRS Service Center located in Ogden, Utah, *not* in the District of Columbia. Plaintiffs do not dispute this.

In sum, there simply is no remotely tenable basis for personal jurisdiction over BFP in this District and the Amended Complaint should be dismissed as against BFP pursuant to Fed. R. Civ. P. 12(b)(2).

**B.      The Political Question Doctrine Bars All Plaintiffs' Claims**

This action is barred by the political question doctrine. The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution" by the executive and legislature branches. *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S.221, 230 (1986). The political question doctrine renders nonjusticiable "political decisions that are by their nature committed to the political branches to the exclusion of the judiciary." *Schneider v. Kissinger,* 412 F.3d 190, 194 (D.C. Cir. 2005) (quotation omitted).

In their opposition papers Plaintiffs place great reliance on the recent D.C. Circuit decision in *Al-Tamimi*, 9 F.3d 1. This reliance is misplaced.

The thrust of the allegations in *Al-Tamimi* was that the defendants had funneled millions of dollars through tax-exempt entities directly "to Israeli villages called settlements." *Id*. at 4. Plaintiffs further claimed that the settlements, having received this money, hired their own private security forces that trained settlement militias. *Id*. Given these allegations, the *Al-Tamimi* court found that the complaint posed a classic political question: "*who has sovereignty over the disputed territory*." *Id*. at 10 (emphasis in original).

In contrast to the *Al-Tamimi* allegations that the American defendants funneled money ***directly*** to Israeli settlers, the allegations in this case are that (a) defendants KFF and Bet El donated money to certain Israeli Non-Governmental Organizations ("NGOs"); (b) these Israeli NGOs provided money to the Israeli Defense Forces ("IDF"); (c) the IDF then allegedly used that money

to buy weapons and train militias; and (d) these militias then allegedly promoted the expansion of settlements of the West Bank. The difference between the two sets of allegations is critical: the alleged conspiracy to commit genocide, as asserted in this case, *necessarily* involves actions of the Israeli military, and thus Israeli government. It is thus impossible to distill the question to "whether the settlers are committing genocide," as the Court was able to do in *Al-Tamimi*. Any question of the commission of "genocide" or other alleged crimes here would necessarily require the Court to pass judgment on the conduct of the Israeli military and its government.

Plaintiffs essentially argue that under *Al-Tamimi* no claim by Palestinians against U.S. actors for funding operations in the disputed territories could ever be barred by the political question doctrine. That is not at all what *Al-Tamimi* holds. Rather, *Al-Tamimi* stands for the unremarkable proposition that where the sovereignty of the disputed territories is extricable from the asserted claims, the extricable claims are not barred by the political question doctrine. But where, as here, the asserted claims are that **direct** funding of the Israeli government by U.S.-based actors resulted in the Israeli government taking actions that are alleged to have violated the ATA and ATS, and such violations are the only ones at issue in this case, those claims are necessarily barred by the political question doctrine precisely because the legality of Israeli government's actions are inextricably intertwined with the issue of sovereignty of the disputed territories and the political decisions made by the United States and Israeli governments.

In sum, unlike *Al-Tamimi*, the Amended Complaint here raises quintessential political questions, including, who has sovereignty of the West Bank and Gaza. The ATA claims should accordingly be dismissed.

**C.      The Act of State Doctrine Bars This Action**

The Act of State doctrine precludes courts from delving into the validity of public acts committed by a foreign sovereign with its own territory. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964), *accord World Wide Minerals Ltd. v. Rep. of Kazakhstan*, 298 F.3d 1154, 1164-65 (D.C. Cir. 2002). The doctrine is invoked "when the outcome of the case turns upon…the effect of official actions by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 494 U.S. 400, 407 (1990). It is rooted in the Constitutional separation of powers, "reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." *W.S. Kirkpatrick*, 493 U.S. at 405 (quotations omitted). The political doctrine bars a claim when (a) it involves an official act of a foreign sovereign; (b) it is performed within that sovereign's own territory; and (c) it seeks relief that would require the court to sit in judgment of the sovereign's official acts. *Id*.

