UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MIKO PELED, et. al.,

    *Plaintiffs*

v.                                     CIVIL ACTION
                                       NO. 1:17-cv-00260 (RBW)

BENJAMIN NETANYAHU, et. al.,

    *Defendants*

## MOTION TO AMEND THE COMPLAINT

Plaintiffs hereby move, pursuant to Fed. R. Civ. P. 15(a) to amend the complaint with the tendered amended complaint included with this motion.

## BACKGROUND

This Court gave Plaintiffs leave to amend only once on June 16, 2017 for minor procedural reasons. Motions to dismiss were filed by all remaining Defendants. Four months later, this Court entered an order granting Plaintiffs' motion to stay the proceedings pending the appeal of Al-Tamimi v. Adelson, No. 1:16-cv-0445. ECF Dkt. 53. The Court of Appeals reinstated Al-Tamimi, and this Court lifted the stay on March 1, 2019 and ordered Defendants to file new motions to dismiss or reinstate prior motions the following month. ECF Dkt. 55 and Minute Order, April 2, 2019. The Court entered multiple orders on November 13, 2019, February 3, 2020, June 16, 2020, October 2, 2020, January 11, 2021, and April 22, 2021, requiring additional time to evaluate pending motions.

On June 5, 2021, Plaintiffs' then-primary counsel, Martin McMahon, died. Nearly two weeks after Mr. McMahon died, the Supreme Court issued its ruling in Nestle USA, Inc. v. Doe, 141 S. Ct. 1931 (2021). Defendants filed cursory notices of supplemental authority in support of their pending motions to dismiss. ECF Dkts. 77 and 79.

Most Plaintiffs, living in one of two besieged enclaves in Palestine that are under Israeli military rule and in the midst of armed conflict whose hardships have been caused partly by Defendants, were not aware that their counsel had died, and prior counsel had not left clear instructions or contact information to reach Plaintiffs. U.S.-based Plaintiffs and volunteer attorneys were dispatched to find counsel competent in the niche areas of international human rights litigation in U.S. courts, track down remaining Plaintiffs, confirm representation for those Plaintiffs that sought to continue litigating their claims, and enter appearances. While several attorneys had entered appearances for Plaintiffs, this Court granted their withdrawal for reasons previously discussed at length; until current counsel were admitted, Plaintiffs remained without representation.[1] Current counsel for Plaintiffs entered appearances for remaining Plaintiffs by June 17, 2022. Over the course of litigation, Counsel counts at least thirteen occasions on which Defendants requested and received an extension of time. See ECF Dkts 6, 12, 16, 17, 22, 25, 28, 44, 47, 51, 57, 65, and 66. At this Court's order, Plaintiffs filed a supplementary response to Defendants' notice of supplementary authority regarding Nestle with this motion.

In the midst of these developments in the case, several other events took place. On April 27, 2021, Human Rights Watch released a report entitled "A Threshold Crossed: Israeli Authorities and the Crimes of Apartheid and Persecution," arguing that the facts underpinning

---

1  See Plaintiffs' Response to Defendants' Notice, ECF Dkt. 111, at 2-4, for a summary.

the allegations in this complaint constitute the Crime of Apartheid.[2] On February 1, 2022, Amnesty International followed with a similar report.[3]

The interests of justice weigh heavily in favor of permitting Plaintiffs to re-plead, where Plaintiffs identify a legal pathway to a viable claim pursuant to Nestle and where the delay is the result of factors outside of Plaintiffs' control, including changes to governing law; where the hardship caused by delay harms both parties; where further delay is not disproportionate given the nature of the underlying litigation; and where existing delays thusfar have also been the result of factors out of Plaintiffs' control, including prior counsel's death, delays resulting from a stay pertaining to separate proceedings, delays stemming from this Court's need for more time, and delays caused by Defendants' motions.

## ARGUMENT

**This Court should grant Plaintiffs' motion to amend the Complaint where Nestle and Jesner changed pleading standards and viable defendants, where intervening reports indicate the viability of claims pertaining to allegations of Apartheid, where Plaintiffs have identified a new basis for liability under the same facts (RICO), and where judicial economy would be served by amendment, and where denial would constitute an abuse of discretion where there are no unjust reasons for the amendment.**

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." Furthermore, it is an abuse of discretion to deny leave to amend absent "any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

---

2   Human Rights Watch, A Threshold Crossed (2021), available at https://www.hrw.org/report/2021/04/27/threshold-crossed/israeli-authorities-and-crimes-apartheid-and-persecution.

3   Amnesty International, Israel's Apartheid Against Palestinians (2022), available at https://www.amnesty.org/en/latest/campaigns/2022/02/israels-system-of-apartheid/.

etc." Foman v. Davis, 371 U.S. 178, 182. The standard for leave to amend under Rule 15(a) is considerably less stringent than that pertaining to Rule 59(e), which is discretionary and need not be granted "unless the district court finds that there is an intervening change of controlling law [or] the availability of new evidence…". Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal citations omitted). Plaintiffs' motion to amend the complaint satisfies even this stricter standard.

