**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

MIKO PELED, et. al.,

       *Plaintiffs*

   v.                                          **CIVIL ACTION**
                                                  **NO. 1:17-cv-00260 (RBW)**

BENJAMIN NETANYAHU, et. al.,

       *Defendants*

### SUPPLEMENTAL MEMORANDUM TO PLAINTIFF'S PRIOR RESPONSE TO DEFENDANT'S SUPPLEMENTARY AUTHORITY

Where Defense Counsel articulated statements and legal authorities pertaining to Nestle during the Court's September 2, 2022 status hearing that were not mentioned in any of Defendants' prior filings regarding the matter, Plaintiffs hereby file this additional supplementary brief to address Defendants' belated arguments and to confirm that they are, as alleged on the call, total misstatements of the law.

Plaintiffs herein also address the matter of resolving pending motions, including Plaintiff's motion to amend, in the same manner as in Al-Tamimi v. Adelson, No. 1:16-cv-445, in which undersigned counsel is not involved, suggested for the first time by Defense Counsel today during the conference call and unmentioned in any of their three previous filings on the matter. See ECF Dkt Nos. 121, 122, and 125. **Plaintiffs thereby take this first available opportunity to note for the Court that there is no pending motion to amend the complaint in Tamimi, calling into question the appropriateness of deciding pending motions in this case in a like manner.**

1

At the outset, we note that despite multiple opportunities to address the underlying case law and effects of Nestle, Defendants have provided no discernible legal argument whatever in any of their prior filings, and **today's call is the first instance** in which Defendants have referenced Jam v. Int'l Finance Corp., 3 F. 4th 405, 411 (D.C. Cir. 2021).[1] Given Defendants' numerous opportunities to address the substance of the matter, we consider Defendants' choice of timing to be unfair. **Nonetheless, like in Nestle, nothing in Jam holds that the gravamen or focus of an Alien Tort Statute claim for aiding and abetting is the underlying tort itself.**

## ARGUMENT

As Plaintiffs explained in ECF Dkt. 116 at 4, Nestle intentionally avoided deciding the question of whether the focus of an Alien Tort Statute claim for aiding and abetting an international law violation for abuses that took place outside of the United States is conduct that directly caused an injury (which would outside the United States), or conduct that violates international law itself, which can include activities that took place in the United States in that aiding and abetting a crime is itself a violation of international law. The relevant passage in full is:

> The parties dispute what conduct is relevant to the "focus" of the ATS….Arguing that aiding and abetting is not even a tort, but merely secondary liability for a tort, petitioners and the United States contend that 'the conduct relevant to the [ATS's] focus' is

---

[1]    Specifically: Defendants' prior supplementary memorandum regarding Nestle provides no mention of any additional case law at all, and simply provides the Defendants' interpretation of the rule in Nestle without applying the law to the facts alleged in this case. ECF Dkt. No. 74. Defendants' subsequent reply to Plaintiff's response does not mention any case law at all, with the exception of Defense Counsel's inappropriate and bizarre reference to Brown vs. Bd. of Education of Topeka, et. al., 347 U.S. 483 (1954). ECF Dkt. No. 121 ("Mr. Gupta's assertions are the equivalent of arguing that the decision in Brown 'concretely establishes' the 'viability' of the 'separate but equal' doctrine."). As is obvious, this case analogy is not about the applicable law itself, but rather Defense Counsel's assertion that we misunderstand that law.

the conduct that directly caused the injury...All of that alleged conduct occurred overseas in this suit...For their part, respondents argue that aiding and abetting is a freestanding tort and that courts may create a private right of action to enforce it under the ATS. They also contend that the "focus" of the ATS is conduct that violates international law, that aiding and abetting forced labor is a violation of international law, and that domestic conduct can aid and abet an injury that occurs overseas. **Even if we resolved all these disputes in respondents' favor**, their complaint would impermissibly seek extraterritorial application of the ATS. Nearly all the conduct that they say aided and abetted forced labor— providing training, fertilizer, tools, and cash to overseas farms— occurred in Ivory Coast. The Ninth Circuit nonetheless let this suit proceed because respondents pleaded as a general matter that "every major operational decision by both companies is made in or approved in the U. S." But allegations of general corporate activity —like decisionmaking—cannot alone establish domestic application of the ATS.

