**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MIKO PELED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FRIENDS OF BET EL INSTITUTIONS,[1] et al.,<br><br>Defendants. | ) | Civil Action No. 17-260 (RBW) |

## MEMORANDUM OPINION

The plaintiffs,[2] "U.S. Citizens, Palestinian Nationals, and Palestinian and Jewish Americans," bring this civil action against the defendants, two U.S.-based tax-exempt entities and an accounting firm. See Complaint for Injuries Directly Arising as a Result of the War Crimes Committed, Encouraged, or Financed by the Defendants ("Am. Compl.") at 6–7, 14,

[1] The plaintiffs originally brought this case against five additional defendants: Benjamin Netanyahu, Ehud Barak, Avigdor Lieberman, Tzipi Livni, and David Friedman. The claims against those defendants have been voluntarily dismissed without prejudice. See Minute ("Min.") Order (July 1, 2019); see also Notice of Voluntary Dismissal of Certain Defendants at 1–2, ECF No. 69.

[2] Twelve of the original plaintiffs have since been terminated from this case. The remaining, active plaintiffs are: Miko Peled; Ali Ali; Abdur-Rahim Dudar; Linda Kateeb; Mohmoud Mohammid Ali Shaalan; Ahmad Suleiman Mahmou Sahmour; Saad Malley; Safwat Abd Abu-Teer; Mina Ishaq; Tagrid Eleyan Mahmoud Abu-Teer; Waddah Khalid Sofan; Ahmad Kamal Ibrahim Suleima Abu-Teer; Ahmad Suleiman Mahmou Sahmour; Ahmed Al-Zeer; Ashraf Abu-Rahma; Basem Ibrahim Ahmed Abu-Rahmeh; Bassem Al-Tamimi; Doa'a Abu-Amer; Emad Shujaia; Hiba Barghouthi; Jawad Issa Ibrahim Salamah Al Horoob; Jawaher Ibrahim Abu-Rahmeh; Mamdouh Al-Qara (as next of kin of Muhammad Jihad Muhammad Al-Qara and Wala'a Al-Qara); Ra'fat Baraka (as next of kin of Muhammad Suleiman Mahmoud Baraka); Falastin Madi (as next of kin of Sami Shawqi Ahmed Madi); Safwat Abu-Teer (as next of kin of Zeinab Safwat Abd Abu-Teer and Nour Abu-Teer); Reham Al-Bur'i (as next of kin of A'id Mahnmoud Ahmed Al-Bur'i); Ibrahim Abu-Teer (as next of kin of Ahmad Abu-Teer and Kamal Abu-Teer); Abdullah Abu-Salah (as next of kin of Ahmed Abdullah Muhammed Abu-Salah); Muhammad Abu-Teer (as next of kin of Ali Abd Sueiman Abu-Teer); Medhat Abu-Yousef (as next of kin of Hanafi Mahmoud Kamel Abu-Yousef); Amal Qablan (as next of kin of Ibrahim Khalil Suleiman Qablan); Shireen Qablan (as next of kin of Ibrahim Suleiman Qablan Abu-Qablan); Hayat Abu-Dharifa (as next of kin of Ismail Mahmoud Muhammed Abu-Dharifa); and Susan Abulhawa. See Min. Order (July 1, 2019); see also Notice of Voluntary Dismissal of Certain Defendants at 1, ECF No. 69.

¶¶ 44, 50, ECF No. 18. The plaintiffs allege that the defendants, the Kushner Family Foundation ("KFF"), American Friends of Bet El Institutions ("AFBEI"), and Billet Feit & Preis P.C. ("BF&P"), committed violations of the Alien Torts Act, 28 U.S.C. § 1350 ("ATS"), and the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"), see id. at 7, for which they seek monetary damages, id. ¶ 181. Currently pending before the Court are motions to dismiss from each of the three defendants, see Defendant Kushner Family Foundation's Amended Motion to Dismiss ("KFF's Mot.") at 1, ECF No. 58; Motion of Defendant Billet Feit & Preis P.C. to Dismiss the Amended Complaint ("BF&P's Mot.") at 1, ECF No. 59; and Defendant American Friends of Bet El Institutions' Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6) ("AFBEI's Mot.") at 1, ECF No. 60. Also pending before the Court is plaintiff Abdur-Rahim Dib Dudar's pro se motion for a default judgment, see Motion for Default Judgment Against All Defendants ("Pl.'s Mot.") at 1, ECF No. 133. After carefully considering all of the relevant materials submitted by the parties,[3] the Court concludes for the following reasons that it must grant the defendants' motions to dismiss.