In an attempt to counter this argument, Plaintiffs rely entirely on *Exxon*, 69 F. Supp. 3d at 95. In that case, the court held that the Act of State doctrine did not apply because "[n]o … sovereign public act: was involved and because plaintiffs had not alleged that Exxon's security forces, while admittedly soldiers in the Indonesian military, injured them pursuant to official policies of the GOI or orders from military commanders." *Id.*, 69 F. Supp. 3d at 8. Thus, the key to the *Exxon* holding is that the conduct complained of was not demonstrably actions taken by the sovereign in furtherance of its internal policies. The *Exxon* court acknowledged that acts of state are "by nature distinctly sovereign, i.e., conduct that cannot be undertaken by a private individual or entity." *Id.*, 69 F. Supp. 3d at 88.

Plaintiff's theory in this case is predicated on acts that are, as expressly pleaded, state-sanctioned and government-directed. It is based entirely on the conduct of the Israeli military, government officials and government ministries.

Indeed, Plaintiffs named as defendants the Israeli Prime Minister, Benjamin Netanyahu, as well as a host of Israeli government officials, including from the Israeli Ministry of Defense. Plaintiffs allege that "Defendant Netanyahu and senior IMD officials have been violating Israel's criminal statutes by purposefully diverting government funds to illegal settlement." Am. Compl. at 8. Thus, unlike in *Exxon*, the scheme alleged by the Plaintiffs is not the product of a private individual or private entity. This is precisely the type of case for which the Act of State doctrine was designed. The Amended Complaint should be dismissed on this ground as well.

## D.       Plaintiffs' Claims Under the ATA Must Be Dismissed

*First*, as argued by BFP in its moving papers, the Justice Against Sponsors of Terrorism Act ("JASTA"), which amended the ATA, makes clear that secondary liability—based on conspiracy or aiding and abetting theories—is not available to the Plaintiffs here. JASTA provides that civil "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." JASTA § 4(a), *codified at* 18 U.S.C. §2333(d)(2). However, the injury claimed by the plaintiff must arise "from an act of international terrorism committed, planned, or authorized by an organization that *has been designated as a foreign terrorist organization* under section 219 of the Immigration and Nationality Act." *Id*. This statutory limitation on secondary liability disposes of Plaintiffs' ATA claim. Neither Israel nor the IDF nor any of the settlements or settlers have been "designated as a foreign terrorist organization."

Plaintiffs' opposition papers ignore this argument entirely, likely because they realize that there is no remotely plausible counter-argument to what is essentially statutory black-letter law. For this reason alone, the ATA claim must be dismissed. Having failed to respond to this argument, Plaintiffs should be deemed to have conceded the point.

*Second*, section 2333(a) requires that the complaint plausibly allege Plaintiffs' injuries occurred "by reason of" BFP's conduct. This requires a "showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *BCCI Holdings (Luxembourg), S.A. v. Khalil*, 214 F.3d 168, 173 (D.C. Cir. 2000). Plaintiffs must thus plausibly plead that BFP's tax-related work in the U.S. (obtaining tax-exempt status and filing tax returns for KFF and Bet El) was the proximate cause of the Plaintiffs' alleged injuries. The Amended Complaint, with its multi-step theory of causation, requiring, as it does, inference upon inference, does not come close to meeting this standard. Such a theory of causation has, in fact, been expressly rejected by the Supreme Court. *See Hemi Grp. v. City of New York*, 559 U.S. 1, 11 (2010).

Not being able to meet the "by reason of" standard, Plaintiffs rely instead on allegations of foreseeability. But the Supreme Court has explicitly rejected the theory of foreseeability in such cases. "Our precedents make clear that [where the statutory 'by reason of' language is present] the focus in on the directness of the relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* never even mentioned the concept of foreseeability." *Hemi*, 559 U.S. at 12.

Plaintiffs' reliance of *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010) is misplaced. In *Wultz*, the court held that proximate causation was plausibly alleged because the complaint "alleged a flow of money *directly* into the coffers of Palestinian Islamic Jihad (PIJ)— an organization entirely devoted to terrorist activity and, thus, an entity unlikely to use those funds for any other purpose." *Id.*, 755 F. Supp. 2d at 22 (citations omitted; emphasis in original). The link in *Wultz* was direct. No such link exists here.