**1) Jesner and Nestle affirm that U.S. corporations, but not Israeli ones, can be held liable under the ATS and clarified the pleading standards to overcome the "presumption against extraterritoriality."**

The Nestle decision is not only significant because it establishes both the viability of corporate liability claims against the kinds of activities alleged against Defendants. It is also significant because, in conjunction with Jesner, it establishes the standards of pleading for U.S.-based ATS defendants independently of foreign ones. After Jesner, some legal authorities concluded that any and all corporate liability claims under the Alien Tort Statute were not viable. See, e.g. Doe v. Nestle, ECF Dkt. No. 259, Case No. 2:05-cv-05133-SVW-MRW (9th Cir. 2019) (J. Bennett, dissenting). But the intervening ruling in Nestle indicated otherwise. Rather, Nestle held that U.S. corporate defendants can be held liable, and clarified the pleading standards accordingly. That is, Nestle clarifies what Plaintiffs must allege against U.S.-based Defendants specifically and independently of foreign actors. For this reason alone, the Court should permit Plaintiffs leave to amend the complaint to distinguish between Israeli and U.S. Defendants and their role in the conspiracy.

Prior to the Supreme Court's grant of certiorari in Nestle, the Ninth Circuit, which had already separately held that the RJR Nabisco test applies to ATS claims, ruled that Nestle

plaintiffs had alleged claims that were minimally sufficient to constitute more than general corporate activity, where those plaintiffs alleged that Nestle defendants had also provided what appeared to be "kickbacks" to foreign corporations complicit in underlying international law violations. The Ninth Circuit concluded that this "narrow set of domestic conduct is relevant to the ATS's focus". Id. The Ninth Circuit then specifically granted Plaintiffs leave to re-plead:

> The operative complaint names several foreign corporations as defendants, and plaintiffs concede those defendants must be dismissed on remand [due to Jesner]. The operative complaint also discusses defendants as if they are a single bloc – a problematic approach that plaintiffs would do well to avoid. In light of Jesner, it is not possible on the current record to connect culpable conduct to defendants that may be sued under the ATS...**We are mindful that this case has lingered for over a decade, and that delay does not serve the interests of any party. But we cannot conclude that amendment would be futile, so we remand with instructions that plaintiffs be given an opportunity to amend their complaint. On remand, plaintiffs must remove those defendants who are no longer amenable to suit under the ATS, and specify which potentially liable party is responsible for what culpable conduct.** Id. at 14.

While the Supreme Court granted certiorari and dismissed on the much narrower grounds of whether the alleged "kickbacks" were more than general corporate activity, Plaintiffs are in the same posture as Nestle Plaintiffs after the Ninth Circuit ruling: the intervening rulings of Jesner and Nestle (or, in the Nestle case itself, of RJR Nabisco) warrant leave to re-plead to distinguish actions of foreign and U.S. defendants with sufficient specificity.

Plaintiffs recognize that where Defendants here acted as part of a singular ideological conspiracy, the distinction may be irrelevant: U.S. corporate defendants, insofar as they agreed to the underlying scheme, are liable irrespective of which specific criminal acts they financed and regardless of to what extent Israeli co-conspirators participated. Furthermore, Plaintiffs do not

believe, given the distinction between this case and Nestle, which did not involve a larger conspiracy to carry out international law violations, that Plaintiffs need to match any particular corporate act to a particular act by Israeli settlers, let alone at this stage of litigation. Nonetheless, where non-U.S. defendants can no longer be held liable for ATS claims pursuant to Jesner and where U.S. defendants can, this Court should permit Plaintiffs to re-plead in order to specify the role that U.S. defendants played independently of Israeli ones.

As the Court is aware, this requires extensive re-pleading. Most of the paragraphs in the existing complaint did not distinguish between Israeli and U.S. conspirators, as such a distinction was legally not relevant at the time the complaint was drafted.

**2) Human Rights Experts' Reports on the Crime of Apartheid Warrant Amendment.**

While Plaintiffs have already alleged Defendants' corporate liability for multiple violations of international law, including genocide and war crimes generally, Plaintiffs seek to expand the complaint's discussion of the crime of Apartheid. To be sure, allegations of apartheid are already included in the existing complaint. See e.g. Compl. at 7-8, 15, and ¶¶s 19, 29.

Nonetheless, a seismic legal shift has taken place in the intervening time regarding the legal consensus at to whether the actions underpinning this complaint constitute the crime of Apartheid. Specifically, the aforementioned reports by Human Rights Watch and Amnesty International provide extensive detail regarding the scope and nature of apartheid against Palestinians in the West Bank, including Plaintiffs. Plaintiffs seek to re-plead with a greater discussion of this new legal consensus regarding how Defendants' actions constitute support for this international crime specifically.