Nestle at 1936-1937 (emphasis added; internal citations omitted).

As the plain language in the citation above indicates, the Nestle Court **explicitly refused** to determine whether the focus analysis of an Alien Tort Statute claim alleging domestic conduct that aids and abets violative conduct overseas is on the location of the aiding and abetting conduct or the underlying conduct. Instead, the case simply decided that even assuming the focus is domestic aiding and abetting conduct, Nestle plaintiffs' allegations were insufficient insofar as the conduct alleged in that particular case was "general corporate activity". See ECF Dkt. No. 116 at 4, Nestle at 1936-1937. In ruling so, the Supreme Court disagreed with the Ninth Circuit that the alleged use of kickbacks constituted something more than general. Id. at 4-6, Nestle at 1937.

But during today's status conference, Defense Counsel stated,

"[Plaintiff's argument] is a gross perversion of what the Nestle decision's impact was. The Nestle decision wasn't favorable to the Plaintiffs. This circuit has even commented on it. The point of the

3

Nestle decision is that the Court needs to examine whether the gravamen of the conduct, the focus or the gravamen of the conduct complained of occurred overseas. In that case, they made all kinds of allegations also about events that occurred in this country, all the financing decisions and so on. The court said, 'That's not enough. The focus is on what happens in Israel– err, overseas.' In this case, the focus of the complaint is clearly on claims of what happened in [the West Bank]. They are false claims. They are outrageous claims. They're bigoted claims. But they're claims about what happened in [the West Bank]. That's the gravamen of the complaint. Nothing about Nestle requires an amended complaint at this point."[2]

Following Plaintiff's counsel's attempt to correct Defense Counsel, Defense Counsel continued:

"[Plaintiffs' Counsel] said what I said is an absolute mischaracterization of the case. I ask the court, when it has the chance, to look at a decision from this circuit. Jam v. Int'l Finance Corporation 3 F.4th 405. Particularly at page 411, in which Judge Randolph quotes from the Nestle decision and makes it clear that the impact of the Nestle decision is the court must focus on where the gravamen or the harm occurred. That's exactly what Nestle said."

Needless to say, Defense Counsel is confusing the question of whether courts are directed to look at the focus/gravamen of a statute when determining if it is impermissibly being applied extraterritorially (we agree that Nestle does apply this "focus test" to the Alien Tort Statute) with the separate question of whether the focus of an ATS claim based on aiding and abetting is the underlying overseas harm/tort or the domestic aiding and abetting activity (Nestle did not decide that).

Unsurprisingly, the D.C. Circuit Court did not make the same plain error as Defense Counsel in the case he cites. As an initial matter, the opinion Defense Counsel cites, Jam v. Int'l

---

2       Plaintiff's Counsel's quotations of all discussion from today's status conference are based on Plaintiff's Counsel's computer audio recording, available to the Court upon request.

Finance Corporation, 3 F. 4th 405, 411 (D.C. Cir. 2021) (J. Randolph, concurring) is a concurring opinion to a Circuit decision that has nothing to do with the Alien Tort Statute at all. While the concurring opinion references the decision in Nestle, the binding decision addresses a related question of applying the focus test to generalized claims of "negligence" and "nuisance". The case references no international law-related torts such as those that are made actionable under the Alien Tort Statute based on Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) (recognizing a right of action for a small subset of international law violations under the Alien Tort Statute). **This is important, of course, because the focus of a particular statute depends on what that particular statute regulates; Defense Counsel's conflation of "focus" with "locus delicti" elides this distinction.** See RJR Nabisco, Inc. v. European Cmty, 579 U.S. 325, 336-338 (2016) (discussing the general process of applying the focus test for extraterritorialty by looking at the conduct relevant to a particular statute's focus).