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the plaintiffs' Complaint for Injuries Directly Arising as a Result of the War Crimes Committed, Encouraged, or Financed by the Defendants ("Compl."), ECF No. 1; (2) Defendant Kushner Family Foundation's Motion to Dismiss, ECF No. 21; (3) the Plaintiff's Memorandum in Opposition to Defendant Kushner Family Foundation's Motion to Dismiss, ECF No. 27; (4) the Memorandum of Law of Defendant Kushner Family Foundation in Reply to Plaintiffs' Opposition to Defendant Kushner Family Foundation's Motion to Dismiss the Amended Complaint, ECF No. 38; (5) the Motion of Defendant Billet Feit & Preis P.C. to Dismiss the Amended Complaint, ECF No. 29; (6) the Plaintiffs' Memorandum in Opposition to Defendant Billet Feit & Preis, P.C.'s Motion to Dismiss the Amended Complaint, ECF No. 40; (7) Defendant American Friends of Bet El Institutions' Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2) and (b)(6), ECF No. 34; (8) the Plaintiffs' Memorandum in Opposition to Defendant American Friends of Bet El Institutions' Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2) and (b)(6), ECF No. 41; (9) the Amended Memorandum of Law of Defendant Kushner Family Foundation in Support of Its Motion to Dismiss the Amended Complaint ("KFF.'s Mem"), ECF No. 58-4; (10) the Plaintiffs' Amended Memorandum in Opposition to Defendant Billet Feit & Preis, P.C.'s Motion to Dismiss the Amended Complaint ("Pls.' Opp'n to BF&P"), ECF No. 62; (11) the Plaintiffs' Amended Memorandum in Opposition to Defendant Kushner Family Foundation's Motion to Dismiss ("Pls.' Opp'n to KFF"), ECF No. 63; (12) the Plaintiffs' Amended Memorandum in Opposition to Defendant American Friends of Bet El Institutions' Amended Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2) and (b)(6) ("Pls.' Opp'n to AFBEI"), ECF No. 64; (13) the Reply Memorandum of Law of Defendant Kushner Family Foundation in Further

(continued . . .)

# I. BACKGROUND

## A. Factual Background

The 106-page Amended Complaint contains sprawling allegations of war crimes, genocide, international terrorism, and tax fraud. See generally Am. Compl. At its core, the Amended Complaint alleges a broad scheme between American tax-exempt organizations, Israeli officials, Israeli non-government organizations ("NGOs"), and the Israeli Defense Force ("IDF") to "purposefully divert[] government funds to illegal settlements" in Palestine. Id. at 8.

The plaintiffs identify themselves as the "victims of a $2 billion money laundering scheme which results in 150+ illegal settlements and the Israeli armed forces receiving $2 billion a year." Id. ¶ 36. They allege that the funds from this money laundering scheme "go[] to illegal pursuits like murdering and maiming Palestinian farmers, demolishing their homes, buying Kalashnikovs and M16's for belligerent settlers [arms trafficking] and to bribe area military commanders so they issue more illegal military orders of confiscation." Id. (second set of brackets in original). The plaintiffs claim that they "have been injured by the aforementioned $2 billion money laundering scheme and the illegal criminal activity" and that many of them have

(. . . continued)
Support of Defendant Kushner Family Foundation's Amended Motion to Dismiss the Amended Complaint ("KFF's Reply"), ECF No. 67; (14) the Memorandum of Law of Defendant Billet Feit & Preis P.C. in Reply to Plaintiffs' Opposition to Defendant Billet Feit & Preis P.C.'s Motion to Dismiss the Amended Complaint ("BF&P's Reply"), ECF No. 70; (15) Defendant American Friends of Bet El Institutions' Reply to Plaintiffs' Opposition to Defendant's Amended Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), and b(6) ("AFBEI's Reply"), ECF No. 71; (16) Defendant American Friends of Bet El Institutions' Notice of Supplemental Authority, ECF No. 77; (17) Defendant Kushner Family Foundation's Notice of Supplemental Authority, ECF No. 79; (18) the plaintiffs' Supplemental Brief in Support of Plaintiffs' Responses to Defendants' Motions to Dismiss, ECF No. 116; (19) Defendant American Friends of Bet El Institutions' Reply in Further Support of Defendants' Notice of Supplemental Authority, ECF No. 121; (20) Defendant Kushner Family Foundation's Reply in Further Support of Defendants' Notice of Supplemental Authority, ECF No. 122; (21) the plaintiffs' Supplemental Memorandum to Plaintiff[s'] Prior Response to Defendant's Supplemental Authority, ECF No. 128; and (22) Defendant American Friends of Bet El Institutions' Notice of Supplemental Authority, ECF No. 137.

had their property seized or destroyed or have been attacked and injured by Israeli settlers. Id. ¶¶ 36–37.