Plaintiffs' attempt to distinguish *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), is to no avail. *Rothstein* held that plaintiffs had not sufficiently pled proximate cause because they did not and could not allege that the defendant bank, which had processed fund transfers to Iran, was a participant in the terrorist attacks that injured the plaintiffs, that the bank had provided money

directly to a designated terrorist organization, or that the bank's fund transfers were a but-for cause of the attacks. *Id.* at 97. The *Rothstein* Court also refused to credit allegations that the defendant bank "knew full well" that funding to Iran would facilitate terrorist attacks, stating that those were "conclusory allegations that do not meet *Twombly's* plausibility standard with respect to the need for proximate cause relationship." *Id*. The Amended Complaint here fails the proximate cause test for precisely the same reason. Indeed, the proximate cause argument with respect to BFP, an accounting firm whose only connection to the alleged "genocide" is that it prepared tax returns for defendants who donated money to Israeli organizations, is far more attenuated than in *Rothstein*.

Further, Plaintiffs' opposition does not at all address their failure to plausibly plead any "agreement" between defendant to support the "conspiracy" claim. The sum total of the "conspiracy" allegations as to BFP is that it "routinely [gave] illegal [tax] advice to donors intent on settlement expansion through theft of private property and the commission of war crimes." (Am. Comp. ¶ 21). But there is a total absence of a plausible pleading of any agreement between BFP and KFF (or any of the other defendants) to perform any illegal act. There is only the Plaintiffs' conclusory assertion, in support of which Plaintiffs offer no facts. The Amended Complaint does not state the requisite "specific time[s], place[s], or persons[s]" involved in any act in furtherance of the alleged conspiracy. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 565 (2007). The absence of any plausibly pled agreement renders the ATA conspiracy claim untenable.

Also, Plaintiffs do not address the lack in the Amended Complaint of any facts that could plausibly support any finding of the required knowledge or intent on the part of BFP. To demonstrate the requisite knowledge and intent, Plaintiffs would need to show that at the time when BFP provided tax advice to KFF and Bet El regarding their tax-exempt status, it knew that its clients were engaged in a conspiracy to fund war crimes and ethnic cleansing, and, moreover, intended that its tax advice would facilitate these crimes. There is exactly zero by way of non-

conclusory allegations to support this. All Plaintiffs offer by way of knowledge and intent is the trope: "they must have known." This is insufficient to plead knowledge and intent. *See Stutts v. De Deitrich Group*, 2006 WL 1867060, at * 1 (E.D.N.Y. June 30, 2006). For these reasons as well the ATA claim must be dismissed.

Finally, the ATA claims of non-U.S. plaintiffs must be dismissed under 18 U.S.C. § 2333(a), which expressly limits standing for claims of damages to "national[s] of the United States." *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1026 (W.D. Wash. 2005). None of the foreign Plaintiffs asserting claims under the ATA has standing to pursue such claims.

## E.   Claims Under the Alien Tort Statute Must Be Dismissed

In its moving papers, BFP demonstrated that the Supreme Court's decision in *Kiobel v Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1665 (2013) precludes Plaintiffs' claims under the Alien Tort Statute ("ATS"). Post-*Kiobel* cases have confirmed that the *Kiobel* Court "expressly held that claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Balitundo v. Daimler AG*, 727 F.3d 174, 189 (2d Cir. 2013); *In re S. African Apartheid Litigation*, 56 F. Supp. 3d 331, 336 (S.D.N.Y. 2014).

Plaintiffs ignore this history. The only post-*Kiobel* case that Plaintiff cite in support of their argument that the allegations against BFP are sufficient to satisfy the *Kiobel* standard are *Exxon*, 69 F. Supp.3d at 96, and *In re South African Apartheid*. Neither case supports the Plaintiffs' argument here.

Contrary to the Plaintiffs' argument, the *Exxon* Court did not rule that the allegations in that case were sufficient to rebut the post-*Kiobel* presumption against extraterritoriality. Rather, *Exxon* decided only that plaintiffs' motion to amend their complaint so as to replead their ATS

allegations should be granted in light of the Supreme Court's intervening decision in *Kiobel*. The

allegations in *Kiobel* were nearly identical to those rejected as insufficient for ATS liability in *Doe*

*v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015). In *Drummond*, the Eleventh Circuit held that:

> [W]here a Complaint alleges activity in both foreign and domestic sphere, an extraterritorial application of a statute arises *only* if the event on which the statute *focuses* did not occur abroad. Of course, the ATS *focuses* on the torts of extrajudicial killings and war crimes (violations of the law of nations), and in the *Balcero* case, the tort at issue occurred abroad, in Colombia, and *not* in the United States.