As such, this version of the complaint more fully explains how the allegations against Defendants constitute complicity in Apartheid.

**3) Adding RICO Claims**

Plaintiffs have already plead facts establishing multiple forms of liability for Defendants. However, the amended complaint also includes a section establishing that Defendants are liable under RICO. The existing complaint already makes out most of the predicate acts required to properly state a RICO civil claim (including alleging mail fraud, etc.). In our view, RICO is a viable basis to state a claim for much of the same conduct that has already been alleged.

**4) Judical Economy**

Lastly, we note that this Court has delayed ruling on the underlying merits repeatedly and stated the need for more time. While we recognize that the issues raised in this litigation are inherently complex, we also consider that the length of time necessary may be due to the fact that the current complaint is at times redundant or excessively long. The amended complaint, while including the same substantive claims against Defendants minus those that are no longer legally viable due to intervening case law, is considerably shorter and more straightforward.

**5) Denying Motion to Amend Would Constitute an Abuse of Discretion**

Where motions to amend should be granted as a matter of right where justice requires absent any of the kinds of reasons listed in <u>Foman</u>, this Court must grant the motion to amend. Where Plaintiffs have cited entirely legitimate reasons to justify amending, including those such as legal changes which would satisfy even the much stricter standard for amendment under Rule 59, there is no reason to deny amendment.

Thusfar, delays have primarily been due to several reasons beyond the control of Plaintiffs: a stay required by an intervening ruling in the <u>Tamimi</u> case; the death of prior counsel; and numerous requests for more time from opposing counsel. While this amended complaint took slightly longer than expected by one or two weeks, such delays are minimal compared to the delays caused by opposing counsel and by intervening events.

Furthermore, counsel argues that the length of the current litigation thus far, even with delays that were out of our control, is not so long. Indeed, the as the Court of Appeals ruled in <u>Nestle</u>, that case had lingered for over a decade – in fact, it lasted some sixteen years before it was finally resolved. Other ATS cases are of similar lengths. <u>Kiobel v. Royal Dutch Petroleum Co.</u>, Case No. 02-cv-7618-KMW-HBP (SDNY 2002) lasted over a decade. <u>Presbyterian Church of Sudan, et. al  v. Talisman</u>, Case No. 07-0016 (SDNY 2001) similarly lasted over eight years.

We note in passing that the Court has previously rejected Defendants' specious arguments about undue delay even when delay clearly outweighed any alleged harms to Defendants:

> ...[A] stay of the proceedings in this case will promote the interests of judicial economy and efficiency. Furthermore, the damage defendants Billet Feit & Pries P.C. and the Kushner Family Foundation specifically assert they will incur if the Court grants the plaintiffs' stay request does not outweigh the Court's judicial economy interest. As noted earlier, Billet Feit & Pries P.C. argues that it "must patiently sit and wait its turn to have the [plaintiffs'] claims against it dismissed," and the Kushner Family Foundation contends that it will incur increased time and litigation costs if this case is stayed pending the Al-Tamimi appeal...**However, the defendants' inconvenience of waiting for the resolution of the Al-Tamimi appeal does not exceed the benefits of judicial economy and efficiency derived** from a stay of the proceedings in this case. Moreover, the Court is perplexed as to how the Kushner Family Foundation will incur increased litigation expenses and costs if the proceedings in this case are stayed, as it will not be required to further participate in this litigation until the Al-Tamimi appeal is resolved. Therefore, the

Court does not find merit in this argument. Additionally, **the Kushner Family Foundation claims that its reputation will continue to be harmed throughout the stay if the plaintiffs' request for the stay is granted. But, it has not explained how its reputation is already being harmed or will be harmed in the future more than the potential reputational harm associated with any party defending against a lawsuit.** (ECF Dkt. No 53 at 4-5, internal citations omitted, emphasis added).

Plaintiffs emphasize that to the extent delay causes any harm, it causes that harm equally: Plaintiffs have been waiting years for resolution and justice for serious atrocities for which Defendants are liable. Any delay is therefore regrettable to Plaintiffs as it may be to Defendants. Nonetheless, any delay caused by an entirely valid amendment to the complaint is not undue.

## CONCLUSION

This Court should GRANT Plaintiffs' motion to amend the complaint by accepting the tendered complaint attached to this motion.

Respectfully submitted this 8th Day of August, 2022,

/s/ Amith Gupta
Amith Gupta, Counsel for Plaintiffs
American Trial Law Litigators, LLC
925B Peachtree St. NE, Unit 2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+law@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2022, I electronically filed the foregoing MOTION TO AMEND THE COMPLAINT with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Amith Gupta
Amith Gupta, Counsel for Plaintiffs
American Trial Law Litigators, LLC
925B Peachtree St. NE, Unit 2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+law@gmail.com