Nonetheless, even the concurring opinion in Jam, which does reference Nestle and the Alien Tort Statute, does not repeat Defense Counsel's erroneous interpretation:

> A few days ago, before we issued this opinion, the Supreme Court decided Nestle. Justice Thomas's opinion for the Court in Nestle reinforces Judge Rogers' opinion for our court in this case. **Nestle answered this question — did plaintiffs "establish that 'the conduct relevant to the [Alien Tort Statute's] *focus* occurred in the United States.'** Our decision answered the question whether the "*gravamen* " of Jam's suit was the defendant's activity in the United States. The two statutes are different but the analysis is the same. It is the same because in this context there is no meaningful distinction between "focus" and "gravamen." The Nestle plaintiffs alleged that the company aided and abetted forced labor in Ivory Coast by providing farms with resources "in exchange for the exclusive right to purchase cocoa." Knowing that the Alien Tort Statute lacks extraterritorial reach, the plaintiffs claimed that Nestlé "made all major operational decisions from within the United States." As the Ninth Circuit put it, "the [plaintiffs] had

> pleaded a domestic application of the [statute] ... because the 'financing decisions originated' in the United States." The Supreme Court disagreed. The Court stressed that "[n]early all the conduct that [the plaintiffs] say aided and abetted forced labor — providing training, fertilizer, tools, and cash to overseas farms — occurred in Ivory Coast." While the plaintiffs "pleaded as a general matter that 'every major operational decision by [Nestlé] is made or approved in the U.S.[,] ... **allegations of general corporate activity — like decisionmaking — cannot alone establish domestic application of the [statute]."...The same is true here.**"
>
> <u>Jam</u> at 411 (J. Randolph, concurring) (internal citations omitted; bold emphasis added; italics in original).

Simply, the <u>Jam</u> opinion, like the original <u>Nestle</u> opinion, states only that general corporate activity is not enough to establish sufficient domestic conduct even assuming <u>arguendo</u> that the focus of an ATS-based aiding and abetting claim is the corporate aiding and abetting activity itself.

Hence, the only question for the court is whether the corporate conduct <u>in this case</u> is more than "general" or "generic". And it is, for the reasons already explained at length in ECF Dkt. No. 116 at 6-10 (the alleged settlement-related activity is necessarily criminal, rather than funding provided in a legitimate corporate transaction in which the other party may or may not be committing a crime; that the conduct was ideologically motivated by a shared agenda of accomplishing unlawful and violative goals, rather than, say, regular business interests; and because the alleged funding transactions are independently unlawful under U.S. and Israeli law).

Insofar as the pending motions to dismiss and the viability of an amended complaint hinge on this question, nothing in <u>Nestle</u> prevents this suit from going forward and, insofar as <u>Nestle</u> requires more than "general corporate conduct" to allege a viable corporate aiding and

abetting claim under the ATS, the conduct alleged is plainly far more than the generic business transactions between firms in <u>Nestle</u>.

Furthermore, as explained in Plaintiffs' motion to amend, even were the Court to determine otherwise based on any confusion within the existing complaint (such its current lack of distinction between U.S. and foreign Defendants), the case law cited above plainly indicates that amendment is not futile insofar as the rule in <u>Nestle</u> is concerned. <u>See</u> ECF Dkt. No. 120 at 5-6.

## CONCLUSION

Defendants' motions to dismiss should be denied.

Respectfully submitted this 3rd Day of September, 2022,

<u>/s/ Amith Gupta</u>
Amith Gupta, Counsel for Plaintiffs
American Trial Law Litigators, LLC
925B Peachtree St. NE, Unit 2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+law@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 1, 2022, I electronically filed the foregoing

SUPPLEMENTAL MEMORANDUM TO PLAINTIFF'S PRIOR RESPONSE TO

DEFENDANT'S SUPPLEMENTARY AUTHORITY with the Clerk of Court by using the

CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Amith Gupta
Amith Gupta, Counsel for Plaintiffs
American Trial Law Litigators, LLC
925B Peachtree St. NE, Unit 2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+law@gmail.com