As already noted, the remaining defendants against whom claims remain are the Kushner Family Foundation, Billet Feit & Preis P.C., and the American Friends of Bet El Institutions. The Kushner Family Foundation is a "501 (c)(3) tax-exempt entity" which the plaintiffs allege "has been raising vast sums of money for years for Israeli settlements, Israeli-based NGOs committed to the [annihilation] of the Palestinian population, and [for] the Israeli army." Id. ¶ 50. The American Friends of Bet El Institutions is a "tax-exempt entity[,] having secured 501(c)(3) status from the Treasury Department approximately 40 years ago." Id. ¶ 44. The plaintiffs allege that the American Friends of Bet El Institutions is "a pass through charitable entity" and that "all of the funds [it] raise[s] [are] immediately transferred to the Bet El settlement and Israeli based NGOs intent on the permanent colonization of the West Bank." Id. More specifically, the plaintiffs allege that Defendant American Friends of Bet El Institutions sends money overseas to "finance war crimes by arming Bet El settlers with M16's or Kalashnikovs, night vision goggles, percussion grenades, and sniper scopes[,]" to "construct and operate a Jewish-only military academy, firing ranges and sniper schools[,]" to "promote settlement expansion by encroaching on private Palestinian property in the area[,]" and to "maim[] and murder[] Palestinian landowners who refused to abandon their homes after being threatened by belligerent settlers." Id. The plaintiffs allege that both Defendants Kushner Family Foundation and American Friends of Bet El Institutions "solicit funds in [the Washington, D.C.] metropolitan area and all over America to support the Israeli army and belligerent settlers engaging in theft of private property to ensure settlement expansion." Id. ¶ 22(ii).

Defendant Billet Feit & Preis P.C. is an accounting firm that the plaintiffs allege "tell[s] tax exempt entity officials . . . every April 15th what they want to hear, i.e. that they can take charitable deductions based on purchasing military hardware and setting up firing ranges and sniper schools." Id. at 14. According to the plaintiffs, "[m]embers of the accounting firm BF[&]P knew that [AFBEI], KFF, and other tax exempt entities were engaging in money laundering by sending approximately $2 billion in laundered funds every year to their sister educational facilities which adhere to discriminatory policies [that] violate numerous Treasury Department regulations" and that "members of the firm, being well acquainted with their clients' financial operations knew that [AFBEI], KFF, and other tax exempt entities like [Friends of the Israeli Defense Forces,] were engaging in money-laundering by sending approximately $2 billion every year to their sister Israeli-based NGOs and to the Israeli army." Id. at 82–83. The plaintiffs allege that Defendant BF&P, "on behalf of [its] clients, have applied for 501(c)(3) tax-exempt status here in Washington D.C., and have also filed fraudulent annual charity tax returns here[.]" Id. at 29.

With that background, the Court understands the thrust of the Amended Complaint to be: (1) Billet Feit & Preis P.C. prepares the Kushner Family Foundation's and the American Friends of Bet El Institutions' annual tax returns; (2) the Kushner Family Foundation and the American Friends of Bet El Institutions fundraise in the United States; (3) the Kushner Family Foundation and the American Friends of Bet El Institutions donate some of the money they raise in the United States to Israeli NGOs; and (4) the Israeli NGOs and the IDF use the donated money to buy weapons, train and arm settlers, and promote the expansion of Israeli settlements in the West Bank. See generally Am. Compl.