*Id.* (emphasis in the original). Plaintiffs do not address—or even mention—*Drummond* at all.

Plaintiffs' reliance on *In re South African Apartheid* is baffling. In that case, the Court

dismissed plaintiffs' ATS claim, holding that even where a parent corporation exercised control

over subsidiary corporations in apartheid South Africa, there was no viable ATS claim against

either parent of subsidiary under *Kiobel* "because all of the subsidiaries' conduct undisputedly

occurred abroad." *Id.*, 56 F. Supp. 3d at 338. The Second Circuit affirmed, *Balintulo v. Ford Motor*

*Co.*, 796 F.3d 160, 169 (2d Cir. 2015) (defendants' affirmative steps in this country are insufficient

to tie the relevant human rights violations to actions taken within the United States).

The violations of the law of nations alleged by the Plaintiffs took place only in Israel. BFP's

alleged wrongful conduct is providing tax advice to U.S.-based not for profit entities which,

consistently with the U.S. legal regime and U.S. government policies, raised funds for charity.

Under *Kiobel*, BFP's actions come nowhere near satisfying the *Kiobel* standard. Plaintiffs'

opposition papers do nothing to change this fact.

Further, in its moving papers, BFP demonstrated that the Supreme Court's recent decision

in *Jesner*, 138 S. Ct. 1386, makes clear that an ATS claim cannot be asserted against a corporation.

In *Jesner*, the Court stated that "absent further action from Congress it would be inappropriate for

courts to extend liability to foreign corporations, *id.* at 1403. While *Jesner* dealt with a claim

against a foreign corporation, the Court's rationale for its holding, discussed extensively in the majority opinion, leaves no doubt that it applies equally to domestic corporations. As the Court stated: "This caution [of creating legal remedies absent an act of Congress] extends to the question whether the courts should exercise judicial authority to mandate a rule that imposes liability upon artificial entities like corporations." *Id*. at 1402-03.

Plaintiffs' opposition papers do not address *Jesner* at all. By their silence Plaintiffs concede that the ATS claim must be dismissed under *Jesner* as well.

**F.      Failure by Most Plaintiffs to Allege Concrete and Particularized Injuries Mandates Dismissal of Their Claims**

As argued in BFP's moving papers, collective allegations of damages do not meet the standard for Article III standing. To state a claim, each plaintiff must "assert a distinct, individual injury." *Akins v. Fed. Election Comm'n*, 101 F.3d 731, 737 (D.C. Cir. 1996). Injury must be "concrete and particularized," as well as "actual or imminent, nor conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The Amended Complaint does not allege any particular injury to most of the Plaintiffs, Rather, it alleges that Plaintiffs, collectively, "have been injured by the aforementioned $2 billion money laundering scheme and illegal criminal activity which has been committed in the OPT on a daily basis;" (Am. Comp. ¶ 37) and that "[a]s a result of these Defendants participating in this civil conspiracy, the Plaintiffs and their relatives have been injured….") (Am. Comp. ¶ 106). This kind of "collective" damages pleading does not confer standing under Article III of the Constitution.

Plaintiffs' opposition offers nothing by way of law or fact to overcome their lack of standing. Plaintiffs' selective quotation from the *Akins* decision is misleading and incorrect. The full quote is to an analogy: "a government contractor allegedly wrongfully deprived of information

made available at the time bids were due, would suffer a particularized injury even if other bidders also suffered injury." 101 F.3d at 737. The Court was analogizing to a situation where the same facts suffice to create the same particularized injury for all bidders, a pattern clearly distinguishable from this case.

Plaintiffs' citation to *Pub. Citizen, Inc. v. National Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007) is entirely off base. That case involved a challenge to a regulation that plaintiffs claimed increased the risk of harm in auto accidents. The claim was dismissed for lack of standing. The Court simply said that where there is a mass tort based on the same event or cause, the same set of allegations *could* support standing for multiple plaintiffs. That does not support Article III standing in this case at all.