## B. Procedural Background

On February 9, 2017, the plaintiffs filed their original Complaint, see generally Compl., and on June 16, 2017, they filed an Amended Complaint. See generally Am. Compl. The Amended Complaint pleads six causes of action, of which four remain pending.[4] The plaintiffs allege in Count One of the Amended Complaint that the previously described "money laundering" scheme is a "civil conspiracy" among all the defendants to "arm and train foreign militia units whose members engage in arms trafficking, ethnic cleansing, and genocide so that settlers can permanently colonize the West Bank." Id. ¶¶ 86–110 (capitalization modified). In Count Two of the Amended Complaint, the plaintiffs allege that the defendants "aid[ed] and abett[ed] the commission of war crimes, crimes against humanity, and genocide in violation of the law of nations[.]" Id. ¶¶ 111–38 (capitalization modified). In Count Four of the Amended Complaint, the plaintiffs allege that Defendant BF&P aided and abetted the commission of income tax fraud. Id. ¶¶ 162–72. And, in Count Five of the Amended Complaint, the plaintiffs plead a count of negligence against Defendant BF&P. Id. ¶¶ 173–75.

On July 12, 2017, Defendant KFF moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See generally Defendant Kushner Family Foundation's Motion to Dismiss, at 1. On August 15, 2017, Defendant BF&P moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). See generally Motion of Defendant Billet Feit & Preis P.C. to Dismiss the Amended Complaint. And, on August 15, 2017, Defendant AFBEI moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and

[4] Two causes of action in the Amended Complaint, Count Three and Count Six, were brought only against the Israeli defendants. See Am. Compl. at ¶¶ 139–61; 176–81. As previously indicated, the plaintiffs voluntarily dismissed their claims against the Israeli defendants, see Min. Order (July 1, 2019); see also Notice of Voluntary Dismissal of Certain Defendants at 1–2.

12(b)(6). See generally Defendant American Friends of Bet El Institutions' Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6).

On September 8, 2017, while the motions to dismiss were pending, the plaintiffs moved to stay these proceedings "in the interest of judicial economy" pending a ruling in the case Al-Tamimi v. Adelson, 916 F.3d 1 (D.C. Cir. 2019). See Motion to Stay Proceedings, ECF No. 42. On October 16, 2017, the Court granted the motion and stayed proceedings pending further notice from the Court. See Order (Oct. 16, 2017) at 5, ECF No. 53. In granting the stay, the Court also denied without prejudice the defendants' pending motions to dismiss. Id. at 5–6.

On February 19, 2019, the D.C. Circuit issued its decision in Al-Tamimi, 916 F.3d 1, and, on March 1, 2019, the Court lifted the stay of proceedings in this case, Order (March 1, 2019) at 1–2, ECF No. 55. The Court further ordered the defendants to file new motions to dismiss. Id. at 2.

On April 18, 2019, each defendant filed a new motion to dismiss. See generally KFF's Mot.; BF&P's Mot.; AFBEI's Mot. Among other bases for dismissal, all three defendants argue that dismissal is required because: (1) the Court lacks subject matter jurisdiction pursuant to the Political Question Doctrine; (2) the Court lacks personal jurisdiction over the defendants; and (3) the plaintiffs have not adequately stated claims upon which relief can be granted. See generally KFF's Mem.; BF&P's Mot.; AFBEI's Mot.

On May 20, 2019, the plaintiffs filed oppositions to each of the motions to dismiss. See generally Pls.' Opp'n to KFF; Pls.' Opp'n to BF&P; Pls.' Opp'n to AFBEI. On June 20, 2019, Defendant KFF filed a reply in support of its motion to dismiss. See generally KFF's Reply. And, on July 2, 2019, Defendant BF&P and Defendant AFBEI filed replies in support of their

motions to dismiss. See generally BF&P's Reply; AFBEI's Reply.[5] Finally, on December 19, 2022, Plaintiff Abdur-Rahim Dib Dudar, in a pro se filing, moved for a default judgment. See generally Motion for Default [Judgment] Against All Defendants.

## II. STANDARDS OF REVIEW

### A. Motions to Dismiss Under Rule 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based on lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (citation omitted). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug

[5] The Court regrets the lengthy delay in resolving the current motions. Mismanagement of this case by law clerks, combined with the pending motions not appearing on the Civil Justice Reform Act reports following the issuance of the stay, resulted in the issuance of this opinion being delayed.

Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted). And, the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n, No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B. Motions to Dismiss Under Rule 12(b)(2)**

When a defendant moves to dismiss a case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); see also First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988) ("[A] plaintiff must make a prima facie showing of the pertinent jurisdictional facts." (citations omitted)). Conclusory statements do not satisfy this burden. See GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (citing First Chi. Int'l, 836 F.2d at 1378–79). Instead, there must be specific allegations connecting the defendant to the forum. See, e.g., Second Amend. Found. v. U.S. Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001). The plaintiff must also show "minimum contacts" between the defendant and the forum such that "the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Because the Court is permitted to "consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction," Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)), such information may be "bolstered by . . . affidavits and other written materials as [the plaintiff] can otherwise obtain," Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005). And, although the court need not accept the plaintiff's allegations bearing upon personal jurisdiction as true, see Associated Producers, Ltd. v. Vanderbilt Univ., 76 F. Supp. 3d 154, 161 (D.D.C. 2014), "factual discrepancies appearing in the record must be resolved in favor of the plaintiff," Crane, 894 F.2d at 456 (citation omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, in this case, the Court's exercise of personal jurisdiction must comport with District of Columbia law. GTE New Media Servs. Inc., 199 F.3d at 1347.

**C. Motions to Dismiss Under Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation and citation omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. ANALYSIS

The defendants argue that the plaintiffs' claims should be dismissed for several reasons, including the Court's lack of subject matter jurisdiction, its lack of personal jurisdiction, and the plaintiffs' failure to adequately plead a claim. Typically, the Court would begin by determining whether it has subject matter jurisdiction, but "[w]here, as here, . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999); see also Williams v. Romarm, SA, 756 F.3d 777, 781 n.1 (D.C. Cir. 2014) ("The district court chose to address personal jurisdiction before deciding

whether it had subject-matter jurisdiction to hear the case. This approach is permitted.") (internal citation omitted). Accordingly, the Court will begin by determining whether it has personal jurisdiction over the defendants. Because the Court ultimately concludes that it does not have personal jurisdiction over the defendants, the Court need not address the "difficult and novel question" of whether the Political Question doctrine bars the Court from exercising subject matter jurisdiction over the plaintiffs' claims, nor whether the plaintiffs have adequately pleaded those claims.

**A. Whether the Court Has Personal Jurisdiction Over the Defendants**

The plaintiffs make various allegations in the Amended Complaint about the defendants' activities that purportedly establish personal jurisdiction in this District. Specifically, the plaintiffs allege that Defendants KFF and AFBEI: (1) "solicit funds in this metropolitan area and all over America to support the Israeli army and belligerent settlers engaging in theft of private property to ensure settlement expansion[,]" Am Compl. ¶ 22(ii); and (2) "work with AIPAC officials who are located in this jurisdiction to, inter alia[,] preserve the practice of taking illegal tax deductions" and to "revise Treasury Department Regulations so that pro-occupation tax-exempt entities no longer have to disclose the country . . . which is receiving billions of dollars from them every year[,]" id. ¶ 22(iii) (second set of brackets in original). The plaintiffs allege that Defendant BF&P, "on behalf of their clients, have applied for 501(c)(3) tax-exempt status here in Washington D.C., and have also filed fraudulent annual charity tax returns here[.]" Id. ¶ 22(v).

Throughout the Amended Complaint, the plaintiffs allege other contacts that entities other than the defendants have had with this District. These contacts include "[former] Defendants Netanyahu and senior IMD officials . . . coming to this jurisdiction for at least twenty

years to transact business and engage in routine commercial activity," id. ¶ 9, and "AIPAC [having] its annual dinner and convention in Washington D.C. [that] numerous IMD officials and other government officials, like [former] Defendant Netanyahu, attend along with pro-occupation tax-exempt entity officials like [former] Defendant Friedman[,]" id. ¶ 22(vii).

Based on these purported contacts with this District, the plaintiffs contend that the Court has personal jurisdiction over the defendants pursuant to the District of Columbia's Long Arm Statute and the "conspiracy theory of personal jurisdiction." See Am. Compl. ¶¶ 9, 21. The Court will address each theory in turn.

**1. Whether the District of Columbia's Long Arm Statute Provides a Basis for Personal Jurisdiction Over the Defendants**

The defendants all argue that the plaintiffs have not established that they are subject to personal jurisdiction in this District. As previously indicated, the Court's exercise of personal jurisdiction must comport with District of Columbia law, GTE New Media Servs. Inc., 199 F.3d at 1347, and the applicable District of Columbia legal authority is D.C. Code § 13-423.[6]

D.C. Code § 13-423(a) provides that:

> a District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —
> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia . . . .

[6] The Amended Complaint makes no reference to D.C. Code § 13-422, which provides that a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief[,]" so the Court need not assess whether that provision provides a basis for personal jurisdiction over the defendants.

The plaintiffs do not specify which of these subsections purportedly establishes personal jurisdiction, but based on the allegations in the Amended Complaint it appears that the plaintiffs rely on subsection (1), which confers personal jurisdiction over persons transacting business in the District of Columbia. See generally Am. Compl. To establish personal jurisdiction pursuant to this component of the statute, the plaintiff bears the burden of establishing that "(1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 43 (D.D.C. 2003) (quoting Dooley v. United Technologies, 786 F. Supp. 65, 71 (D.D.C. 1992)). Although this statute is "interpreted broadly and factual disputes are to be resolved in favor of the plaintiff," the plaintiff must nonetheless "allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it invoked the benefits and protections of the District's laws." Id.

Here, the plaintiffs' allegations about the defendants' purposeful activity in the District of Columbia are extremely limited. As previously indicated, those allegations are merely claims that Defendant KFF and AFBEI "solicit funds in this metropolitan area and all over America to support the Israeli army and belligerent settlers engaging in theft of private property to ensure settlement expansion[,]" Am Compl. ¶ 22(ii); and "work with AIPAC officials who are located in this jurisdiction to, inter alia[,] preserve the practice of taking illegal tax deductions" and to "revise Treasury Department Regulations so that pro-occupation tax-exempt entities no longer have to disclose the country [, that is, Israel,] which is receiving billions of dollars from them every year[,]" id. ¶ 22(iii) (bracket in original), and that Defendant BF&P "on behalf of their

clients, have applied for 501(c)(3) tax-exempt status here in Washington D.C., and have also filed fraudulent annual charity tax returns here[.]" Id. ¶ 22(v).

Defendant KFF, which "is not a resident of the District of Columbia, nor is it registered to do business here[,]" KFF's Mem. at 40; see KFF's Mot., Ex. 1 Declaration of Donald N. David ("David Decl.") ¶ 3, ECF No. 58-1, argues that the plaintiffs' "conclusory statement" that it "solicit[s] funds in this metropolitan area and all over America" is an insufficient basis for personal jurisdiction. KFF's Mem. at 40. Similarly, Defendant AFBEI argues that the Amended Complaint contains no allegations that "even suggest that personal jurisdiction exists over [it] pursuant to the D.C. long-arm statute." AFBEI's Mot. at 23. Defendant AFBEI further contends, although it did not provide any supporting declarations, that it "does not regularly transact business in the District of Columbia, nor does it have any employees, property, offices or facilities in the District of Columbia." Id. at 26. And, Defendant BF&P, a "New York accounting firm[,]" BF&P's Mot. at 6; see also id. Ex. 1 Declaration of Oleg Rivkin ("Rivkin Decl.") at 2, ECF No. 59-1, argues that "[a]ssisting clients to obtain 501(c)(3) tax exempt status has only the most attenuated and tangential connection to the District of Columbia—only insofar as the Internal Revenue Service has an office in Washington[,] D.C.[,]" id. at 8. On that point, Defendant BF&P contends that applications for 501(c)(3) status are actually mailed to Cincinnati, Ohio so "[t]here is no connection at all with Washington, D.C[,]" id., and filing Form 990s also cannot serve as the basis for personal jurisdiction in this District because Form 990s are "filed with the IRS Service Center located in Ogden, Utah[,]" not in Washington, D.C. Id.

The plaintiffs respond that each of the defendants' arguments is a "classic red herring argument when one examines the allegations pled in the Amended Complaint." Pls.' Opp'n to KFF's Mem. at 40; Pls.' Opp'n to AFBEI's Mot. at 27; Pls.' Opp'n to BF&P's Mot. at 34. In

support of their arguments, the plaintiffs merely repeat the allegations in the Amended Complaint: that Defendant KFF "solicit[s] funds in this metropolitan area" and "'sent $315,000 to the Israeli army . . . between 2011 and 2013' in order to take 'illegal tax write-offs' on IRS income tax forms . . . filed with the IRS based in the District of Columbia[,]" Pls.' Opp'n to KFF Mot. at 40; that Defendant AFBEI "'solicit[s] funds in this metropolitan area' [and] takes 'illegal tax write-offs' on IRS income tax forms . . . filed with the IRS based in the District of Columbia[,]" Pls.' Opp'n to AFBELI's Mot. at 27–28; and that "without the tax-exempt status provided by [Defendant BF&P's] advice and filings sent to the IRS, [Defendant BF&P's] clients . . . could not solicit funds in America[,]" Pls.' Opp'n to BF&P's Mot. at 34. For the following reasons, these allegations are insufficient to establish authority to exercise personal jurisdiction over the defendants.