The moving papers showed that the Amended Complaint does not allege any concrete, particularized individual injury for any of the following 23 Plaintiffs: Susan Abulhawa, Abdur-Rahim Duhar, Linda Masour, Muhammad Jihad Muhammad Al-Qara, Muhammad Suleiman Mahmoud Baraka, Saad Malley, Sami Shawqi Ahmed Madi, Tagrid Eleyan Mahmoud Abu-Teer, Waddah Khalid Sofan, Wala'a Jihad Muhammad Al-Qara, Zeinab Safwat Abd Abu-Teer, Mahnmoud Ahmed Al-Bur'l, Alhmad Kamal Ibrahim Suleiman Abu-Teer, Ahmad Suleiman Mahmoud Sahmour, Ahmed Abdullah Muhammad Abu-Salah, Ali Abd Suleiman Abu-Teer, Ashraf Abu-Rahma, Basem Ibrahim Ahmed Abu Rahmeh, Hanafi Mahmoud Kamel Abu-Yousef, Ibrahim Khalil Suleiman Qablan, Ibrahim Suleiman Qablan Abu-Qablan, Ismail Mahmoud Muhhamad Abu-Dharifa, Jawad Issa Ibrahim Salamah Al Horoob, Jawaher Ibrahim Abu-Rahmeh. The claims of all these Plaintiffs must be dismissed for lack of Article III standing.

**G.      Claims of Deceased Plaintiffs Must Be Dismissed for Lack of Standing**

In its opening motion papers, BFP demonstrated that its counsel's research reveals that at least 13 of the Plaintiffs named in the Amended Complaint are actually dead and that nowhere in the Amended Complaint is there any indication that a representative for any of the deceased Plaintiffs' estates has been appointed by any judicial authority.

As shown in the opening motion papers, deceased persons do not have standing to sue in their own name simply because a lawyer decided to name them as plaintiffs. If there is such a claim, it belongs to their respective estates, as represented by duly authorized administrators or their equivalents.

Plaintiffs' opposition ignores this argument entirely, thus, effectively conceding that there is a complete lack of standing as to the claims of the deceased Plaintiffs and these claims should be dismissed.

**H.      Plaintiffs' Claim for Aiding-and-Abetting Tax Fraud Must Be Dismissed**

Plaintiffs' opposition papers utterly ignore BFP's argument that plaintiffs cannot maintain their Fourth Cause of Action, asserted against BFP only, for aiding and abetting tax fraud.

In its opening motion papers, BFP demonstrated that a private cause of action under U.S. tax laws does not exist, that private citizens cannot enforce the provisions of the Tax Code. *See Seabury v. City of New York,* No. 06 Civ. 1477 (NGG), 2006 WL 1367396, at * 5 (E.D.N.Y. May 18, 2006); *Spilky v. Helphand*, No. 91 Civ. 3045 (PKL), 1993 WL 159944, at * 4 (S.D.N.Y. May 11, 1993) ("there is no evidence that Congress intended to provide a private cause of action under the Internal Revenue Code for an employee who alleges that his employer failed to make the required withholdings and contributions"); *Perrin v. Vuliai*, 2016 WL 795900, at * 2 (E.D. Mich. Feb. 29, 2016) (The IRS, and not private citizens, are in charge of enforcing the tax code).

BFP's motion papers further demonstrated that, under settled law, Plaintiffs' claim against BFP for aiding and abetting tax fraud allegedly committed by Bet El and KFF fails for lack of standing. Aiding and abetting is a derivative claim that depends on an underlying actionable tort. *Ali v. Mid-Atlantic Settlement Serv., Inc.*, 640 F. Supp.2d 1, 9 (D.D.C. 2009). Plaintiffs' attempt to circumvent the proscription against private causes of action for tax fraud by pleading an "aiding and abetting" claim thus fails as a matter of law. Plaintiffs have no standing to assert a tax fraud claim against KFF or Bet El. Consequently, they have no standing to assert an aiding and abetting claim against BFP. Plaintiffs simply ignore, and therefore concede, this argument.

Plaintiffs also ignore, and therefore concede, BFP's argument that they have utterly failed to plead the claim of aiding and abetting fraud with the requisite degree of particularity. Civil liability for aiding and abetting requires "proof of (1) a wrongful act causing an injury by a party aided by the defendant; (2) the defendant's knowledge of his role as part of an overall illegal or tortious activity at the time that he provided assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002).