First, although the plaintiffs generally allege that "all tax-exempt entity [d]efendants . . . solicited funds in this jurisdiction destined for illegal settlements, the Israeli army and Israeli NGOs intent on permanently colonizing the West Bank[,]" Am. Compl. ¶ 23, the only specific fundraising allegation identified in the Amended Complaint is that an organization called the Friends of the Israeli Defense Forces, which is not a defendant in this lawsuit, "in 2014 hosted fundraising galas in Hollywood and New York City, and as a result sent $104 million to the Israeli army[,]" id. at ¶ 22(ii). This allegation involves neither activity in this District or conduct by the defendants. The plaintiffs' conclusory allegation that Defendants KFF and AFBEI "solicit funds in this metropolitan area and all over America[,]" id. ¶ 22(ii), is similarly unavailing because it contains no specific allegations connecting the defendants to this forum, First Chi. Int'l, 836 F.2d at 1378 ("It is settled [that] a plaintiff must allege specific acts connecting [the] defendant with the forum.") (internal citation and quotation omitted) (second set

of brackets in original). Although "factual discrepancies appearing in the record must be resolved in favor of the plaintiff," Crane, 894 F.2d at 456 (citation omitted), the court need not accept the plaintiffs' allegations bearing upon personal jurisdiction as true, Associated Producers, Ltd., 76 F. Supp. 3d at 161, and conclusory statements are insufficient to establish personal jurisdiction, GTE New Media Servs., Inc., 199 F.3d at 1349. The defendants' affidavits, which the Court may consider in ruling on a motion to dismiss for lack of personal jurisdiction, Artis, 223 F. Supp. 2d at 152, underscore that the defendants do not transact business in this District. See David Decl. ¶ 3; Rivkin Decl. ¶ 6.

Section 13-423(a)(1)'s "transacting business" provision "is as far-reaching as the due process clause allows." Koteen v. Bermuda Cablevision, Ltd., 913 F.2d 973, 974 (D.C. Cir. 1990). Consistent with the Due Process Clause, the Court may only exercise personal jurisdiction over the defendants if there are "minimum contacts" between the defendants and this forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (internal quotation marks and citation omitted). Although the defendants' physical presence in the forum is not necessarily required for personal jurisdiction, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), "the defendant[s'] conduct and connection with the forum [must be] such that [they] should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The plaintiffs have not provided sufficient evidence that the defendants had sufficient "minimum contacts" with the District of Columbia to satisfy this standard. See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031–32 (D.C. Cir. 1997).

That is particularly true due to "[o]ne of the federal jurisdictional rules peculiarly applicable in this circuit[,]" the so-called "government contacts principle." Inv. Co. Inst. v. United States, 550 F. Supp. 1213, 1216 (D.D.C. 1982). Under this rule, "certain relationships with federal agencies do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes." Id. The government contacts principle's "rationale '. . . finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry.'" Id. (quoting Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 813 (D.C. 1976) (en banc)). The government contact principle recognizes that "permit[ting] our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality . . . would threaten to convert the District of Columbia into a national judicial forum." Env't Rsch. Int'l, Inc., 355 A.2d at 813. Although historically there has been some question regarding whether the government contact principle is limited to First Amendment cases involving freedom of speech or the right to petition the government for redress of grievances, see Rose v. Silver, 394 A.2d 1368, 1373–74 (D.C. 1978), "[t]he federal cases from this circuit applying the government contacts principle . . . have not spoken in traditional First Amendment terms . . . [but] have simply discounted the defendants' business activities in the District by the amount they involved getting information from or giving information to the government," since that "can only be done in Washington because that is where the government is." Inv. Co. Inst., 550 F. Supp. at 1216–17. Thus, notwithstanding Defendant BF&P's unrefuted statements that the relevant government mailing addresses are not even in the District, the Court finds that merely filing forms with the

Treasury Department and the Internal Revenue Service is insufficient to establish personal jurisdiction in this District.

Accordingly, the Court must conclude that the District of Columbia's Long Arm Statute does not provide for personal jurisdiction over the defendants.