Plaintiffs' opposition papers do not address their failure to plausibly allege that they had suffered an injury as a direct and proximate result of KFF's and Bet El's obtaining a tax-exempt status. The opposition papers do not even attempt to demonstrate that the nexus between the filing of KFF's and Bet El's tax returns in the U.S. and the "war crimes" and "genocide" alleged by Plaintiffs as their injury is anything other than attenuated and implausible. Plaintiffs do not—and cannot—demonstrate that BFP had knowledge of any improper use of the charitable donations at the time when it provided its workaday tax advice or filed Form 990s. Plaintiffs' standard refrain, "they had to know," does not meet the "knowledge" standard.

In short, Plaintiffs have simply ignored this aspect to BFP's argument in *toto*, and therefore

concede BFP's arguments. They have nothing to say in support of this cause of action. Plaintiffs'
Fourth Cause of Action for aiding and abetting tax fraud should be dismissed.

## I.      Plaintiffs' Negligence Claim Must Be Dismissed

Plaintiffs' one-paragraph argument in defense of its Fifth Cause of Action for negligence
against BFP is incomprehensible. As best as it can be deciphered, it does nothing but state the
standard for negligence—which is undisputed, and which also demonstrates the utter futility of
this claim.

As demonstrated in BFP's opening motion papers, the law of negligence liability to third
parties is straightforward:

> [T]he law of the District of Columbia is that a supplier of information may be liable
> to a third party when he provides information directly to a third party or indirectly
> for the benefit of a *specific* third party… Essentially, the District of Columbia has
> followed the Restatement of Torts in limiting liability to injury suffered by a person
> or one of a limited group of persons for whose benefit and guidance defendant
> intends to supply the information or knows that the recipient intends to supply it.

*Folz v. U.S. New & World Report, Inc.*, 627 F. Supp. 1143, 1177-78 (D.D.C. 1986). (quotations,
citations omitted; emphasis in original).

The Amended Complaint fails to plead that whatever tax advice BFP provided to KFF and
Bet El, and whatever tax forms it filed with the IRS on their behalf, were intended "for the benefit"
or "guidance" of any of the Plaintiffs. Such a pleading, if made, would be not only implausible but
highly irrational. Consequently, since no duty can possibly be owed by BFP to any of the Plaintiffs,
the claim of negligence cannot be maintained.

Plaintiffs' opposition papers, as they do with much of BFP's motion, ignore this argument
and the settled law on which it is based, and therefore concede the argument. Plaintiffs' Fifth Cause
of Action must be dismissed.

## **CONCLUSION**

For the foregoing reasons, all of Plaintiffs' claims against Defendant BFP should be dismissed.

Dated:   New York, New York
         July 2, 2019

                                        Respectfully submitted,

                                        RIVKIN LAW GROUP pllc
                                        *Attorneys for Defendant Billet Feit & Preis P.C.*

                                        By: _____

                                             Oleg Rivkin

                                        800 Third Avenue, Suite 2501
                                        New York, New York 10022
                                        (212) 231-9776

                                        THE BERKMAN LAW OFFICE, LLC
                                        *Attorneys for Defendant Biller Feit & Preis P.C.*
                                        By: Robert J. Tolchin
                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        718-855-3627

OF COUNSEL:

NITSANA DARSHAN-LEITNER & CO.
*Israeli counsel for the defendant Billet Feit & Preis P.C.*
By: Nitsana Darshan-Leitner, Adv.
10 Hata'as Street
Ramat Gan, 52512 Israel

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served via ECF on all counsel of record herein:

Dated:   New York, New York
       July 2, 2019

_____
Oleg Rivkin

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------------- X

MIKO PELED, *et al.*,

                        Plaintiff,                      Docket No:

           -against-                         1:17-CV-260 (RBW)

BENJAMIN NETANYAHU, *et al.*,

                       Defendants.

-------------------------------------------------------------------- X

### **[PROPOSED] ORDER**

Upon consideration of Defendant Billet Feit & Preis P.C.'s Motion to Dismiss the Amended Complaint, and all responses and replies thereto, it is

**ORDERED** that Defendant's Motion is **GRANTED** in its entirety with prejudice an the Clerk shall enter judgment dismissing this action as against the Defendant Billet Feit & Preis P.C.


Dated: _____, 2019


                                 _____
                                 REGGIE B. WALTON
                                 United States District Judge