**2. Whether the "Conspiracy Theory" Establishes Personal Jurisdiction Over the Defendants**

The plaintiffs also argue that the "conspiracy theory of personal jurisdiction" provides a basis for asserting personal jurisdiction over the defendants. Am. Compl. ¶ 21. According to the plaintiffs, "if one member of a conspiracy engaged in activities in the forum, every member of the conspiracy is subject to the forum's jurisdiction." Id. Here, the plaintiffs allege that Defendant BF&P "is subject to conspiracy jurisdiction because of their role in the civil conspiracy complained of [in the Amended Complaint]" because it "routinely [gave] illegal advice to donors intent on settlement expansion through theft of private property and the commission of war crimes." Id. Although the plaintiffs only make this specific allegation in regard to Defendant BF&P, they seem to suggest that all defendants are subject to the "conspiracy theory" of personal jurisdiction.

The "conspiracy theory" of personal jurisdiction is "an application of long-arm jurisdiction pursuant to which a defendant's contacts with the forum consist of the defendant's conspiratorial activities." Second Amend. Found., 274 F.3d at 523. Under this theory, "[p]ersons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly' [and] coconspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'" Id. (quoting D.C. Code § 13–423(a)(1)). To prevail under this theory, the plaintiffs must make a prima facie showing of civil conspiracy, which has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act,

or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme[,]" id. (internal quotation omitted). However, the "bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction[,]" and "a plaintiff must allege specific acts connecting [the] defendant[s] with the forum[.]" First Chi. Int'l, 836 F.2d at 1378–79 (internal quotation marks and citations omitted).

Defendant KFF argues that "[the p]laintiffs have utterly failed to plausibly allege facts supporting their conspiracy claim" and that "jurisdiction cannot be established over conspiracy and other claims based merely on their allegation." KFF's Mem. at 40–41 n.12. Defendant BF&P argues that "[o]f the four causes of action alleged against [it], only [the first] purports to state a claim of conspiracy" and the Amended Complaint "alleges no 'overt acts,' and certainly no 'substantial acts' within the District of Columbia 'in furtherance' of this alleged 'conspiracy,' much less alleges them with the requisite degree of particularity." BF&P's Mot. at 10. Similarly, Defendant AFBEI argues that the Amended Complaint "expressly lists all other defendants involved in the alleged conspiratorial agreement, but fails to include [it] as an actor [in the alleged conspiracy]" and, moreover, "fails to allege any specific acts connecting [it] with the forum." AFBI's Mot. at 25. The plaintiffs respond that "conspiracy jurisdiction over [each defendant] is fully laid out and pled in the [Amended] Complaint." Pls.' Opp'n to KFF at 41; Pls.' Opp'n to BF&P at 35; Pls.' Opp'n to AFBEI at 28.

The defendants are correct that the plaintiffs have not established the prerequisite prima facie case of civil conspiracy necessary for the Court to have personal jurisdiction under the "conspiracy theory." The allegation that various groups, organizations, and individuals "conspired to finance the forcible expulsion of all non-Jews . . . so that belligerent settlers could

permanently colonize the West Bank[,]" Am. Compl. at 17–18, "represents nothing more than a legal conclusion, which . . . 'does not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction.'" Second Amend. Found., 274 F.3d at 524 (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787–88 (D.C.Cir.1983)). Rather than pleading with specificity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy[,]" Dooley, 786 F. Supp. at 78, the Amended Complaint offers only bare allegations that do not come close to establishing an "agreement" among the defendants to perform an unlawful act, let alone an overt act in furtherance of that agreement. Although the Amended Complaint does allege numerous allegedly illegal acts undertaken by former Defendant Benjamin Netanyahu and the other former Israeli defendants, and that at least some of these former defendants at least visited the District, it still fails to adequately allege any agreement between Defendant KFF, Defendant AFBEI, or Defendant BF&P to participate in an unlawful act.

Accordingly, the Court must conclude that the "conspiracy theory" of personal jurisdiction does not provide a basis for this Court having personal jurisdiction over the defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over the defendants. Accordingly, the Court must grant the defendants' motion to dismiss the Amended Complaint and deny plaintiff Abdur-Rahim Dib Dudar's pro se motion for default judgment as moot.

**SO ORDERED** this 10th day of August, 2026.[7]

REGGIE B. WALTON
United States District Judge

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.